IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEALTHCARE STRATEGIES, INC., Plan Administrator of the Healthcare Strategies, Inc. 401(k) Plan and the Healthcare Strategies, Inc. CBU 401(k) Plan, On Behalf of Itself and All Others Similarly Situated, | : : : : : : | |
| Plaintiff, | : : | No. 3:11-cv-00282 (JCH) |
| v. | : : | |
| ING LIFE INSURANCE AND ANNUITY COMPANY, | : : : | |
| Defendant. | : | July 5, 2011 |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS (IN PART) PLAINTIFF'S COMPLAINT**

For each of the reasons set forth in Defendant's opening brief and described below, Plaintiff's claims should be dismissed on statute of limitations grounds for all acts taken and contracts entered into more than six years before its filing, and that all claims arising from the Fixed and GAA accounts should be dismissed as a matter of law.  Accordingly, Defendant respectfully requests that its Motion to Dismiss (in Part) Plaintiff's Complaint (Doc 27-1) be granted.

*First*, Plaintiff's suggestion in its Memorandum in Opposition to Defendant's Partial Motion to Dismiss ("Pl. Br.") that the Defendant cannot challenge its pleadings on statute of limitations grounds in a Rule 12 motion is rebutted by scores of cases granting such motions, and Plaintiff's failure to cite a single case supporting its argument otherwise.

*Second*, Plaintiff's concession that the returns on the Fixed and GAA accounts are guaranteed requires dismissal of these claims.  Plaintiff's argument that the guarantees can be revoked is frivolous on the face of the contracts Plaintiff purchased.  Because ILIAC assumes the investment risk under the Fixed and GAA accounts, assets held in those accounts are not subject to ERISA prohibited transaction or fiduciary rules.

*Third*, Plaintiff's contention that the law in the Second Circuit now favors ERISA jury trials—like it's argument that its claims cannot be challenged on statute of limitations grounds—is not supported by a single case, has been rejected by several, and is based on a facially invalid reading of Supreme Court authority.

*Finally*, Plaintiff's arguments are based on pleading standards that predate (and ignore) *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, which caution against passing quickly over pleadings and into discovery because of the heavy costs associated with discovery, especially electronic discovery.  Indeed, Plaintiff unabashedly implores the Court to allow it to go directly

to "full discovery" apparently for the purpose of gaining precisely this leverage for claims purportedly asserted on a putative class consisting of allegedly tens of thousands different retirement plans.

## I. PLAINTIFF'S TIME-BARRED CLAIMS ARE RIPE FOR DISMISSAL

Plaintiff concedes that it has failed to plead fraud or concealment but makes two inconsistent and borderline frivolous arguments that it is not required to so plead.  First, it argues that ILIAC cannot attack Plaintiff's claims on statute of limitations grounds because Plaintiff has alleged no time frame in the Complaint.  (Pl. Br. 19).  Second, Plaintiff argues that an ERISA defendant can never move to dismiss on statute of limitations grounds because statute of limitations is an affirmative defense.  (Pl. Br. 20-21).

The notion that Plaintiff could avoid the statute of limitations through artful pleading (even if it had merit) is refuted by the face of the Complaint, which literally alleges that ILIAC breached ERISA "at all pertinent times."  Compl. [Dkt. 1] ¶¶ 79, 85.  Although Plaintiff studiously avoids defining "all pertinent times" (perhaps attempting to set up this meritless argument), the phrase could only be construed to mean from the passage of ERISA in 1974 to the present because that is when ILIAC's conduct would have first violated ERISA, assuming the Complaint's allegations are true.  But the Court need not look even that far back because the Complaint makes extensive allegations about the contracts entered into between Plaintiff and ILIAC, and alleges that they are the basis for Plaintiff's claims.  Compl. [Dkt. 1] ¶¶ 26-29, 33, 35, 40, 42, 48, 50, 53, 55, 57, 67, 69 (repeatedly referencing and quoting the contracts set forth at Dkt. 27-3).  The contracts were entered into on December 5, 1997, so "all pertinent times" extends at least that far back.  [Dkt 27-3] at 5, 42.

