UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HEALTHCARE STRATEGIES, INC., ET AL., : | |
|     Plaintiffs, : | CIVIL ACTION NO. |
| : | 3:11-CV-282 (JCH) |
| v. : | |
| : | |
| ING LIFE INSURANCE & ANNUITY CO. : | JANUARY 18, 2012 |
|     Defendant. : | |

RULING RE:
MOTION TO DISMISS (Doc. No. 27)

## I.   INTRODUCTION

Plaintiff Healthcare Strategies, Inc. ("HSI"), brings this action on behalf of itself and "all others similarly situated" against ING Life Insurance and Annuity Company ("ILIAC"), alleging that revenue sharing payments received by ILIAC constitute prohibited transactions and violations of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Before the court is ILIAC's Partial Motion to Dismiss (Doc. No. 27) ("Def.'s Partial Mot. to Dismiss").  ILIAC argues that the court should dismiss any claims based on conduct that occurred more than six years prior to the complaint as barred by ERISA's statute of limitations, that the court should dismiss claims relating to ILIAC's fixed account and general accumulation account because they do not hold plan assets, and that the court should strike HSI's demand for a jury trial.

## II.   BACKGROUND[1]

HSI is the Plan Administrator of two 401(k) plans, and as such is a fiduciary of those plans.  Compl. ¶ 11.  ILIAC provides retirement services to HSI and others

---

[1] For the purposes of this Motion to Dismiss, the court takes the factual allegations in the Amended Complaint as true, and draws all reasonable inferences in favor of the plaintiff.

through a "comprehensive suite of dedicated tools and resources to help support and manage" retirement plans.  Compl. ¶¶ 21, 24.  One of the services that ILIAC provides to HSI is management of retirement plan assets pursuant to the terms of "Group Contracts" between the two parties.  Compl. ¶ 26.  ILIAC controls which investments are available to the plans and participants, and gives advice about those options.  Plan assets are invested in three types of accounts: fixed accounts, guaranteed accumulation accounts, and separate accounts.  Compl. ¶ 29.

Separate accounts are used to invest in mutual funds on behalf of plan participants, and assets in such accounts are held at market value.  Compl. ¶ 29; December 5, 1997 Multiple Asset Portfolio (MAP) V – Allocated Funding Agreement between HSI and ILIAC (Doc. No. 27-3) ("MAP V") 1.22.[2]  ILIAC pools the investments of the plans in separate accounts, and then divides the accounts into sub-accounts which correspond to plan participants' choices of mutual funds.  Compl. ¶¶ 33-35.  ILIAC controls the investment of separate account assets, and determines charges and fees.

Assets allocated to guaranteed accumulation accounts are held in a non-unitized separate account established under Conn. Gen. Stat § 38a-433.  Compl. ¶ 29.  ILIAC takes ownership of these assets, but guarantees a stipulated interest rate for a specified time period.  Compl. ¶ 29.

Assets allocated to fixed accounts are held in ILIAC's general account, comingled with other assets therein.  Compl. ¶ 29.  ILIAC makes all investment

---

[2] Although the MAP V contract was not attached to HSI's Complaint, it was nonetheless incorporated by reference, and therefore the court may consider it in deciding a motion under Fed. R. Civ. P. 12 (b)(6).  See Cortec Industries v. Sum Holding, 949 F.2d 42, 47 (2d Cir. 1991).

decisions regarding its general account and guarantees a minimum interest rate to fixed account assets. Compl. ¶ 29. All plans are required to offer fixed account options. Compl. ¶ 51. ILIAC may, but is not required to, credit interest at a rate higher than the guaranteed rate under the MAP V contract, see MAP V § 1.10, and earns as its profit the difference between the return it achieves on these assets and the guaranteed rate it pays out. Compl. ¶ 29.

HSI posits that ILIAC has breached its fiduciary duties under ERISA in several ways. First, HSI alleges that ILIAC uses its control over account options and investments to obtain revenue sharing payments from mutual funds and to engage in other self-dealing in violation of ERISA section 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). Compl. ¶¶ 101, 105. Specifically, HSI alleges that ILIAC has included certain mutual funds as investment options based on the funds' revenue sharing payments to ILIAC rather than the funds' potential to benefit the plans. Compl. ¶ 70. In its second count, HSI argues that ILIAC's receipt of revenue sharing payments constitute prohibited transactions under ERISA 406(b)(3), 29 U.S.C. 1106(b)(3). HSI also alleges that the fees charged by ILIAC to the plans do not bear a meaningful relationship to the cost of the services provided, and they thus constitute excessive compensation to ILIAC. Compl. ¶¶ 72, 74. By taking as its compensation the spread between the guaranteed payment and the investment performance of assets in fixed accounts and guaranteed accumulation accounts, HSI alleges that ILIAC has retained excessive compensation and engaged in self-dealing. Compl. ¶ 87.

