## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HEALTH STRATEGIES, INC., Plan Administrator of the Healthcare Strategies, Inc. 401(k) Plan and the Healthcare Strategies, Inc. CBU 401(k) Plan, On Behalf of Itself and All Other Similarly Situated, | : : : : : : | |
| Plaintiff, | : : | No. 3:11-cv-00282 (JCH) |
| vs. | : : | |
| ING LIFE INSURANCE AND ANNUITY COMPANY, | : : : | |
| Defendant. | : : | February 16, 2012 |

### DEFENDANT ING LIFE INSURANCE AND ANNUITY COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant ING Life Insurance and Annuity Company ("ILIAC" or the "Company"), by and through its attorneys, Morgan, Lewis & Bockius, hereby answers[1] the Class Action Complaint ("Complaint") of Plaintiff Health Strategies Inc., the Plan Administrator of the Healthcare Strategies, Inc. 401(k) Plan and Healthcare Strategies, Inc. CBU 401(k) Plan ("Plaintiff") as follows:

### INTRODUCTION[2]

**ANSWER TO PARAGRAPH 1:**     ILIAC admits it has entered into agreements, sometimes titled or internally called Participation Agreements, with some mutual fund companies. The terms of ILIAC's relationship with these mutual fund companies are governed by the agreements, which are documents that speak for themselves. The remaining allegations in Paragraph 1 are legal conclusions to which no response is necessary. To the extent a response is

---

[1]     ILIAC addresses the effect of the Court's ruling on its partial motion to dismiss as appropriate herein.

[2]     ILIAC restates the headings within the Complaint solely for the convenience of the reader and denies any factual allegations and legal conclusions that may be included or implied in the headings.

required, ILIAC denies the remaining allegations in Paragraph 1.

**ANSWER TO PARAGRAPH 2:**   ILIAC denies the allegations in Paragraph 2.

**ANSWER TO PARAGRAPH 3:**   ILIAC denies the allegations in Paragraph 3.

**ANSWER TO PARAGRAPH 4:**   ILIAC denies the allegations in Paragraph 4.

**ANSWER TO PARAGRAPH 5:**   ILIAC lacks information sufficient to form a belief as to how other unidentified service providers describe payments they receive from mutual fund companies or the bases for such payments and therefore denies any allegations regarding the same.  ILIAC denies the remaining allegations in Paragraph 5.

**ANSWER TO PARAGRAPH 6:**   ILIAC denies the allegations in Paragraph 6.

**ANSWER TO PARAGRAPH 7:**   ILIAC denies the allegations in Paragraph 7.

**ANSWER TO PARAGRAPH 8:**   ILIAC denies the allegations in Paragraph 8 relating to the "Separate Accounts."  On January 19, 2012, the Court dismissed Plaintiff's claims related to the Fixed Account and General Accumulation Account ("GAA") and therefore no response to these allegations are required.

**ANSWER TO PARAGRAPH 9:**   ILIAC admits that Plaintiff purports to seek the relief described in Paragraph 9, but denies that Plaintiff is entitled to any such relief; denies that the case may properly be certified as a class action; denies that any member of the putative class is entitled to any relief; and denies all remaining allegations in Paragraph 9.

**ANSWER TO PARAGRAPH 10:**   ILIAC admits that Plaintiff purports to seek the relief described in Paragraph 10, but denies that Plaintiff is entitled to any such relief; denies that the case may properly be certified as a class action; denies that any member of the putative class is entitled to any relief; and denies all remaining allegations in Paragraph 10.

## I.    THE PARTIES

**ANSWER TO PARAGRAPH 11:**   Upon information and belief, ILIAC admits the allegations in Paragraph 11.

**ANSWER TO PARAGRAPH 12:**   ILIAC admits that it maintains its principal place of business and headquarters at One Orange Way, Windsor, Connecticut 06095-4774.  The remaining allegations in Paragraph 12 are legal conclusions to which no response is necessary. To the extent that a response is required, ILIAC denies the remaining allegations in Paragraph 12.

## II.    JURISDICTION AND VENUE

**ANSWER TO PARAGRAPH 13:**   ILIAC admits that Plaintiff purports to seek the relief described in Paragraph 13, but denies that Plaintiff is entitled to any such relief; denies that this case may properly be certified as a class action; denies that any member of the putative class is entitled to any relief; and denies the remaining allegations in Paragraph 13.

**ANSWER TO PARAGRAPH 14:**   ILIAC states that the allegations in Paragraph 14 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC admits only that this Court has subject matter jurisdiction over Plaintiff's claims.  ILIAC denies the remaining allegations in Paragraph 14.

**ANSWER TO PARAGRAPH 15:**   ILIAC admits that it maintains its principal place of business and headquarters in Windsor, Connecticut.  The remaining allegations in Paragraph 15 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC admits that venue in this district is proper.

**ANSWER TO PARAGRAPH 16:**   ILIAC denies the allegations in Paragraph 16.

### III.    BACKGROUND FACTS

**A.    The Services That ING Provides**

**ANSWER TO PARAGRAPH 17:**   The allegations in Paragraph 17 purport to quote the contents of a website that can be found at http://ing.us/employers/retirement-plans.  Such website speaks for itself and ILIAC denies any allegations that conflict with or contradict the contents of that website.  ILIAC denies the remaining allegations in Paragraph 17.

**ANSWER TO PARAGRAPH 18:**   The allegations in Paragraph 18 purport to quote the contents of a website that can be found at http://ing.us/employers/retirement-plans.  Such website speaks for itself and ILIAC denies any allegations that conflict with or contradict the contents of that website.  ILIAC denies the remaining allegations in Paragraph 18.

**ANSWER TO PARAGRAPH 19:**   The allegations in Paragraph 19 purport to quote the contents of a website that can be found at http://ing.us/employers/retirement-plans.  Such website speaks for itself and ILIAC denies any allegations that conflict with or contradict the contents of that website.  ILIAC denies the remaining allegations in Paragraph 19.

**ANSWER TO PARAGRAPH 20:**   The allegations in Paragraph 20 purport to quote the contents of a website that can be found at http://ing.us/employers/retirement-plans.  Such website speaks for itself and ILIAC denies any allegations that conflict with or contradict the contents of that website.  ILIAC denies the remaining allegations in Paragraph 20.

**ANSWER TO PARAGRAPH 21:**   ILIAC admits that ILIAC and ING Institutional Plan Services provide retirement services to their respective retirement plan customers.  ILIAC denies that ING Institutional Plan Services provided retirement services to Plaintiff or Plaintiff's Plans.  ILIAC denies the remaining allegations in Paragraph 21.

**ANSWER TO PARAGRAPH 22:**   ILIAC admits certain participant contributions are

invested through Separate Accounts (as defined by Plaintiff) and that ILIAC includes those amounts in its description of its assets under management.  ILIAC denies the remaining allegations in Paragraph 22.

**ANSWER TO PARAGRAPH 23:**  ILIAC admits that it has products that serve retirement plans across different markets and of all sizes, including the HSI Plans.  The remaining allegations in Paragraph 23 are vague and ambiguous.  To the extent that a further response is required, ILIAC denies the remaining allegations in Paragraph 23.