Plaintiff struggles to avoid the contracts by arguing that the Court cannot consider them, but that argument is directly contradicted by the case law.  "Where, as here, a motion to dismiss

under Rule 12(b)(6) is based upon the affirmative defense of statute of limitations, 'a district court must limit itself to facts stated in the complaint, or in documents attached to the complaint as exhibits or *incorporated in the complaint by reference.*'"  *Calemine, et al. v. Gesell*, No. 06CV4736SJ, 2008 WL 4500340, at *2 (E.D.N.Y. Oct. 6, 2008) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)) (emphasis added); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("[A] court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading.  If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss."); *see also Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("The Court, however, is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.").

Plaintiff's inconsistent contention that the statute of limitations defense is affirmative and therefore cannot be addressed by the Court in a Rule 12(b)(6) motion is equally frivolous.  (Pl. Br. 20.)  Plaintiff has not cited a single case that holds as a matter of law that a court cannot consider a statute of limitations defense on a Rule 12 motion because it is an affirmative defense, and there are dozens of cases that have granted or denied Rule 12 motions on the merits of this defense.[1]

Accordingly, the Complaint's allegations, going back to at least 1997, make this case the "prototype" for application of the statute of limitations.  "[T]he Second Circuit has held that the

---

[1] *See, e.g.*, *Janese, et al. v. Fay, et al.*, 751 F. Supp. 2d 469 (W.D.N.Y. 2010) (dismissing, pursuant to Rule 12(b)(6) plaintiff's time-barred ERISA claims); *Francis v. Blaikie Group*, 372 F. Supp. 2d 741 (S.D.N.Y 2005) (dismissing plaintiff's time-barred breach of fiduciary duty claim for failure to state a claim pursuant to Rule 12(b)(6)); *Losquadro, et al. v. FGH Realty Credit Corp.*, 959 F. Supp. 152 (E.D.N.Y. 1997) (concluding that plaintiffs failed to adequately plead "fraud or concealment" and dismissing plaintiffs' claims as time-barred claims under ERISA's six-year statute of limitations); *Calemine*, 2008 WL 4500340 (dismissing plaintiff's time-barred breach of fiduciary duty claim for failure to state a claim pursuant to Rule 12(b)(6)); *Calemine, et al. v. Gesell*, No. 06CV4736SJ, 2007 WL 2973708, *2 (E.D.N.Y. Sept. 28, 2007) (same).

statute of limitations provisions of ERISA require 'strict adherence' so that, . . . disputes can be 'rapidly' resolved, potential defendants can be afforded 'repose' and 'litigation involving lost evidence or distorted testimony of witnesses' can be avoided." *Oechsner v. Conell Ltd. P'ship*, 283 F. Supp. 2d 926, 932 (S.D.N.Y. 2003), *aff'd* 101 Fed. App'x 849 (2d Cir. 2004) (citing *Carey v. Int'l Bhd. of Elec. Workers*, 201 F.3d 44, 47 (2d Cir. 1999)). Congress's adoption of statute of limitations under ERISA disposes of Plaintiff's cry that the statute of limitations would "immunize" ILIAC from liability. (Pl. Br. 22).

Plaintiff concedes that it has failed to allege with requisite particularity the fraud or concealment necessary to invoke the "separate statute of limitations of six years from the date of discovery." (Pl. Br. n.4); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001); *Janese, et al. v. Fay, et al.*, 751 F. Supp. 2d 469 (W.D.N.Y. 2010) ("*Caputo* holds that in order to take advantage of the six-year fraud or concealment statute of limitations, the plaintiff must plead the circumstances constituting the fraud or concealment with particularity."). Thus, the only question is whether Plaintiff's claims, which arise under the contracts entered into on December 5, 1997, are barred in their entirety or whether Plaintiff should be allowed to assert claims for "continuation" of breaches more than six years old. The two views are summarized in cases similar to this one, alleging ERISA violations.