**III.    STANDARD**

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally-cognizable claim by making allegations that, if true, would show he is entitled to relief.  See Bell Atlantic Corp v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief' ").  The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of N.Y., 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F. 3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp., 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard.  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir.2008).  The plausibility standard does not "require[ ] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8."  Arista Records v. Doe 3, 604 F.3d 110, 119 (2d Cir.2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by

4

Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S.Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

## IV. DISCUSSION

### A. Statute of Limitations

ILIAC asks the court to "dismiss Plaintiff's claims to the extent they are based on any alleged breach where the last action ILIAC allegedly undertook in furtherance of the alleged breach occurred more than six years prior to the date that Plaintiff filed the Complaint" and to dismiss the Complaint "to the extent it asserts any claim arising from any act or alleged harm occurring more than six years prior to its filing." Def.'s Partial Mot. to Dismiss at 10. The statute of limitations is an affirmative defense, and therefore generally not appropriate for a motion to dismiss. See Estate of Axelrod v. Flannery, 476 F. Supp. 2d 188, 203 (D. Conn. 2007). "Although the statute of limitations defense is usually raised in a responsive pleading, the defense may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint." Velez v.

5

City of New London, 903 F.Supp. 286, 289 (D.Conn.1995) (internal citation omitted); see also Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."). The Complaint does not allege sufficient facts to determine whether any or all of the claims are time-barred, nor does it allege facts showing that any or all of the claims are time-barred. Where, as here, a complaint does not demonstrate facial infirmity with respect to the statute of limitations, a motion to dismiss on this ground must fail. See, e.g., Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) (noting that "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss").

      B.     Fixed Account and Guaranteed Accumulation Account

ILIAC asserts that "the Fixed Account and the [Guaranteed Accumulation Account] are 'guaranteed benefit policies' under ERISA section 401(b)(2), 29 U.S.C. § 1101(b)(2)," and therefore do not constitute plan assets. Def.'s Partial Mot. to Dismiss at 11. ERISA imposes fiduciary duties on people who, with respect to employee benefit plans, exercise "any discretionary authority or discretionary control respecting management or disposition of its assets." 29 U.S.C. §1002(21)(A). ERISA does not define plan assets, except by exclusion in section 401(b)(2):

> In the case of a plan to which a guaranteed benefit policy is issued by an insurer, the assets of such plan shall be deemed to include such policy, but shall not, solely by reason of the issuance of such policy, be deemed to include any assets of such insurer. For purposes of this paragraph . . . (B) The term "guaranteed benefit policy" means an insurance policy or contract to the extent that such policy or contract provides for benefits the

>amount of which is guaranteed by the insurer. Such term includes any surplus in a separate account, but excludes any other portion of a separate account.

29 U.S.C. § 1101(b)(2). ILIAC argues that, because these accounts provide fixed rates of return and allocate all investment risk to ILIAC, "the amounts applied by the Plan to purchase the guaranteed returns of the Fixed Account and [Guaranteed Accumulation Account] are not plan assets and ILIAC's use of those assets is not subject to ERISA." Def.'s Partial Mot. to Dismiss at 11-12.

The Supreme Court construed ERISA's guaranteed benefit exclusion in John Hancock Mutual v. Harris Trust, 510 U.S. 86 (1993), where it instructed courts to determine a contract's eligibility for the statutory exclusion by dividing the contract into its component parts and examining the risk allocation of each. See id. at 102. The contract at issue in Harris Trust permitted deposits to be commingled with defendant's general corporate assets but could be "converted into a stream of guaranteed benefits for individual retirees." Id. at 90. The Harris Trust Court found that funds to which the rate of return was fixed constitute guaranteed benefits, but only to the extent that those funds provided guaranteed benefits. Id. at 90, 104. Other contract components, including those providing for a guaranteed return to the plan, did not constitute guaranteed benefits and therefore did not qualify for the statutory exclusion. See id. at 105.