**ANSWER TO PARAGRAPH 24:**  The allegations in Paragraph 24 purport to quote the contents of a website that can be found at http://ing.us/employers/retirement-plans/401k-infocenter.  Such website speaks for itself and ILIAC denies any allegations that conflict with or contradict the contents of that website.  To the extent that a further response is required, ILIAC denies the remaining allegations in Paragraph 24.

**ANSWER TO PARAGRAPH 25:**  ILIAC admits that pursuant to agreements between ILIAC and its customers, ILIAC provides a variety of services to those customers, including to the HSI Plans.  ILIAC denies that it performs all of these services in Windsor, Connecticut.  The specific services ILIAC provides to its customers are set forth in agreements between ILIAC and its customers.  These documents speak for themselves and ILIAC denies any allegations that contradict or conflict with such documents.  ILIAC denies the remaining allegations in Paragraph 25.

**B.    The Agreements Between The Plans And ING And The Retirement Investments Provided Under Those Agreements**

**ANSWER TO PARAGRAPH 26:**  The allegations in Paragraph 26 apparently quote an unidentified document and appear to modify the contents of that document.  Upon information and belief, ILIAC denies that Paragraph 26 provides a complete or accurate characterization of

the document's relevant language and states that the document speaks for itself.  ILIAC denies the remaining allegations in Paragraph 26.

**ANSWER TO PARAGRAPH 27**:   To the extent that Plaintiff's allegations in Paragraph 27 are based on the contents of Group Contracts, which Plaintiff has neither identified nor attached to this Complaint, those documents speak for themselves.  Because Plaintiff has neither identified nor attached those documents to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 27.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 27.

**ANSWER TO PARAGRAPH 28**:   ILIAC admits that it entered into a group funding agreement with Plaintiff and pursuant to the terms of that agreement ILIAC provided Plaintiff with a menu of possible investment options that Plaintiff could select to offer to the participants of the HSI plans.  This document speaks for itself.  ILIAC denies the remaining allegations in Paragraph 28.

**ANSWER TO PARAGRAPH 29**:   On January 19, 2012, the Court dismissed Plaintiff's claims related to the Fixed Account and GAA and therefore no response to these allegations is required.  The remaining allegations in Paragraph 29 contain legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 29.

**ANSWER TO PARAGRAPH 30**:   ILIAC admits that participants who choose to invest through the Separate Accounts neither purchase nor own the shares of the account's underlying mutual funds.  ILIAC further admits that participants in Plaintiff's plans had the ability to invest in ILIAC's Fixed Account.  ILIAC denies the remaining allegations in Paragraph 30.

**ANSWER TO PARAGRAPH 31**:   ILIAC admits the allegations in Paragraph 31.

**ANSWER TO PARAGRAPH 32**:  ILIAC admits that some of its products offer variable fund investment options through Separate Accounts to qualified retirement plans. ILIAC denies the remaining allegations in Paragraph 32.

**ANSWER TO PARAGRAPH 33**:  ILIAC admits that, when participant contributions are allocated to a variable fund, shares of that fund are purchased by ILIAC and held in sub-accounts within the Separate Accounts.  ILIAC denies the remaining allegations in Paragraph 33.

**ANSWER TO PARAGRAPH 34**:  ILIAC denies the allegations in Paragraph 34.

**ANSWER TO PARAGRAPH 35**:  ILIAC admits that, when participants allocate contributions to a variable fund, their accounts hold accumulation units in the corresponding separate account.  ILIAC denies the remaining allegations in Paragraph 35.

**ANSWER TO PARAGRAPH 36**:  ILIAC admits that it owns the separate accounts and the fund shares held by the separate accounts.  ILIAC denies the remaining allegations in Paragraph 36.

**ANSWER TO PARAGRAPH 37**:  ILIAC denies the allegations in Paragraph 37.

**ANSWER TO PARAGRAPH 38**:  ILIAC denies the allegations in Paragraph 38.

**ANSWER TO PARAGRAPH 39**:  ILIAC denies the allegations in Paragraph 39.

**ANSWER TO PARAGRAPH 40**:  ILIAC denies the allegations in Paragraph 40.

**ANSWER TO PARAGRAPH 41**:  ILIAC denies the allegations in Paragraph 41.

**ANSWER TO PARAGRAPH 42**:  ILIAC denies the allegations in Paragraph 42.

**ANSWER TO PARAGRAPH 43**:  ILIAC denies the allegations in Paragraph 43.

**ANSWER TO PARAGRAPH 44**:  On January 19, 2012, the Court dismissed Plaintiff's claims related to the Fixed Account and GAA and therefore no response to these allegations is required. ILIAC denies the remaining allegations in Paragraph 44.

**ANSWER TO PARAGRAPH 45:**   ILIAC denies the allegations in Paragraph 45.

**ANSWER TO PARAGRAPH 46:**   ILIAC admits that it owns the separate accounts. ILIAC denies the remaining allegations in Paragraph 46.

**ANSWER TO PARAGRAPH 47:**   ILIAC denies the allegations in Paragraph 47.

**ANSWER TO PARAGRAPH 48:**   To the extent that Plaintiff's allegations in Paragraph 48 are based on the content of a particular Group Contract, which Plaintiff has neither identified nor attached to this Complaint, that document speaks for itself.  Because Plaintiff has neither identified nor attached this document to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 48.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 48.

**ANSWER TO PARAGRAPH 49:**   ILIAC's ability to control the menu of available investments offered to its customers is governed by the terms of its contracts with those customers.  Those documents speak for themselves.  To the extent that a further response is required, ILIAC denies the remaining allegations in Paragraph 49.

**ANSWER TO PARAGRAPH 50:**   ILIAC denies the allegations in Paragraph 50.

**ANSWER TO PARAGRAPH 51:**   On January 19, 2012, the Court dismissed Plaintiff's claims related to the Fixed Account and GAA and therefore no response to these allegations is required. ILIAC denies the remaining allegations in Paragraph 51.

**ANSWER TO PARAGRAPH 52:**   On January 19, 2012, the Court dismissed Plaintiff's claims related to the Fixed Account and GAA and therefore no response to these allegations is required.  ILIAC denies the remaining allegations in Paragraph 52.

**ANSWER TO PARAGRAPH 53:**   On January 19, 2012, the Court dismissed Plaintiff's claims related to the Fixed Account and GAA and therefore no response to these

allegations is required.  To the extent that Plaintiff's remaining allegations in Paragraph 53 are based on the content of a particular Group Contract, which Plaintiff has neither identified nor attached to this Complaint, that document speaks for itself.  Because Plaintiff has neither identified nor attached this document to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 53.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 53.

  **ANSWER TO PARAGRAPH 54**:   To the extent that Plaintiff's allegations in Paragraph 54 are based on the content of a particular Group Contract, which Plaintiff has neither identified nor attached to this Complaint, that document speaks for itself.  Because Plaintiff has neither identified nor attached this document to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 54.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 54.