In *Bona, et al. v. Barasch et al.*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *19 (S.D.N.Y. Mar. 20, 2003), the court found that ERISA "was violated each time defendants renewed imprudent contracts with fund administrators," and dismissed the complaint "to the extent plaintiffs [sought] relief for harms resulting from contracts entered into or renewed before September 7, 1995." S*ee also Tibble, et al. v. Edison Int'l, et al.*, 639 F. Supp. 2d 1074, 1119-20 (C.D. Cal. 2009) (holding that claims challenging the prudence of adding certain investment

4

options to a 401(k) plan were barred because the decision to add the options was made more than six years before the filing of the complaint).

On the other hand, in *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701-MJR, 2009 WL 839099, at *7 (S.D. Ill. Mar. 31, 2009), the court rejected Defendant's claim that "all of Plaintiffs' claims [were] barred . . . because they . . . identified no discrete acts within the six-year limitations period" and narrowed its inquiry to acts that took place on or after six years before the filing of the complaint. *See also, Kanawi v Bechtel Corp.*, 590 F. Supp. 2d 1213 (N.D. Cal. 2008) (noting there is no "continuing violation" theory under ERISA but holding that it must review the continuing prudence of investment options added to a plan more than six years before the filing of the complaint).

Thus, there are two possible outcomes on ILIAC's motion: Claims attributable to agreements entered into more than six years before the filing of the Complaint are barred in their entirety, or Plaintiff is limited to claims of alleged breaches within the six years before the filing of the Complaint. Count I alleges breach of fiduciary duty in connection with the Fixed and GAA accounts, both of which are the subject of the contracts between Plaintiff and ILIAC executed on December 5, 1997. These claims are either time barred in their entirety or barred for periods preceding February 23, 2005. Count II alleges prohibited transactions in connection with revenue-sharing contracts entered into by ILIAC and mutual funds. These claims are either time barred in their entirety for contracts entered into before February 23, 2005 or barred for periods preceding February 23, 2005.

Contrary to Plaintiff's suggestion, this is not an academic or "advisory" exercise. (Pl. Br. n.5). If this case goes forward, Plaintiff will be demanding discovery with respect to all (or most) of the 54,429 allegedly similarly situated plans. Compl. [Dkt. 1] ¶ 18. Absent appropriate

5

temporal limitations, this discovery will be unmanageable.  This is precisely what the Supreme Court cautioned against in *Bell Atlantic Corp. v. Twombly*.  550 U.S. 544, 558 (2007) ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.") (citations omitted).

## II.     FIXED/GENERAL ACCUMULATION ACCOUNT

In the Motion, ILIAC established that the Fixed Account is a "guaranteed benefit policy" as defined in ERISA §401(b)(2) because ILIAC (i) assumes the investment risk by guaranteeing a rate of interest on deposits, and (ii) permits conversion of deposits in the Fixed Account into a fixed annuity.  *See John Hancock Mutual Life Ins. Co. v. Harris Trust Sav. Bank*, 510 U.S. 86, 106 (1993).  The Motion also established that the GAA falls within the regulatory exemption of 29 C.F.R § 2510.3-101(h)(1)(iii) because the guaranteed rates under the GAA are "not affected in any manner by the investment performance of the separate account."[2]  *Id.*  Therefore, amounts deposited by the Plans in the Fixed Account or GAA are not "plan assets" subject to ERISA's fiduciary and prohibited transaction rules.