HSI does not appear to contest that the MAP V contract provides a guaranteed return to individual retirees. Instead, it argues that the MAP V provision allowing ILIAC to make unilateral changes to the agreement renders the guaranteed benefits exemption inapplicable. See Pl.'s Mem. of Law in Opp'n To Def.'s Partial Mot. to

7

Dismiss (Doc. No. 32) ("Pl.'s Opp'n") 28.  Specifically, HSI argues that ILIAC's ability to make unilateral changes to the agreement makes ILIAC a fiduciary with respect to the fixed account and guaranteed accumulation account.  See id.  Section 8.01 of the Map V contract reads:

> This Contract may be changed at any time by written mutual agreement of the Contract Holder and the Company.  The Company may change the terms of this Contract when, in its opinion, such change is necessary to protect it from (a) the adverse financial effects of any change in Plan provisions, the administrative practices of the Plan, or investment options offered by the Plan, or (b) the action of any legislative, judiciary, or regulatory body which affects the operation of the Plan or this Contract . . . The Company will notify the Contract Holder in writing at least 30 days before the effective date of any change.  Any change will not affect the amount or terms of any Payment Option which begins before the change. . . . Except as otherwise expressly provided in the Contract, any change that affects the following Sections of this Contract will not be applied to amounts in existing Plan Accounts, but may apply to Purchase Payments made to such Accounts after the change: . . . (c) 4.02, Guaranteed Interest Rate – Fixed Account; (d) 4.03, Guaranteed Accumulation Account (GAA).

MAP V § 8.01.  HSI's reliance on ILIAC's purported ability to alter the plan is misplaced.  Because ILIAC does not retain the power to change contractually guaranteed benefits, see MAP V § 8.01, the change of contract provision does not, on its own, convert otherwise excludable benefits into plan assets.  Because both the fixed account and the guaranteed accumulation account provide guaranteed benefits under the MAP V contract, see Compl. ¶ 29, the fixed account and guaranteed accumulation account are not plan assets under ERISA.[3]  On this basis, ILIAC is entitled to dismissal of HSI's claims related to the fixed account and guaranteed accumulation account.

---

[3] HSI also argues that, because Fixed Account and Guaranteed Accumulation Account assets are subject to the claims of ILIAC's creditors, they "vary with the success of the [insurer's] investment policy," and therefore do not fit within the guaranteed benefit policy exclusion.  See Pl.'s Opp'n at 29-30.  The court agrees with ILIAC that this argument is groundless.  The cases HSI cites do not support its

C.     Jury Trial

In its Complaint, HSI demands a jury trial "for all claims so triable."  Compl. at 31. ILIAC contends that the court should strike this demand because no right to a jury exists under ERISA.  Def.'s Partial Mot. to Dismiss at 18-20.

In the past, courts have held that no jury trial right exists under ERISA because claims under ERISA are equitable in nature.[4]  In Great-West Life & Annuity Ins. v. Knudson, 534 U.S. 204 (2002), however, the Supreme Court analyzed a demand under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), which authorizes a civil action for, inter alia, "other appropriate equitable relief," 29 U.S.C. § 1332(a)(3), and found the plaintiff's claim for restitution inappropriate because the restitution sought was a legal, rather than an equitable, remedy.  See Great-West, 534 U.S. at 212 ("not all relief falling under the rubric of restitution is available in equity").  The Great-West Court held that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  Id. at 214.  As discussed at length in Great-West, ERISA section 502(a)(3) provides only for equitable remedies, and excludes claims for legal relief.  See id. at 209-11.  Great-West "reconfigured the legal landscape of restitution," Pereira v. Farace, 413 F.3d 330, 340 (2d Cir. 2005), and has been interpreted to permit jury trials on ERISA claims when such claims are legal rather than equitable in nature.

---

argument.  See id. (citing Harris Trust, 510 U.S. at 101-102 (holding that variable annuities are not exempt from ERISA); Nw. Mut. Life Ins. v. Resolution Trust, 848 F. Supp. 1515, 1518-1519 (N.D. Ala. 1994) (determining that life insurance policies were not assets of benefit plans and not subject to ERISA). HSI offers no support for its argument that the risk that ILIAC's debts will exceed its assets transforms fixed annuities into variable annuities.

[4] Before Great-West, every federal circuit considering the issue had held that ERISA claims for breach of fiduciary duty did not entitle plaintiffs to a jury trial under section 409 or 502(a)(2).  See, e.g., Katsaros v. Cody, 744 F.2d 270 (2d Cir.), cert. denied, 469 U.S. 1072 (1984).