  **ANSWER TO PARAGRAPH 55**:   To the extent that Plaintiff's allegations in Paragraph 55 are based on the content of a particular Group Contract, which Plaintiff has neither identified nor attached to this Complaint, that document speaks for itself.  Because Plaintiff has neither identified nor attached this document to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 55.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 55.

**C.**  **The Plans**

  **ANSWER TO PARAGRAPH 56**:   On information and belief, ILIAC admits the allegations in Paragraph 56.

  **ANSWER TO PARAGRAPH 57**:   To the extent that Plaintiff's allegations in Paragraph 57 are based on the contents of particular Group Contracts and other documents,

which Plaintiff has neither identified nor attached to this Complaint, those documents speak for themselves.  Because Plaintiff has neither identified nor attached those documents to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 57.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 57.

**ANSWER TO PARAGRAPH 58:**  ILIAC denies the allegations in Paragraph 58, and further states that there are no "members of the Class" because no class has been certified by the Court, nor should the Court certify any such class.  ILIAC further states that the services it provides to its customers are governed by its agreements with those customers, which are documents that speak for themselves.

**D.     The Relationship Between and Among Class Members, ING and The Mutual Funds**

**ANSWER TO PARAGRAPH 59:**  ILIAC admits that it provides certain retirement services to its qualified ERISA retirement plan customers.  ILIAC further states that the services it provides to its customers are governed by its agreements with those customers, which are documents that speak for themselves.  Plaintiff has failed to define "ING agents" and this terms is vague and ambiguous, and therefore ILIAC denies any allegations with respect to that term. ILIAC denies the remaining allegations in Paragraph 59.

**ANSWER TO PARAGRAPH 60:**  ILIAC admits the allegations in Paragraph 60.

**ANSWER TO PARAGRAPH 61:**  ILIAC admits that it provides services to its clients pursuant to the terms of its agreements with those clients.  ILIAC denies the remaining allegations in Paragraph 61.

**ANSWER TO PARAGRAPH 62:**  Paragraph 62 contains legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 62.

**ANSWER TO PARAGRAPH 63:**   ILIAC denies the allegations in Paragraph 63.

**ANSWER TO PARAGRAPH 64:**   ILIAC admits that certain of its products are offered through group annuity contracts or similar agreements and that some of the investments offered in those products have been managed by entities affiliated with ILIAC.   ILIAC denies the remaining allegations in Paragraph 64.

**ANSWER TO PARAGRAPH 65:**   ILIAC admits that for certain products it creates and maintains menus of investment options from which its clients may choose investment options to offer to plan participants and that ILIAC monitors the options on those menus.   ILIAC further states that its ability to change the composition of those menus is governed by its agreements with its customers, which are documents that speak for themselves.   ILIAC denies the remaining allegations in Paragraph 65.

**ANSWER TO PARAGRAPH 66:**   To the extent that the Plaintiff's allegations in Paragraph 66 are based on the content of particular Group Contracts, which Plaintiff has neither identified nor attached to this Complaint, those documents speaks for themselves.   Because Plaintiff has neither identified nor attached those documents to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 66.   To the extent that a response is required, ILIAC denies the allegations in Paragraph 66.

**ANSWER TO PARAGRAPH 67:**   To the extent that the Plaintiff's allegations in Paragraph 67 are based on the content of particular Group Contracts, which Plaintiff has neither identified nor attached to this Complaint, those documents speaks for themselves.   Because Plaintiff has neither identified nor attached those documents to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 67.   To the extent that a response is required, ILIAC denies the allegations in Paragraph 67.

**ANSWER TO PARAGRAPH 68**:   ILIAC's authority to change the composition of the investment menus is governed by its agreements with its customers, which are documents that speak for themselves.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 68.

**ANSWER TO PARAGRAPH 69**:   ILIAC's fee arrangements with its customers are governed by its agreements with those customers, which are documents that speak for themselves.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 69.

**ANSWER TO PARAGRAPH 70**:   ILIAC admits that it offers product with a wide array of investment options from which Plan sponsors can choose.  ILIAC denies the remaining allegations in Paragraph 70.

**ANSWER TO PARAGRAPH 71**:   ILIAC admits that mutual funds establish the expense ratios associated with their investment offerings.  ILIAC denies the remaining allegations in Paragraph 71.

**ANSWER TO PARAGRAPH 72**:   To the extent that Plaintiff's allegations in Paragraph 72 are based on the content of particular agreements between ILIAC and the mutual funds, which Plaintiff has neither identified nor attached to this Complaint, those documents speaks for themselves.  Because Plaintiff has neither identified nor attached those documents to this Complaint, ILIAC is without sufficient information to admit or deny the allegations in Paragraph 72.  To the extent that a response is required, ILIAC denies the allegations in Paragraph 72.

**ANSWER TO PARAGRAPH 73**:   ILIAC denies the allegations in Paragraph 73.

**ANSWER TO PARAGRAPH 74**:   ILIAC denies the allegations in Paragraph 74.

**ANSWER TO PARAGRAPH 75:**  ILIAC denies the allegations in Paragraph 75.

**ANSWER TO PARAGRAPH 76:**  ILIAC denies the allegations in Paragraph 76.

**ANSWER TO PARAGRAPH 77:**  ILIAC denies the allegations in Paragraph 77.

**E.     The Revenue Sharing Scheme**

**ANSWER TO PARAGRAPH 78:**  ILIAC admits that it offers various products to employee pension benefit plans.  ILIAC denies the remaining allegations in Paragraph 78.

**ANSWER TO PARAGRAPH 79:**  ILIAC denies the allegations in Paragraph 79.

**ANSWER TO PARAGRAPH 80:**  ILIAC denies the allegations in Paragraph 80.

**ANSWER TO PARAGRAPH 81:**  ILIAC admits that agreements with mutual fund providers are memorialized in written agreements the terms of which speak for themselves. ILIAC denies the remaining allegations in Paragraph 81.

**ANSWER TO PARAGRAPH 82**:  ILIAC admits that it may receive compensation in the form of 12b-1 fees, service fees, sub-transfer fees, or similar fees pursuant to its agreements with some mutual fund providers.   ILIAC denies the remaining allegations in Paragraph 82.

**ANSWER TO PARAGRAPH 83:**  ILIAC denies the allegations in Paragraph 83.

**ANSWER TO PARAGRAPH 84**:  ILIAC denies the allegations in Paragraph 84.

**ANSWER TO PARAGRAPH 85:**  ILIAC denies the allegations in Paragraph 85.

**ANSWER TO PARAGRAPH 86:**  The allegations in Paragraph 86 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 86.

**F.     ING Also Improperly Earns Income On The Fixed Account, GAA And Separate Accounts Through Its Conflicted Arrangements And Self-Dealing**

**ANSWER TO PARAGRAPH 87:**  On January 19, 2012, the Court dismissed Plaintiff's claims related to the Fixed Account and GAA and therefore no response to these

allegations is required.  ILIAC denies the remaining allegations in Paragraph 87.