Plaintiff takes no issue in its Opposition with the facts that the guaranteed returns under the Fixed Account and GAA are not affected by investment performance, that the deposits can be converted into guaranteed annuities, and that, standing alone, this would result in the transfer of all investment risk to ILIAC.  Plaintiff's sole (relevant) argument is that, by retaining the authority to amend the contracts in § 8.01, ILIAC retains the authority to transfer investment risk back to the Plans by retroactively changing or revoking the interest rate guarantees.  (*See* Pl. Br. 29-39).  But Plaintiff's selective quotation of § 8.01 ignores dispositive language that directly contradicts their "reading:"

---

[2]   This disposes of Plaintiff's conclusory allegation that the GAA deposits are "plan assets" simply because they are maintained in a separate account.  (*See* Compl. [Dkt. 1] ¶ 29; Pl. Br. 8).

6

> Except as otherwise expressly provided in the Contract, any change that affects the following Sections of this Contract will not be applied to amounts in existing Plan Accounts, but may apply to Purchase Payments made to such Accounts after the change:
>
> \* \* \*
>
> (c) 4.02, Guaranteed Interest Rate
>
> (d) 4.03, Guarantee Accumulation Account (GAA)

[Dkt. 27-3] at 28-29. Moreover, an Endorsement to the contracts states that, "[n]otwithstanding the Change of Contract provision [of § 8.01], the Company will at all times add interest daily at an effective annual rate of no less than 3% to all amounts held in the Fixed Account." [Dkt. 27-3] at 35. Thus, the face of the contracts plainly forecloses any amendment affecting interest rate guarantees for any amounts previously deposited under the contracts and thereby prevents ILIAC from shifting investment risk to the Plans for any deposits made under the contracts. Interpretation of the contracts (which is not really required since they are unambiguous) is a pure question of law well suited for disposition on Rule 12 motions. *See, e.g.*, *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 807 (S.D.N.Y. 2008) ("Because contract interpretation is generally a question of law, it is suitable for disposition on a motion to dismiss.") (internal quotations omitted).

Plaintiff's Complaint does not (and cannot) contest this conclusion, nor does it allege that ILIAC acted inconsistently with the terms of the contracts. Instead, Plaintiff relies on *Rapides Regional Medical Center v. American United Life Insurance*, 938 F. Supp. 380 (W.D. La. 1996), which confirms that the contracts before the Court are exempt from ERISA. (*See* Pl. Br. 29). In *Rapides*, the defendant insurance company argued that a policy amendment clause (like section 8.01) allowing it to change the guaranteed interest rate only for future deposits did not disqualify the policy from the guaranteed benefit policy exception. The court noted that "[w]ere this

7

interpretation of the contract consistent with [the insurance company's] actual practice, it might represent at least some kind of meaningful guarantee of a reasonable rate of return." *Id.* at 386. But the court went on to find that the insurance company had a practice of changing the interest rate for both previously deposited and future funds without regard to its supposed guarantee. *Id.* The court had little trouble concluding that the guarantee was illusory and the policy did not qualify for the ERISA §401(b)(2) exception. *Id.* Thus, *Rapides* actually supports ILIAC's contention that Plaintiff has failed to state claims for breach of fiduciary duty and prohibited transactions in the Fixed Account and GAA because these accounts do not hold ERISA plan assets. *See also Assocs. in Adolescent Psychiatry v. Home Life Ins. Co.*, 941 F.2d 561, 567-70 (7th Cir. 1991) (finding policy qualified as a guaranteed benefit policy despite insurers authority to alter the interest rate on future deposits).

Plaintiff next argues that, because amounts deposited under the Fixed Account and GAA are subject to the claims of ILIAC's creditors, the "investment performance" varies in the event of insolvency and the guaranteed benefit policy exception does not apply. (*See* Pl. Br. 29-30). The argument is frivolous. Every guaranteed benefit policy is subject to the issuer's credit risk, since guaranteed benefit policy assets are backed only by assets in the insurer's general account (or "surplus in a separate account"). ERISA § 401(b)(2); s*ee also Home Life Ins.*, 941 F.2d at 566 ("No annuity transfers all of the risk to the seller. Any fixed annuity places on the buyer the risk that the seller's portfolio will perform too poorly to finance the promised payments."). The same logic applies to the deposits in the GAA account, which ILIAC also allegedly owns. Compl ¶ 29.