See, e.g., Bona v. Barasch, No. 01 Civ. 2289 (MBM), 2003 WL 1395932 at *33-34 (S.D.N.Y. Mar. 20, 2003) (refusing to strike jury demand by fiduciary in claim for damages for breach of fiduciary duty pursuant to section 502(a)(2)), reconsidered and rev'd in part on other grounds sub nom. Martinez v. Barasch, No. 01 Civ. 2289 (MBM), 2004 WL 1555191 (S.D.N.Y. July 12, 2004); see also Peck v. Aetna Life Ins., No. 3:04-cv-1139 (JCH), 2007 WL 1598089 (D. Conn. June 1, 2007) (denying plaintiff's Motion for Reconsideration of the court's Ruling striking plaintiff's jury trial demand in claim for wrongful denial of disability benefits pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1132 because the Second Circuit's ruling in Pereira, 413 F.3d at 337, applies only to actions seeking compensatory damages for breach of fiduciary duty). To determine whether a claim is legal or equitable, courts must now "examine the basis for the plaintiff's claim and the nature of the underlying remedies sought." Great-West, 534 U.S. at 213.

In the first count of its Complaint, HSI charges that ILIAC is liable to "restore to the Plans the losses they have suffered as a direct result" of ILIAC's use of plan assets to generate revenue sharing payments pursuant to ERISA sections 408 and 502(a), 29 U.S.C. §§ 1104 and 1132(a). Compl. ¶ 108. HSI's first count is similar to the claim at issue in Coan v. Kaufman, 333 F. Supp. 2d 14 (D. Conn. 2004). The plaintiff in Coan, a plan participant, sought compensation for losses to the plan that allegedly resulted from defendants' breach of fiduciary duty by failure to diversify the plan's investments. See Coan, 333 F. Supp. 2d at 26. The plaintiff argued that her claim was equitable, and therefore available under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), but the court found her claim to be "effectively a money damages request," and therefore a legal

claim. Id. In this case, HSI seeks compensation for losses to the plans that result from ILIAC's alleged breach of fiduciary duty. See Compl. ¶ 108. The Great-West test for equitable restitution—specifically identifiable property in the hands of the defendant—is not met based on the facts alleged in the complaint. Therefore, it is inappropriate to strike HSI's demand for a jury trial as to its first count.

In the second count of its Complaint, HSI charges that ILIAC is liable "to credit back, disgorge, and/or make restitution of all revenue sharing payments and other improper compensation received by it; or to make restitution to the plans in an amount representing the difference between the revenue sharing payments and other compensation that it received, and the reasonable fair market value of any services provided by ING" pursuant to ERISA sections 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2). Compl. ¶ 112. In Haddock v. Nationwide Fin. Servs., 262 F.R.D. 97 (D. Conn. 2009), the court found that plaintiff trustees seeking, inter alia, defendants' profits obtained by revenue sharing payments to the plan were "accurately described as disgorgement," an equitable remedy. Id. at 126-127. HSI's second count, like the claim in Haddock, seeks disgorgement, which is an equitable remedy. Therefore, ILIAC's Motion to Strike the jury demand is granted as to the second count.

HSI's third count seeks remedies against ILIAC as a non-fiduciary that knowingly participated in a breach of trust. See Compl. ¶¶ 115-116. Such a claim could not be brought under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), which applies only to claims brought against fiduciaries. See 29 U.S.C. § 1132(a)(2) (referring to 29 U.S.C. § 1109, which imposes liability on fiduciaries). ERISA claims against non-fiduciaries have been recognized only under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). See

Harris Trust and Sav. Bank v. Salomon Smith Barney, 530 U.S. 238, 245 (2000).  As discussed above, ERISA section 502(a)(3) permits only equitable remedies and does not permit jury trials.  See Great-West, 534 U.S. at 209-10; see also De Pace v. Matsushita Elec. Corp., 257 F. Supp. 2d 543, 573-74 (E.D.N.Y. 2003) (striking jury demand where plaintiff makes claims only under section 502(a)(3)).  Therefore, ILIAC's Motion to Strike the jury demand is granted as to the third count.

**V.     CONCLUSION**

For the reasons discussed above, ILIAC's Partial Motion to Dismiss (Doc. No. 27) is **GRANTED IN PART** and **DENIED IN PART**.  The Motion to Dismiss claims based on events or injuries that fall outside the statute of limitations is **DENIED**.  The Motion to Dismiss claims relating to ILIAC's fixed accounts and general accumulation accounts is **GRANTED**.  The Motion to strike HSI's demand for a jury trial is **DENIED** as to Count One and **GRANTED** as to Counts Two and Three.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 18th day of January, 2012.


            /s/ Janet C. Hall            
            Janet C. Hall
            United States District Judge