**ANSWER TO PARAGRAPH 88:**  ILIAC denies the allegations in Paragraph 88.

## IV.     CLASS ACTION ALLEGATIONS

**ANSWER TO PARAGRAPH 89:**  ILIAC admits that Plaintiff purports to bring a class action on behalf of the class described in Paragraph 89, but denies that Plaintiff and the proposed class satisfy the requirements for class certification.  ILIAC denies the remaining allegations in Paragraph 89.

**ANSWER TO PARAGRAPH 90:**  The allegations in Paragraph 90 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 90.

**ANSWER TO PARAGRAPH 91:** The allegations in Paragraph 91 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 91.

**ANSWER TO PARAGRAPH 92:** The allegations in Paragraph 92 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 92.

**ANSWER TO PARAGRAPH 93:**  The allegations in Paragraph 93 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 93.

**ANSWER TO PARAGRAPH 94:**  The allegations in Paragraph 94 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 94.

**ANSWER TO PARAGRAPH 95:**  The allegations in Paragraph 95 are legal

conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 95.

**ANSWER TO PARAGRAPH 96:**  The allegations in Paragraph 96 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 96.

**ANSWER TO PARAGRAPH 97:**  The allegations in Paragraph 97 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 97.

**ANSWER TO PARAGRAPH 98:**  The allegations in Paragraph 98 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 98.

<u>**COUNT I**</u>
**(For Breach Of Fiduciary Duty)**

**ANSWER TO PARAGRAPH 99:**  ILIAC incorporates by reference its answers to Paragraphs 1 through 98.

**ANSWER TO PARAGRAPH 100:**    The allegations contained in Paragraph 100 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 100.

**ANSWER TO PARAGRAPH 101:**    ILIAC denies the allegations in Paragraph 101.

**ANSWER TO PARAGRAPH 102:**    The allegations in Paragraph 102 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 102.

**ANSWER TO PARAGRAPH 103:**    The allegations in Paragraph 103 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC

denies the allegations in Paragraph 103.

**ANSWER TO PARAGRAPH 104:**   The allegations in Paragraph 104 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 104.

**ANSWER TO PARAGRAPH 105:**   The allegations in Paragraph 105 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 105.

**ANSWER TO PARAGRAPH 106:**   On January 19, 2012, the Court dismissed Plaintiff's claims related to the Fixed Account and GAA and therefore no response to these allegations is required.  ILIAC denies the remaining allegations in Paragraph 106.

**ANSWER TO PARAGRAPH 107:**   ILIAC denies the allegations in Paragraph 107.

**ANSWER TO PARAGRAPH 108:**   The allegations in Paragraph 108 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 108.

## COUNT II

**(For Breach Of Fiduciary Duty And Violation Of ERISA's Prohibited Transaction Rules)**

**ANSWER TO PARAGRAPH 109:**   ILIAC incorporates by reference its answers to Paragraphs 1 through 108.

**ANSWER TO PARAGRAPH 110:**   The allegations in Paragraph 110 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 110.

**ANSWER TO PARAGRAPH 111:**   The allegations in Paragraph 111 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC

denies the allegations in Paragraph 111.

**ANSWER TO PARAGRAPH 112:**    The allegations in Paragraph 112 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 112.

**ANSWER TO PARAGRAPH 113:**    The allegations in Paragraph 113 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies that Plaintiff and the purported class are entitled to any relief whatsoever.

**ANSWER TO PARAGRAPH 114:**    ILIAC admits that the putative class seeks the relief described in Paragraph 114, but denies that Plaintiff and the purported class are entitled to the relief requested.  ILIAC denies the remaining allegations in Paragraph 114.

## COUNT III

### (For Co-Fiduciary Breach And Liability For Knowing Breach Of Trust)

**ANSWER TO PARAGRAPH 115:**    ILIAC incorporates by reference its answers to Paragraphs 1 through 114.

**ANSWER TO PARAGRAPH 116:**    The allegations in Paragraph 116 are legal conclusions to which no response is necessary.  To the extent a response is required, ILIAC denies the allegations in Paragraph 116.

## RELIEF SOUGHT

With respect to Plaintiff's prayer for relief (beginning with the "WHEREFORE" clause on page 31), ILIAC denies that Plaintiff or any member of the putative class is entitled to any relief from ILIAC.

## DEMAND FOR JURY TRIAL

ILIAC denies that Plaintiff is entitled to a jury trial on any of its claims.

## GENERAL DENIAL

ILIAC denies each and every allegation in the Complaint not specifically admitted herein.  ILIAC denies that it is liable to Plaintiff or any member of the putative class for any of the relief sought in the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES[3]

### First Affirmative Defense

The Complaint fails to state a claim against ILIAC upon which relief can be granted.

### Second Affirmative Defense

Plaintiff failed to mitigate its damages, if any, by among other things continuing to engage ILIAC as its service provider for years after Plaintiff knew or should have known of ILIAC's receipt of what Plaintiff characterizes as revenue sharing payments.  Any recovery by Plaintiff must be reduced by the amount of damages that Plaintiff failed to mitigate.

### Third Affirmative Defense

Plaintiff's causes of action are barred by the applicable statute of limitation or statute of repose.

### Fourth Affirmative Defense

Plaintiff's claims are barred by the doctrines of unclean hands, waiver, estoppel, laches, consent, ratification, or release.

### Fifth Affirmative Defense

Plaintiff consented to the fees at issue after it knew or should have known of their existence; therefore, Plaintiff cannot obtain any relief on account of the payment of those fees.

---

[3]     By listing a defense as an affirmative or other defense, ILIAC does not concede or admit that it bears the burden of proof with regard to such defense.

## Sixth Affirmative Defense

Plaintiff lacks standing to sue on behalf of other putative class members.

## Seventh Affirmative Defense

Count III is barred in whole or in part because it is preempted by ERISA or SLUSA (the Securities Litigation Uniform Standards Act of 1998).

## Eighth Affirmative Defense

Count II is barred in whole or in part by ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2) and ERISA § 408(c)(2), 29 U.S.C. § 1108(c)(2).

## Ninth Affirmative Defense

The claims asserted in the Complaint are barred in whole or in part or are subject to offset to the extent that the conduct complained of conferred a benefit upon Plaintiff or (to the extent a class is certified) any member of the class.

## Tenth Affirmative Defense

Some or all of Plaintiff's claims are barred under ERISA § 404(c), 29 U.S.C. § 1104(A)(1), which establishes a "safe harbor" where a plan permits the participant to exercise control over assets. *See Hecker v. Deere & Co.*, 556 F.3d 575, 578 (7th Cir. 2009).

Plaintiff's claims that ILIAC breached its alleged fiduciary duties are barred by the safe harbor defense of Section 404(c). First, individual participants have control over the investments in their individual accounts. (Compl. ¶ 35). Second, participants (and plans) enjoy a broad range of investment alternatives. Third, ILIAC and mutual fund providers provide sufficient information about available investments.

## Eleventh Affirmative Defense

To the extent that the harm allegedly suffered by Plaintiff was caused by Plaintiff or any

third party, recovery should be barred in whole or in part.

**Twelfth Affirmative Defense**

To the extent that Plaintiff or any third party benefited from the conduct alleged in the Complaint, Plaintiff's recovery should be offset or reduced by such benefit.