Plaintiff's final argument—that ILIAC is a fiduciary because the contract requires the Plans to offer the Fixed Account and GAA as investment options—is both factually wrong and

8

irrelevant, even if true. (*See* Pl. Br. 33).  Plaintiff, in its capacity as fiduciary for the Plans, purchased the group annuity contracts in an arms' length transaction with ILIAC and with full knowledge that, by doing so, it was adding the Fixed Account and GAA as investment options to the Plans.  *See* § 3.03, [Dkt. 27-3] at 14.  It is well-established that insurance companies do not act as fiduciaries in designing and selling their products.  *See, e.g.*, *Cotton v. Mass. Mutual*, 402 F.3d 1267, 1278 (11th Cir. 2005) ("Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products.") (quoting *Am. Fed. of Unions v. Equitable Life Assur. Soc'y*, 841 F.2d 658, 664 (5th Cir. 1988)); *Consolidated Beef Industries, Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir. 1991) (insurer did not act as fiduciary when it simply sold annuities and did not recommend specific investments beyond its own products).  It was Plaintiff's decision, made in its own fiduciary capacity as plan administrator, to purchase the contract that caused the Fixed Account and GAA to be added as investment options to the Plans, not a discretionary fiduciary act by ILIAC.  *See, e.g.*, *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294-98 (5th Cir. 2000) (finding party acted as an ERISA fiduciary in purchasing an allegedly imprudent annuity contract); *Riley v. Murdock*, 890 F. Supp. 444, 458 (E.D. N.C. 1995) (same).  It is also clear from the face of the Complaint and the annuity contracts that ILIAC has no control over deposits to the Fixed Account and GAA.  Those decisions are made solely by the Plaintiff and the Plans' participants.  *See* § 3.03, [Dkt. 27-3] at 14, ("[T]he Contract Holder [Plaintiff] will direct that the Net Purchase Payments allocated to that Account be credited among no more than 10 of the following [Plan investment options].").

Finally, although ILIAC does not seek, at this stage of the proceedings, dismissal of allegations that it is a fiduciary for purposes of Plaintiff's revenue-sharing allegations, its assumed fiduciary status for that purpose cannot change the fact that, on the face of the

9

Complaint and the contracts incorporated into it, amounts deposited in the Fixed Account and GAA are not plan assets and ILIAC has no ERISA fiduciary duties in relation to such deposits. *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) ("a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility.") (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987)). *See, e.g.*, *Local Union 2134, UMWA v. Powhatan Fuel, Inc.*, 828 F.2d 710, 713-14 (11th Cir. 1987) ("One assumes fiduciary status 'only when and to the extent' that they function in their capacity as . . . fiduciaries.") (internal citation omitted); *Ochsner Health Plan v. Northern Louisiana Physician Hosp. Org.*, No. 01-2601, 2002 U.S. Dist. LEXIS 24250, at *22-23 (E.D. La. Dec. 16, 2002) ("Regardless of whether an insurer . . . may be a fiduciary to the plan . . . ERISA does not impose upon insurers fiduciary responsibilities to manage premiums solely for the benefit of plan beneficiaries. Section 1101(b)(2) frees insurers from such fiduciary responsibilities."). In other words, even assuming arguendo that ILIAC could be deemed a fiduciary in some respect for purposes of the Fixed, GAA, or mutual fund accounts (which is not the case), that fact would not make ILIAC a fiduciary for deposits in the Fixed Account and GAA because such deposits are not plan assets under existing statutes and regulations. In short, resolving all inferences in favor of Plaintiff, dismissal of the claims relating to the Fixed and GAA accounts is still required as a matter of law.