**DEFENDANT'S COUNTERCLAIMS**

1.      Defendant ING Life Insurance and Annuity Company ("ILIAC" or the "Company"), hereby counterclaims against Plaintiff, Health Strategies, Inc. ("HSI"), Plan Administrator of the Healthcare Strategies, Inc. 401(k) Plan and the Healthcare Strategies, Inc. CBU 401(k) Plan (the "Plans").

2.      HSI alleges that ILIAC acted as an ERISA fiduciary to the Plans and that ILIAC allegedly breached its purported fiduciary duties and engaged in transactions prohibited by ERISA by using its purported possession, control, or influence over the Plans' assets to generate "revenue-sharing" fees or payments from mutual funds in exchange for offering those funds as investment options to the Plans.

3.      HSI also alleges that even if the Court finds that ILIAC did not act as an ERISA fiduciary, it is nonetheless liable to the Plans for knowingly participating in a breach of trust with respect to the Plans.

4.      Defendant brings these counterclaims without prejudice to the positions it takes in its Answer to Plaintiff's Complaint, and only if the Court finds that ILIAC is liable to the Plans.

5.      Furthermore, Defendant brings these counterclaims only if the Court finds that ILIAC is liable. HSI purports to bring this action on behalf of a class of ERISA plan sponsors and/or trustees.  ILIAC denies that this lawsuit may properly be maintained as a class action.

6.      If a class were ever to be certified in this matter, ILIAC reserves its right to bring some or all of these counterclaims against other purported class members.

## Jurisdiction and Venue

7.      This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1) & (f), 29 U.S.C. §§ 1132 (e)(1) & (f), and Rule 13(a) of the Federal Rules of Civil Procedure.

8.      HSI has consented to personal jurisdiction by commencing this action in this Court.

9.      Venue is proper under 28 U.S.C. § 1391 because HSI is subject to personal jurisdiction at the time that this action was commenced and under 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because HSI can be found in this District.

## Facts

10.     The Plans are 401(k) retirement plans governed by ERISA.

11.     HSI and the Plans contracted with ILIAC through a group funding agreement (the "Agreement").  Pursuant to that Agreement, ILIAC provided the Plans with certain services. The services provided by ILIAC included making available a menu of investment options (typically mutual funds) from which HSI could select investment options to offer to the Plans' participants for investment of participant contributions.

12.     HSI had the authority and responsibility to decide the investment options that were appropriate for the Plans' participants.  HSI exercised that authority.

13.     HSI never delegated that authority to ILIAC and ILIAC provided no investment advice to HSI regarding such decisions.

14.     HSI selected the investment options to offer to participants, and the Plans' participants selected the investment options in which to direct their contributions.

15.     HSI selected, authorized, and approved any and all changes made to the investment options that it offered to the Plans' participants.

16.     Some of the mutual funds with whom the Plans' participants invested paid revenue to ILIAC in exchange for benefits and services provided by ILIAC.

17.     ILIAC's receipt and retention of this revenue effectively reduced the fees and charges that ILIAC would have charged to the Plans and/or its participants.

18.     ILIAC disclosed its receipt and retention of this revenue to HSI in the Agreement. HSI acknowledged that it received and understood this disclosure by signing the Agreement.

19.     ILIAC disclosed its receipt and retention of these fees to HSI in several other documents and communications.

20.     Thus, HSI was aware of (or recklessly indifferent to) ILIAC's receipt and retention of revenue from the mutual funds.  Furthermore, ILIAC provided HSI with a toll-free telephone number whereby it could telephone ILIAC and request specific information, confirmed in writing, regarding which mutual funds paid ILIAC revenue and at what level.

21.     HSI willingly accepted the benefits of ILIAC's services under the Agreement despite its awareness (or reckless indifference to the fact) of ILIAC's receipt and retention of revenue from the mutual funds with whom the Plans' participants were invested.

22.     Under the terms of the Agreement, ILIAC was obligated to and did provide certain benefits and services to the Plans.  ILIAC was entitled to receive certain compensation from the Plans and/or the Plans' participants for providing such services.

23.    ILIAC disclosed all fees and charges to the Plans and its participants in the Agreement and other documents provided or made available to HSI, the Plans, or the Plans' participants.

24.    HSI, the Plans, and the Plans' participants received all the benefits and services to which they were entitled under the Agreement, and the Plans and the Plans' Participants paid no more fees or charges than those disclosed in the Agreement and other documents provided to or made available to HSI.

25.    The providers of the investment options selected by HSI and the Plans' participants charged fees to cover the costs of the services that they rendered.  The fees and services were fully and accurately described in mutual fund prospectuses and other documents provided or made available to HSI, the Plans, and the Plans' participants.  HSI and/or the Plans' participants paid no more than the fees that were set forth in such materials.

26.    The providers of these investment options, their affiliated entities, or third parties (including ILIAC) provided the services covered by the fees and charges disclosed by the investment providers.

### First Counterclaim – Contribution Under ERISA

27.    ILIAC re-alleges and incorporates by reference the allegations of paragraphs 1 through 26.

28.    HSI, as a fiduciary of the Plans, has a duty:

      a.  to conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans;

b.  to track and account for all transactions involving the Plans and its assets to ensure that the assets are retained, managed, and disbursed in compliance with the Plans' documents and ERISA;

c.  to ensure that the fees and expenses incurred by the Plans are reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

d.  in entering the Agreement, to ensure that any payments made by the Plans to ILIAC and by the mutual fund families to ILIAC, were reasonable and for the benefit of the participants and beneficiaries of the Plans;

e.  in operating and administering the Plans, to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred for the benefit of participants of the Plans;

f.  in operating and administering the Plans, on an ongoing basis, to monitor the payments made by the Plans to ILIAC, and by the mutual fund families to ILIAC, to ensure that they are and remain reasonable and are for the benefit of the participants and beneficiaries of the Plans;

g.  to inform itself of, and understand, the various methods by which vendors in the 401(k) industry collect payments and other revenues relating to 401(k) plans;

h.  to investigate alternatives in the marketplace;

i.  to provide accurate and complete information to participants and beneficiaries in the Plans regarding the costs associated with their various investment choices and directions; and

j.  to appoint fiduciaries who are capable of fulfilling their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove any fiduciaries who breached their fiduciary duties.

29.     HSI was a co-fiduciary under ERISA and was required under ERISA § 405, 29 U.S.C. 1105, to refrain from:

a.  knowingly participating in, and/or knowingly concealing, any alleged breach of fiduciary duty;

b.  enabling any other alleged fiduciary to commit any breach of any fiduciary duty; and

c.  failing to make reasonable efforts to remedy any breach of fiduciary duty by another co-fiduciary.

30.     HSI benefited from the services provided by ILIAC to the mutual funds.  HSI also benefited from any payments received by ILIAC from the mutual funds.