### III. PLAINTIFF'S CLAIMS ARE EQUITABLE AND NOT SUBJECT TO A JURY TRIAL

Plaintiff claims that it is entitled to a jury trial because *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) somehow changed the legal landscape and jury trials in ERISA matters are the norm. Plaintiff is incorrect. Second Circuit authority, including cases

DB1/ 67637526.1

decided after *Great-West*, holds that jury demands based on claims such as those set forth in the Complaint cannot be tried before a jury. *See, e.g.*, *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003) ("there is no right to a jury trial under ERISA"); *Napoli v. First Unum Life Ins. Co.*, 78 Fed. App. 787, 790 (2d Cir. 2003) (holding that plaintiff was not entitled to a jury trial on ERISA claims). Thus, the Second Circuit joins the substantial majority of courts that have rejected requests for jury trials under ERISA after *Great West*.[3]

To argue that its jury demand is proper despite this controlling authority, Plaintiff relies on two cases from within this Circuit that are both distinguishable and wrongly decided. Specifically, *Bona v. Barasch*, No. 01-cv-2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003), turned on the fact that plaintiff in that case sought "money damages as compensation for losses," which was not equitable relief. *Id*. at *12. Even were this Court to find *Pereira* relevant to a claim brought under ERISA, it would only be relevant to claims seeking such compensatory damages. *See Peck v. Aetna Life Insurance Co.*, No. 3:04-cv-1139-JCH, 2007 WL 1598089, at *1 (D. Conn, June 1, 2007) (characterizing *Pereira* as having dealt "only with whether a plaintiff seeking compensatory damages for breach of fiduciary duty has a right to a jury trial"). Similarly, *Phones Plus, Inc. v. Hartford Financial Services Group, Inc.*, No. 3:06-cv-1835 (Sept. 30, 2008) (slip opinion), required a jury trial on count one which alleged that the plaintiff

---

[3] *See Ellis v. Rycenga Homes, Inc*., No. 1:04-cv-694, 2007 U.S. Dist. LEXIS 24127, at *12 (W.D. Mich. Apr. 2, 2007) ("Properly understood, neither *Mertens* nor *[Great-West]* requires a conclusion that the *Seventh Amendment* gives the right to a trial by jury in an action to recover money against the trustee for breach of duty for the benefit of an ERISA plan."); *Heindenreiter v. UNUM Life Ins. Co*., No. 05-CV-0681, 2006 U.S. Dist. LEXIS 35153, at *1 (N.D. Okla. May 30, 2006) (*Great-West* does not alter precedent); *White v. Martin*, No. Civ. 99-1447, 2002 U.S. Dist. LEXIS 6899, at *4 (D. Minn. Apr. 12, 2006) (rejecting contention that *Great-West* supports jury trial under ERISA where plaintiff seeks money damages); *Davison v. The Hartford Life & Acc. Ins. Co*., No. C-05-0132, 2005 U.S. Dist. LEXIS 40711, at *1 n.3 (N.D. Cal. Apr. 7, 2005) ("*Great-West* did not address … any issue pertaining to the right to a jury trial under ERISA"); *Allison v. UNUM Life Ins. Co*., No. CV 04-0025 (JS) (WDW), 2005 U.S. Dist. LEXIS 3465, at *14 (E.D.N.Y. Feb. 11, 2005) ("*Great-West* has not changed the law in this District regarding jury trials in ERISA actions."); *Hall v. Tyco Int'l, Ltd*., 233 F.R.D. 219, 242 (M.D.N.C. 2004) ("[I]t 'is of the opinion that it is still good law in the Fourth Circuit that ERISA actions are equitable in nature and are for the Court to decide rather than the jury.'") (citing *Lawrence v. Continental Cas. Co*., No. 1:97CV00980, 1998 U.S. Dist. LEXIS 15108, at *12 (M.D.N.C. June 10, 1998)).