31.     HSI should not be permitted to further benefit by diverting its own misconduct and ERISA liability.

32.     If the Court finds there was a breach any of purported fiduciary duties in connection with its receipt and retention of revenue from mutual funds and that such breach caused harm to the Plans, then HSI breached its fiduciary duties to the Plans. Any harm associated with any purported fiduciary breaches was the direct result of HSI's breaches of its fiduciary duties by:

a.  failing to conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans;

b.   failing to track and account for all transactions involving the Plans and their assets to ensure that the assets are retained, managed, and disbursed in compliance with the Plans' documents and ERISA;

c.   failing to ensure that the fees and expenses incurred by the Plans are reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

d.   in entering the Agreement, failing to ensure that any payments made by the Plans and by the mutual fund families were reasonable and for the benefit of the participants and beneficiaries of the Plans;

e.   in operating and administering the Plans, failing to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred for the benefit of participants of the Plans;

f.   in operating and administering the Plans, failing on an ongoing basis to monitor the payments made by the Plans and by the mutual fund families , to ensure that they are and remain reasonable and for the benefit of the participants and beneficiaries of the Plans;

g.   failing to inform itself of and understand the various methods by which vendors in the 401(k) industry collect payments and other revenues relating to 401(k) plans;

h.   failing to investigate alternatives in the marketplace;

    i.   failing to provide accurate and complete information to participants and beneficiaries of the Plans regarding the costs associated with their various investment choices and directions; and

    j.   failing to appoint fiduciaries who are capable of fulfilling their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove any fiduciaries that breached their fiduciary duties.

33.    If the Court finds that any breach of any purported fiduciary duties in connection with its receipt and retention of revenue from mutual funds, then HSI has breached its own fiduciary duties under ERISA § 405, 29 U.S.C. § 1105, by:

    a.   knowingly participating in or knowingly concealing the receipt and retention of revenue from the mutual funds;

    b.   enabling another to commit breaches of a fiduciary duty to the Plans; and

    c.   c.   failing to make reasonable efforts to remedy any breach of fiduciary duty committed.

34.    Accordingly, to the extent any fiduciary breach has occurred, HSI is liable for contribution under ERISA.

### Second Counterclaim – Indemnity Under ERISA

35.    Defendant re-alleges and incorporates by reference all of the allegations of paragraphs 1 through 35 of Defendant's counterclaims above.

36.    HSI, as a fiduciary of the Plan, has a duty:

    a.   to conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans;

b. to track and account for all transactions involving the Plans and their assets to ensure that the assets are retained, managed, and disbursed in compliance with the Plans' documents and ERISA;

c. to ensure that the fees and expenses incurred by the Plans are reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

d. in entering the Agreement to ensure that any payments made by the Plans and by the mutual fund families were reasonable and for the benefit of the participants and beneficiaries of the Plans;

e. in operating and administering the Plans, to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred for the benefit of participants of the Plans;

f. in operating and administering the Plans, on an ongoing basis to monitor the payments made by the Plans, and by the mutual fund families, to ensure that they are and remain reasonable and for the benefit of the participants and beneficiaries of the Plans;

g. to inform itself of and understand the various methods by which vendors in the 401(k) industry collect payments and other revenues relating to 401(k) plans;

h. to investigate alternatives in the marketplace;

i. to provide accurate and complete information to participants and beneficiaries of the Plans regarding the costs associated with their various investment choices and directions; and

j.   to appoint fiduciaries who are capable of fulfilling their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove any fiduciaries that breached their fiduciary duties.

37.   HSI was a co-fiduciary under ERISA and was required under ERISA § 405, 29 U.S.C. 1105, to refrain from:

a.   knowingly participating in or concealing any fiduciary breach;

b.   enabling another to commit any fiduciary breach; and

c.   failing to make reasonable efforts to discover and remedy any alleged fiduciary breaches.

38.   HSI benefited from the services provided by ILIAC to the mutual funds. HSI also benefited from any payments received from the mutual funds.

39.   HSI should not be permitted to further benefit by diverting its own misconduct and ERISA liability.

40.   If the Court finds that Defendant breached any of purported fiduciary duty in connection with its receipt and retention of revenue from the mutual funds and that such breach caused harm to the Plans, then HSI breached its fiduciary duties to the Plans. Any alleged harm associated with such alleged fiduciary breaches was the direct result HSI's breaches of its fiduciary duties by:

a.   failing to conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans;

b.   failing to track and account for all transactions involving the Plans and their assets to ensure that the assets are retained, managed, and disbursed in compliance with the Plans' documents and ERISA;

c.   failing to ensure that the fees and expenses incurred by the Plans are reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

d.   in entering the Agreement, failing to ensure that any payments made by the Plans and by the mutual fund families were reasonable and for the benefit of the participants and beneficiaries of the Plans;

e.   in operating and administering the Plans, failing to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred for the benefit of participants of the Plans;

f.   in operating and administering the Plans, failing on an ongoing basis to monitor the payments made by the Plans and by the mutual fund families, to ensure that they are and remain reasonable and for the benefit of the participants and beneficiaries of the Plans;

g.   failing to inform itself of and understand the various methods by which vendors in the 401(k) industry collect payments and other revenues relating to 401(k) plans;

h.   failing to investigate alternatives in the marketplace;

    i.   failing to provide accurate and complete information to participants and beneficiaries in the Plans regarding the costs associated with their various investment choices and directions; and

    j.   failing to appoint fiduciaries who are capable of fulfilling their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove any fiduciaries that breached their fiduciary duties.

41.    If the Court finds any breach of any purported fiduciary duties in connection with the receipt and retention of revenue from mutual funds, then HSI has breached its own fiduciary duties under ERISA § 405, 29 U.S.C. § 1105, by:

    a.   knowingly participating in or concealing any fiduciary breach;

    b.   enabling another to purportedly commit any fiduciary breach; and

    c.   failing to make reasonable efforts to discover and remedy any alleged fiduciary breaches.

42.    Accordingly, HSI is required to provide indemnification under ERISA.

**Third Counterclaim – Common Law Contribution**

43.    ILIAC re-alleges and incorporates by reference the allegations of paragraphs 1 through 43 above.

44.    ILIAC alleges this Counterclaim in the event that the Court finds that ILIAC was not an ERISA fiduciary.  HSI, as a fiduciary of the Plans, has a duty:

    a.   to conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans;

b.  to track and account for all transactions involving the Plans and their assets to ensure that the assets are retained, managed, and disbursed in compliance with the Plans' documents and ERISA;

c.  to ensure that the fees and expenses incurred by the Plans are reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

d.  in entering the Agreement, to ensure that any payments made by the Plans and by the mutual fund families, were reasonable and for the benefit of the participants and beneficiaries of the Plans;

e.  in operating and administering the Plans, to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred for the benefit of participants of the Plans;

f.  in operating and administering the Plans, on an ongoing basis to monitor the payments made by the Plans and by the mutual fund families, to ensure that they are and remain reasonable and for the benefit of the participants and beneficiaries of the Plans;

g.  to inform itself of and understand the various methods by which vendors in the 401(k) industry collect payments and other revenues relating to 401(k) plans;

h.  to investigate alternatives in the marketplace;

i.  to provide accurate and complete information to participants and beneficiaries in the Plans regarding the costs associated with their various investment choices and directions; and

> j.  to appoint fiduciaries who are capable of fulfilling their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove any fiduciaries who breached their fiduciary duties.