11

"suffered losses and damages" as "a direct result" of the defendants' breaches of their duties. *Id*. at 9. The court contrasted this count with count two's demand for "disgorgement" and "restitution" which it characterized as being "equitable remedies." *Id*.

The Complaint here seeks purely equitable relief in the form of:

> A declaratory judgment holding that the acts of Defendants described herein violate ERISA and applicable law;
>
> A permanent injunction against Defendants prohibiting the practices described herein;
>
> Disgorgement and/or restitution of all revenue-sharing payments and other compensation improperly received by ING, or, alternatively, the profits earned by ING in connection with its receipt of such revenue sharing payments and other unlawful compensation . . . .

Compl. [Dkt. 1] ¶ 10. In its prayer for relief, Plaintiff repeats the demand for declaratory and injunctive relief and disgorgement and restitution. (*Id*, p. 31). The law is clear that when equitable relief is involved, a jury demand may not be granted. *Muller*, 341 F.3d at 124; *see also Phones Plus*, at 10 and n.1 (noting that neither *Great-West* nor *Pereria* overturned Second Circuit precedent that "a plaintiff is not entitled to have its equitable claims, arising from a breach of fiduciary duty by an ERISA fiduciary, tried to a jury"). Plaintiff's attempted characterization of this relief as "monetary relief" (while only discussing the allegations set forth in the Complaint in a footnote, Pl. Br. 39, n.10) is transparent. The paragraphs that Plaintiff points to which mention "losses and damages," Compl. [Dkt. 1] ¶¶ 9, 107, are simply passing references to the potential consequences of the equitable relief they seek and do not state any separate claim for legal relief.

Moreover, the relief sought by the plaintiffs in *Muller* and *Napoli* is arguably far closer to "legal" relief—payments due under a contract (plan document)—than the disgorgement of

12

revenue-sharing payments and allegedly excessive compensation that Plaintiff seeks here. Indeed, the entire Complaint depends on the allegation that Defendant improperly received Plan assets in the form of revenue sharing payments and other compensation.  The potential remedy available for these alleged harms, plainly set forth in the Complaint, is disgorgement, an equitable, not legal, remedy.  Therefore Plaintiff's jury demand should be stricken.

Dated:  July 5, 2011

  /s/ Gregory C. Braden
Gregory C. Braden (*admitted pro hac vice*)
Christopher A. Weals (*admitted pro hac vice*)
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 739-5217
Facsimile: (202) 739-3001
Email:  gbraden@morganlewis.com
       cweals@morganlewis.com

Jonathan B. Orleans (ct05442)
Pullman & Comley LLC
850 Main St., PO Box 7006
Bridgeport, CT  06601-7006
Telephone: (203) 330-2129
Facsimile: (203) 576-8888
Email: JBOrleans@pullcom.com

*Attorneys for Defendant*

13

## CERTIFICATE OF SERVICE

      I hereby certify that on July 5, 2011, a copy of foregoing Reply in Support of Defendant's Motion to Dismiss (In Part) Plaintiff's Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

               James E. Miller
               Patrick A. Klingman
               Laurie Rubinow
               Karen M. Leser-Grenon
               Shepherd Finkelman Miller & Shah, LLP
               65 Main Street
               Chester, CT 06412
               Email:   jmiller@sfmslaw.com
                           pkling@sfmslaw.com
                           lrubinow@sfmslaw.com
                           kleser@sfmslaw.com

               Scott R. Shepherd
               Eric L. Young
               Shepherd Finkelman Miller & Shah, LLP
               Media, PA 19063
               Email:    sshepherd@sfmslaw.com
                           eyoung@sfmslaw.com

               *Attorneys for Plaintiff*


               /s/Gregory C. Braden
               Gregory C. Braden
               Morgan, Lewis & Bockius, LLP
               1111 Pennsylvania Avenue, N.W.
               Washington, DC 20004
               Telephone: (202) 739-5217
               Facsimile: (202) 739-3001
               Email: gbraden@morganlewis.com