45.  HSI benefited from the services provided to the mutual funds.  HSI also benefited from any payments received from the mutual funds.

46.  HSI should not be permitted to further benefit by diverting its own misconduct and ERISA liability.

47.  HSI had the ultimate responsibility for entering into the Agreement, investing the Plans' assets, selecting and approving investment options offered to the Plans' participants – including any changes to investment options offered to the Plans' participants, and managing the Plans. If the Court were ever to find that ILIAC could be liable to the Plans in connection with its receipt and retention of payments from the mutual funds and that the Plans suffered a resulting harm, that harm was the fault of HSI.  Any purported harm associated with Defendant's misconduct was the direct result HSI's breaches of its fiduciary duties by:

> a.  failing to conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans;

> b.  failing to track and account for all transactions involving the Plans and their assets to ensure that the assets are retained, managed, and disbursed in compliance with the Plans' documents and ERISA;

> c.  failing to ensure that the fees and expenses incurred by the Plans are reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

d.  in entering the Agreement, failing to ensure that any payments made by the Plans and by the mutual fund families, were reasonable and for the benefit of the participants and beneficiaries of the Plans;

e.  in operating and administering the Plans, failing to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred for the benefit of participants of the Plans;

f.  in operating and administering the Plans, failing on an ongoing basis to monitor the payments made by the Plans and by the mutual fund families, to ensure that they are and remain reasonable and for the benefit of the participants and beneficiaries of the Plans;

g.  failing to inform itself of and understand the various methods by which vendors in the 401(k) industry collect payments and other revenues relating to 401(k) plans;

h.  failing to investigate alternatives in the marketplace;

i.  failing to provide accurate and complete information to participants and beneficiaries in the Plans regarding the costs associated with their various investment choices and directions; and

j.  failing to appoint fiduciaries who are capable of fulfilling their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove any fiduciaries that breached their fiduciary duties.

48.     Accordingly, and in the alternative, if the Court finds that ILIAC is not an ERISA fiduciary, but otherwise liable, ILIAC is entitled to contribution from HSI under the common law.

### Fourth Counterclaim – Common Law Indemnity

49.     ILIAC re-alleges and incorporates by reference the allegations of paragraphs 1 through 49 above.

50.     ILIAC alleges this Counterclaim in the alternative in the event that the Court finds that ILIAC was not an ERISA fiduciary.

51.     HSI's negligence and/or breach of fiduciary duty, rather than ILIAC's conduct, was the direct and immediate cause of any injury suffered by the Plans and their participants.

52.     HSI's breaches were the direct cause of any harm suffered by the Plans because HSI was ultimately responsible for entering into the Agreement, investing the Plans' assets, selecting and approving investment options offered to the Plans' participants – including any changes to investment options offered to the Plans' participants, and managing the Plans. HSI, as a fiduciary of the Plans, has a duty:

> a.   to conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans;
>
> b.   to track and account for all transactions involving the Plans and their assets to ensure that the assets are retained, managed, and disbursed in compliance with the Plans' documents and ERISA;
>
> c.   to ensure that the fees and expenses incurred by the Plans are reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

    d.  in entering the Agreement, to ensure that any payments made by the Plans and by the mutual fund families, were reasonable and for the benefit of the participants and beneficiaries of the Plans;

    e.  in operating and administering the Plans, to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred for the benefit of participants of the Plans;

    f.  in operating and administering the Plans, on an ongoing basis to monitor the payments made by the Plans and by the mutual fund families, to ensure that they are and remain reasonable and for the benefit of the participants and beneficiaries of the Plans;

    g.  to inform itself of and understand the various methods by which vendors in the 401(k) industry collect payments and other revenues relating to 401(k) plans;

    h.  to investigate alternatives in the marketplace;

    i.  to provide accurate and complete information to participants and beneficiaries in the Plans regarding the costs associated with their various investment choices and directions; and

    j.  to appoint fiduciaries who are capable of fulfilling their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove any fiduciaries who breached their fiduciary duties.

53.    ILIAC was unaware that HSI was negligent and/or in breach of its fiduciary duty with regard to the Plans and their participants, had no reason to anticipate HSI's negligence or

fiduciary breach, and could reasonably rely on HSI's not being negligent or in breach of its fiduciary duty with respect to the Plans and their participants.

54.     Any damages to the Plans or their participants were caused by HSI's conduct. HSI, not ILIAC, is thus liable to the plan for any damages.

55.     HSI benefited from the services ILIAC provided to the mutual funds.

56.     HSI also benefited from any payments ILIAC received from the mutual funds.

57.     HSI should not be permitted to further benefit by diverting its own misconduct and ERISA liability to ILIAC.

58.     If the Court finds that ILIAC liable to the Plans in connection with its receipt and retention of payments from the mutual funds and that the Plans suffered a resulting harm, that harm was also the fault of HSI, which breached its fiduciary responsibility to manage and control the assets of the Plans by:

> a.  failing to conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans;
>
> b.  failing to track and account for all transactions involving the Plans and their assets to ensure that the assets are retained, managed, and disbursed in compliance with the Plans' documents and ERISA;
>
> c.  failing to ensure that the fees and expenses incurred by the Plans are reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

d.   in entering the Agreement, failing to ensure that any payments made by the Plans and by the mutual fund families were reasonable and for the benefit of the participants and beneficiaries of the Plans;

e.   in operating and administering the Plans, failing to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred for the benefit of participants of the Plans;

f.   in operating and administering the Plans, failing on an ongoing basis to monitor the payments made by the Plans, and by the mutual fund families, to ensure that they are and remain reasonable and for the benefit of the participants and beneficiaries of the Plans;

g.   failing to inform itself of and understand the various methods by which vendors in the 401(k) industry collect payments and other revenues relating to 401(k) plans;

h.   failing to investigate alternatives in the marketplace;

i.   failing to provide accurate and complete information to participants and beneficiaries in the Plans regarding the costs associated with their various investment choices and directions; and

j.   failing to appoint fiduciaries who are capable of fulfilling their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove any fiduciaries that breached their fiduciary duties.

59.     Accordingly, and in the alternative, if the Court finds that ILIAC was not an ERISA fiduciary, but somehow liable, ILIAC is entitled to indemnification from HSI under the common law.

### Fifth Counterclaim – Breach of Fiduciary Duty

60.     Defendant re-alleges and incorporates by reference all of the allegations of paragraphs 1 through 60 of Defendant's counterclaims above.

61.     HSI alleges that Defendant breached its fiduciary duty to the Plans when it received revenue from the mutual funds with which the Plans' participants were invested and that such conduct violated ERISA.

62.     Defendant provided services to the mutual funds in return for the revenue it received.

63.     HSI benefited from such services.

64.     HSI was aware of Defendant's receipt of revenue from the mutual funds.

65.     HSI benefited from Defendant's receipt of revenue from the mutual funds in the form of lower fees paid by HSI or the Plans' participants.

66.     HSI alleges in its Complaint that Defendant was an ERISA fiduciary to the Plans. Defendant denies this allegation.  In the alternative, if this Court finds that Defendant is a fiduciary to the Plans, Defendant hereby asserts this claim for breach of fiduciary duty against Plaintiff.

67.     HSI is a fiduciary of the Plans under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(a) based on its discretion and control over the Plans' assets.

68.     As a fiduciary to the Plans, HSI had a duty:

a.   when selecting a service provider, to conduct itself with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

b.   to ensure that the payments made by the Plans and compensation for the services provided to the Plans were reasonable and incurred for the benefit of the Plans' participants and beneficiaries;

c.   in entering the Agreement, to ensure that any payments made by the mutual funds were reasonable and for the benefit of the participants and beneficiaries of the Plans;

d.   to monitor the payments made by the Plans and the mutual funds to ensure that they were, and at all times remained, reasonable and for the benefit of the participants and beneficiaries of the Plans;

e.   to be aware of, understand, and if necessary inquire or investigate the ways in which Defendant was compensated in relation to its provision of services to the Plans;

f.   to provide participants and beneficiaries with accurate and complete information about the costs associated with the services provided by Defendant and the means by which Defendant was compensated for such services;

g.   to provide participants and beneficiaries with accurate and complete information about  the costs associated their investment decisions; and

> h.  to appoint fiduciaries who were willing and able to fulfill the above mentioned fiduciary duties, to monitor those fiduciaries in the performance of their fiduciary duties, and if necessary to remove any fiduciaries that breached their fiduciary duties.

69.    If the Court finds that Defendant breached any of purported fiduciary duties in connection with its receipt and retention of revenue from mutual funds and that such breach purportedly caused harm to the Plans, then any harm associated with Defendant's fiduciary breaches was the direct result HSI's breaches of its fiduciary duties, including its failure to:

> a.  conduct itself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would in operating and administering the Plans when selecting a service provider and when entering into an agreement with Defendant;

> b.  ensure that HSI and Defendant managed or dealt with plan assets in a manner that was consistent with ERISA;

> c.  ensure that the fees and expenses incurred by the Plans and the compensation in connection with the services Defendant provided to the Plans were reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

> d.  ensure that the payments made by the mutual funds were reasonable and for the benefit of the participants and beneficiaries of the Plans;

> e.  establish, implement, and follow procedures to determine and monitor whether the fees and expenses paid by the Plans and the compensation paid in connection with the services it provided to the Plans were

reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

f.   monitor on an ongoing basis whether the fees and expenses paid by the Plans to Defendant and the compensation paid in connection with the services it provided to the Plans were reasonable and incurred for the benefit of participants and beneficiaries of the Plans;

g.   investigate and understand the methods by which Defendant was compensated for the services that it provided to the Plans;

h.   investigate or inquire about the ways in which Defendant was compensated in connection to its provision of services to the Plans;

i.   provide accurate and complete information to the Plans' participants and beneficiaries about  the costs associated their investment choices and directions; and

j.   to appoint fiduciaries who were willing and able to fulfill the above mentioned fiduciary duties, to monitor those fiduciaries in the performance of their fiduciary duties, and if necessary to remove any fiduciaries that breached their fiduciary duties.

70.   Plaintiff was a fiduciary with Defendant under ERISA and was required under ERISA § 405, 29 U.S.C. 1105, to refrain from:

a.   knowingly participating in or concealing any fiduciary breach;

b.   enabling another commit any fiduciary breach; and

c.   failing to make reasonable efforts to discover and remedy any purported fiduciary breaches.

71.     If the Court finds that Defendant breached any purported fiduciary duty in connection with the receipt and retention of revenue from mutual funds, then HSI has breached its own fiduciary duties under ERISA § 405, 29 U.S.C. § 1105, by:

   a. knowingly participating in or knowingly concealing receipt and retention of revenue from the mutual funds;

   b. enabling another to purportedly commit breach its fiduciary duty to the Plans; and

   c. failing to make reasonable efforts to remedy any alleged breach of fiduciary duty.

72.     HSI is liable for breaching its fiduciary duty to the Plans to the extent that the Plans suffered any harm or losses or to the extent that any Plans' participants and beneficiaries were deprived of any assets or benefits to which they were entitled.

73.     Defendant, on behalf of the Plans and their participants and beneficiaries, seek to recover any losses incurred by the Plans or participants as a result of HSI's fiduciary breaches pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2), and seek any and all appropriate equitable relief  pursuant to ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3).

Defendant reserves the right to amend and/or supplement this Answer, these Affirmative Defenses, and counterclaims in light of further discover and investigation in this matter and in otherwise in the interests of justice.

**WHEREFORE,** having fully answered Plaintiff's Complaint, Defendant ILIAC respectfully requests that this Court enter judgment dismissing Plaintiff's Complaint in its entirety with prejudice, award ILIAC its reasonable attorney's fees and costs in defending this

matter and in pursuing its counterclaims.  Defendant further respectfully requests that this Court

enter judgment for ILIAC on its counterclaims.

Dated: February 16, 2012                              Respectfully submitted,


                                                     /s/ Gregory C. Braden
                                                     Gregory C. Braden (*admitted pro hac vice*)
                                                     Sean McMahan (*admitted pro hac vice*)
                                                     Morgan, Lewis & Bockius, LLP
                                                     1111 Pennsylvania Avenue, N.W.
                                                     Washington, DC 20004
                                                     Telephone: (202) 739-5217
                                                     Facsimile: (202) 739-3001
                                                     Email: gbraden@morganlewis.com

                                                     William J. Delany (*admitted pro hac vice*)
                                                     Morgan, Lewis & Bockius, LLP
                                                     1701 Market Street
                                                     Philadelphia, PA 19103
                                                     Telephone: (215) 963-5066
                                                     Facsimile: (215) 963-5001
                                                     Email: wdelany@morganlewis.com


                                                     Jonathan B. Orleans (CT05440)
                                                     Pullman & Comley LLC
                                                     850 Main St., PO Box 7006
                                                     Bridgeport, CT  06601-7006
                                                     Telephone: (203) 330-2129
                                                     Facsimile: (203) 576-8888
                                                     Email: jborleans@pullcom.com

                                                     *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2012, a copy of the foregoing Defendant ING Life

Insurance and Annuity Company's Answer, Affirmative Defenses, and Counterclaims

was served electronically on the following:

James E. Miller
Patrick A. Klingman
Laurie Rubinow
Karen M. Leser-Grenon
Shepherd Finkelman Miller & Shah, LLP
65 Main Street
Chester, CT 06412
Email:      jmiller@sfmslaw.com
             pkling@sfmslaw.com
             lrubinow@sfmslaw.com
             kleser@sfmslaw.com


Scott R. Shepherd
Eric L. Young
Shepherd Finkelman Miller & Shah, LLP
Media, PA 19063
Email:     sshepherd@sfmslaw.com
            eyoung@sfmslaw.com

*Attorneys for Plaintiff*

　　　　　　　　　　 /s/ Gregory C. Braden
　　　　　　　　　　Gregory C. Braden