UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
_____
                                  )
HEALTHCARE STRATEGIES, INC., Plan )
Administrator of the Healthcare   )
Strategies, Inc. 401(k) Plan and  )
the Healthcare Strategies, Inc. CBU )
401(k) Plan, on behalf of itself  )
and all others similarly situated, )
and THE DEROSA CORPORATION, Plan  )
Administrator of The DeRosa       )
Corporation 401(k) PS Plan, on    )   CIVIL ACTION
behalf of itself and all others   )   NO. 11-00282-WGY
similarly situated,               )
                                  )
              Plaintiffs,         )
                                  )
         v.                       )
                                  )
ING LIFE INSURANCE AND ANNUITY    )
COMPANY,                          )
                                  )
              Defendant.          )
_____ )
```

MEMORANDUM

Young, D.J.                                    August 5, 2013

## I. INTRODUCTION

ING Life Insurance and Annuity Company ("ILIAC") is a
service provider that offers investment options and
recordkeeping services to 401(k) retirement plans.  In other
words, ILIAC offers a platform from which retirement plans
access different investment vehicles, such as mutual funds.
Service providers typically charge 401(k) plans fees for their
services.  A widespread practice among service providers,

however, includes charging fees directly to mutual funds. Mutual funds pay these "revenue-sharing" fees to service providers out of the fees that they charge their investors, including 401(k) plan participants.

401(k) plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 26 and 29 U.S.C.). Over the last few years, service providers' revenue-sharing practices have come under attack. Numerous 401(k) plan administrators have brought suit against service providers, casting revenue-sharing fees as impermissible pay-to-play or kickback schemes under ERISA. In addition, the Department of Labor, charged with implementing and enforcing ERISA, has expressed reservations about revenue sharing and has sought to regulate the practice.[1]

This class action is one of various suits brought by 401(k) plan administrators across the country seeking to enjoin and recompense 401(k) plans for losses allegedly attributable to service providers' revenue-sharing practices. These suits have had various degrees of success, often depending upon whether the

---

[1] Most recently, the Department of Labor has announced required disclosures that service providers must make with regard to their compensation, including revenue-sharing practices. See generally Reasonable Contract or Arrangement Under Section 408(b)(2) -- Fee Disclosure, 77 Fed. Reg. 5632-01 (Feb. 2, 2012) (to be codified at 29 C.F.R. pt. 2550).

presiding court rules the service provider to be a fiduciary under ERISA.  Here, too, the plan administrators' core theory of liability is that ILIAC breached its fiduciary duty under ERISA by orchestrating a kickback scheme.  Consequently, whether ILIAC, the defendant service provider, qualifies as a fiduciary under ERISA is the critical issue at the heart of this suit.

### A.   Procedural Posture

On February 23, 2011, the plan administrator of the Healthcare Strategies, Inc. 401(k) retirement plans ("HSI") brought an action on behalf of itself and all other similarly situated plaintiffs against ILIAC in the District of Connecticut.  Class Action Compl., ECF No. 1.  HSI primarily alleges that ILIAC breached a fiduciary duty in violation of ERISA when it negotiated and received revenue-sharing payments from the mutual funds that it offers to retirement plans.  See id. at 26-31.

On September 27, 2012, Judge Hall of the District of Connecticut granted HSI's motion for class certification after HSI agreed to slightly modify the class definition.[2]  Ruling Re: Pl.'s Mot. Certify Class (Doc. No. 43); Pl.'s Mot. Dismiss

---

[2] The Court of Appeals for the Second Circuit denied ILIAC's petition for review of the district court's order granting HSI's class certification motion on December 18, 2012.  Mandate, ECF No. 148.  This Court denied ILIAC's motion to decertify the class and approved the plaintiffs' proposed class notice plan on June 17, 2013.  Elec. Clerk's Notes, June 17, 2013, ECF No. 201.

Def.'s Countercls. (Doc. No. 63); Def.'s Mot. File Sur-Reply
(Doc. No. 80) ("Class Cert. Order") 5 n.1, 27, ECF No. 102.  The
DeRosa Corporation ("DeRosa") subsequently moved to intervene in
the proceedings as a named plaintiff and class representative.
Mot. Intervene Movant, DeRosa Corp., ECF No. 124.  Judge Hall
granted DeRosa's motion, Ruling Re: The DeRosa Corp.'s Mot.
Intervene, ECF No. 156, and HSI and DeRosa (collectively, the
"Plaintiffs") filed an amended complaint.  Am. Class Action
Compl., ECF No. 157.  In response, ILIAC filed its amended
answer.  ING Life Ins. & Annuity Co.'s Answer, Affirmative
Defenses, & Countercls. Pls.' Am. Class Action Compl., ECF No.
168.

On January 10, 2013, the case was reassigned to this Court
pursuant to the district's Visiting Judges Program.  Order
Transfer, ECF No. 169.  The Plaintiffs moved to dismiss the
counterclaims brought in ILIAC's amended answer.  Pls.' Mot.
Dismiss Countercls. Asserted Def., ING Life Ins. & Annuity Co.,
ECF No. 170.  ILIAC, in turn, moved for summary judgment after
concluding supplemental discovery.  Def.'s Mot. Summ. J., ECF
No. 183; Def.'s Mot. Summ. J., Attach. 1, Def.'s Mem. Law Supp.
Mot. Summ. J. ("Def.'s Summ. J. Mem."), ECF No. 183-1; Def.'s
Mot. Summ. J., Attach. 2, Def.'s Local Rule 56(a)(1) Statement
("Def.'s Facts"), ECF No. 183-2.  The Plaintiffs opposed the
motion.  Pls.' Mem. Law Opp'n Mot. Summ. J. Def., ING Life Ins.

& Annuity Co. ("Opp'n Mot. Summ. J."), ECF No. 186; Opp'n Mot.
Summ. J., Attach. 1, Pls.' Local Rule 56(a)(2) Statement ("Pls.'
Facts"), ECF No. 186-1.

At oral argument upon ILIAC's summary judgment motion and
the Plaintiffs' motion to dismiss ILIAC's counterclaims, this
Court ruled from the bench and denied both motions.  Elec.
Clerk's Notes, May 2, 2013, ECF No. 192.  The key issue in
ILIAC's summary judgment motion is the scope of ILIAC's
fiduciary obligations to the Plaintiffs.  Given the disagreement
among courts regarding the reach of fiduciary status under
ERISA, an explanation of this Court's interpretation of ERISA's
definition of a fiduciary is warranted.  Thus, this memorandum
addresses this Court's treatment of fiduciary status in ruling
on ILIAC's summary judgment motion.

   **B.   Undisputed Facts**

      **1.   ILIAC's Business Model**

The named plaintiffs are the plan administrators of HSI's
and DeRosa's 401(k) plans.  Pls.' Facts ¶ 2.  ILIAC is a service
provider that offers retirement-related services to businesses,
including a menu of investment options and related recordkeeping
services for 401(k) plans.  Def.'s Facts ¶ 4.  ILIAC offers
varied investment options with fixed and variable returns.  Id.
¶¶ 5, 6.  ILIAC's recordkeeping services include "complex daily
recordkeeping functions," providing website access to plan

participants' accounts, and sending quarterly account statements to plan participants.  Id. ¶¶ 12-13, 15.

To "effectuate [plan] participant investment[s] . . . in mutual funds," ILIAC has established "separate accounts," which are generally not subject to their creditors' claims.  Id. ¶ 17 (internal quotation marks omitted).  Participants who elect to invest in mutual funds hold "accumulation units" in these separate accounts, which reflect the value of the mutual fund shares held in the account plus reinvested dividends less any separate account charge.  Id. ¶¶ 19-20.  ILIAC owns and controls the assets within the separate accounts, through which it honors plan participants' investment decisions.  See id. ¶ 21.  401(k) plan sponsors select funds to include in their plans from the menu of investment options that ILIAC offers; plan participants then choose their investments from the selection available in their 401(k) plan.  Pls.' Facts ¶ 23.

The services that ILIAC offers 401(k) plans, also known as its "group annuity programs," are designed to attract revenue from various sources, including revenue-sharing payments from mutual funds.  Def.'s Facts ¶ 25.  Specifically, ILIAC enters into contracts with mutual fund companies that govern the terms of the companies' participation in the "program" that ILIAC offers 401(k) plans.  Id. ¶ 10.  The contracts sometimes provide for revenue-sharing payments, by which mutual funds pay ILIAC a

fee based on a percentage of the assets invested in the fund by retirement plan participants.  Id. ¶ 11.

ILIAC maintains targets for the amount of revenue sharing it seeks to obtain from its mutual fund offerings.  Pls.' Facts ¶ 117.  For example, ILIAC earns different fees from different mutual funds.  Id. ¶ 123.  Higher revenue-sharing payments are associated with higher expense ratios in mutual funds.  These higher fees are usually passed onto 401(k) plans and their participants.  See id. ¶ 116.  The Plaintiffs posit that the relationship between mutual fund expense ratios and revenue-sharing payments was "never disclosed in a complete or understandable fashion to the Plans."  Id. ¶ 165.  ILIAC also "actively attempts to maximize the amount of [revenue-sharing payments that it receives]."  Id. ¶ 133.  As a result, ILIAC has obtained increased revenue-sharing fees from mutual funds offered in its investment menus to plans.  See id. ¶ 136.

Mutual funds offer different share classes.  Share classes with higher expense ratios often pay ILIAC higher revenue-sharing payments.  See id. ¶¶ 124-126.  For example, ILIAC receives less revenue sharing from institutional ("I") share classes than from retirement ("R") share classes because the fees that mutual funds charge to 401(k) plans are usually lower for I share classes than they are for R share classes.  Id. ¶ 124.  Because the underlying investments in different share

classes of the same mutual fund are identical, the Plaintiffs contend that the only difference among share classes of the same mutual fund is the amount of revenue sharing that ILIAC receives and the expense ratio that the mutual fund charges to the plans. Id. ¶ 128.  The services that ILIAC provides for mutual funds are the same, regardless of whether a more expensive share class is offered.  Id. ¶ 125.  Further, ILIAC does not provide additional services when it obtains an increase in the amount of revenue sharing it receives from a mutual fund.  Id.

### 2.   ILIAC's Contracts with the Plaintiffs

ILIAC's contracts with 401(k) plans are called "[g]roup [c]ontract[s]."  See Def.'s Mot. Summ. J., Attach. 16, ING Life Ins. & Annuity Co. Funding Agreement ("HSI Grp. Contract") D-App. 691, ECF No. 183-16 (internal quotation marks omitted). The group contracts grant ILIAC authority to change 401(k) plans' investments.  Pls.' Facts ¶ 82.  For example, ILIAC's group contract with HSI provides:

> When deemed desirable by [ILIAC] to accomplish the purpose of the Separate Account, [ILIAC] or the Separate Account may:
>
> (a)  Change the Fund(s) which may be invested in by the Separate Account;
> (b)  Make additional Fund(s) available through the Separate Account;
> (c)  Discontinue offering any Fund(s) through the Separate Account; and
> (d)  Replace the shares of any Fund(s) held in a Separate Account with shares of any other Fund(s), where such replacement is approved by a

majority vote of persons having an interest in
the Separate Account Fund(s) being replaced.

[ILIAC] will notify the [HSI Plan trustees] of any
such action.

HSI Grp. Contract § 8.02, at D-App. 716.

### C.   Federal Jurisdiction

This Court has jurisdiction over this action under 28
U.S.C. section 1331.

## II. ANALYSIS

### A.   Standard of Review on Summary Judgment

Summary judgment is proper where "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue
of fact is "genuine" if there exists a sufficient evidentiary
basis on which the trier of fact could find for the non-moving
party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  A fact is "material" if it will affect the outcome of
the case under governing law.  Id.  "The evidence of the non-
movant is to be believed, and all justifiable inferences are to
be drawn in his favor." Id. at 255.  The moving party bears the
burden of showing that no genuine issue of material fact exists.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Save as to
facts admitted by both parties, the court must disregard all
evidence upon which the moving party bears the burden of proof.

See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

**B.   The Scope of ILIAC's Fiduciary Duty under ERISA.**

The Plaintiffs argue that ILIAC's receipt of revenue-sharing payments from mutual funds constituted an impermissible pay-to-play or kickback scheme.   Thus, they allege that ILIAC's "arranging for and retention" of revenue-sharing payments violated its fiduciary duty under section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a), to act solely for the benefit of plan participants ("Count I").   Am. Class Action Compl. ¶ 102.   The Plaintiffs also allege that the same conduct constitutes prohibited transactions in violation of section 406(b)(1) and (3) of ERISA, 29 U.S.C. § 1106(b)(1), (3) ("Count II").   Am. Class Action Compl. ¶¶ 107-108.   Under either theory of liability, however, ILIAC can be found liable only if it was acting as a fiduciary when it negotiated or received the revenue-sharing payments.

Unlike in the common law, where fiduciary status is "determined by virtue of the position a person holds, ERISA's definition is functional."   LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (quoting Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 881 (S.D.N.Y. 1997)) (internal quotation mark omitted).   In every case alleging breach of ERISA fiduciary duty, "the threshold question is not

whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary . . . when taking the action subject to the complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000). Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), defines a fiduciary:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A)(i), (iii). This definition contemplates that an ERISA fiduciary may have financial interests that are contrary to those of plan participants. Pegram, 530 U.S. at 225. Consequently, an entity is an ERISA fiduciary only to the extent that it exercises or has discretionary authority related to a plan's management or administration. See Frommert v. Conkright, 433 F.3d 254, 271 (2d Cir. 2006). The key inquiry here is whether ILIAC acted in a fiduciary capacity when it negotiated or received revenue sharing payments -- the conduct about which the Plaintiffs complain. See Am. Class Action Compl. ¶¶ 96-111; Opp'n Mot. Summ. J. 9-23.

### 1. ILIAC's Discretionary Authority over 401(k)Plans' Administration Supports Fiduciary Status under 29 U.S.C. section 1002(2)(A)(iii).

Under ILIAC's group contracts with 401(k) plans, ILIAC has the authority to change, add, or eliminate the funds that may be invested by 401(k) plan participants when it determines that such a change is "desirable . . . to accomplish the purpose of the Separate Account."[3]  HSI Grp. Contract § 8.02, at D-App. 716; Pls.' Facts ¶ 82.  In order to exercise such discretion over a plan's investments, all that is required of ILIAC is that it notify the plan trustees of any such action.  See HSI Grp. Contract § 8.02, at D-App. 716.

---

[3]  Section 8.02 of ILIAC's contract with the trustees of the HSI plan states:

> When deemed desirable by [ILIAC] to accomplish the purpose of the Separate Account, [ILIAC] or the Separate Account may:
>
> (a) Change the Fund(s) which may be invested in by the Separate Account;
> (b) Make additional Fund(s) available through the Separate Account;
> (c) Discontinue offering any Fund(s) through the Separate Account; and
> (d) Replace the shares of any Fund(s) held in a Separate Account with shares of any other Fund(s), where such replacement is approved by a majority vote of persons having an interest in the Separate Account Fund(s) being replaced.
>
> [ILIAC] will notify the [HSI Plan trustees] of any such action.

HSI Grp. Contract § 8.02, at D-App. 716.

ILIAC and the Plaintiffs agree that to the extent ILIAC exercises its contractual authority to substitute funds in a plan, it is acting in a fiduciary capacity with respect to any revenue-sharing payments it acquires from that change.  See Def.'s Summ. J. Mem. 19.  ILIAC, however, argues that under 29 U.S.C. section 1002(21)(A)(i), its fiduciary status is limited to the extent it actually "exercises . . . discretionary authority" to manage a plan.  29 U.S.C. § 1002(21)(A)(i) (emphasis added).  Thus, ILIAC seeks to cabin its fiduciary duty to the "[t]wo [i]solated [o]ccasions [d]uring the [l]ast 10 [y]ears" that it actually substituted funds.  Def.'s Summ. J. Mem. 19; see also id. at 21-24.  But this interpretation of an ERISA fiduciary is too limited, particularly given the mandate that the term "fiduciary" be broadly construed.  Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987).

ERISA discloses various ways in which an individual attains fiduciary status -- not all of which require an exercise of discretionary authority.  Rather, the Second Circuit has explained that 29 U.S.C. section 1002(21)(A) creates a "bifurcated test."  Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 63 (2d Cir. 2006).  "Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Subsection three describes those individuals who have actually

been granted discretionary authority, regardless of whether such authority is ever exercised." Id. (emphasis added) (quoting Olson v. E.F. Hutton & Co., 957 F.2d 622, 625 (8th Cir. 1992)) (internal quotation marks omitted). "The definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control." Blatt, 812 F.2d at 813 (emphasis added). As a result, as matter of law, ILIAC cannot bind its fiduciary status to the exercise of its authority to substitute funds without regard for the implications of the possession of that authority.

Various courts faced with similar attacks on revenue-sharing practices have reasoned that the contractual right to substitute mutual funds in retirement plans can confer fiduciary status on service providers, regardless of whether they ever actually substitute funds. See, e.g., Haddock v. Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 122-25 (D. Conn. 2009) (Underhill, J.), vacated on other grounds sub nom. by Nationwide Life Ins. Co. v. Haddock, 460 F. App'x 26 (2d Cir. 2012). For example, another session in this district decided that a service provider with the authority to substitute funds can be an ERISA fiduciary when it receives revenue-sharing payments from funds included in those plans. See id. at 122-124 (rejecting service provider's argument that it is an ERISA fiduciary only when it negotiates revenue-sharing payments with a particular mutual

fund included in a plan).  In Columbia Air Services, Inc. v.
Fidelity Management Trust Co., No. 07-11344-GAO, 2008 WL 4457861
(D. Mass. Sept. 30, 2008) (O'Toole, J.), the court similarly
concluded that an entity could become an ERISA fiduciary if its
contract with a 401(k) plan gave it "control over factors that
determine . . . its compensation." Id. at *4.  Because revenue-
sharing payments from mutual funds are a part of service
providers' compensation, the Columbia Air court reasoned that a
service provider's unilateral authority to substitute the funds
included in a plan amounted to the type of control over
compensation that could make it an ERISA fiduciary.  Id. at *5.
Another district court held that a service provider did not
acquire fiduciary status where its contract with a plan gave the
employer, not the service provider, final authority over fund
substitutions.  Zang v. Paychex, Inc., 728 F. Supp. 2d 261, 271
(W.D.N.Y. 2010).  Specifically, the employer had the "right to
reject the change [in investments] or terminate [the] Agreement
[with the service provider]." Id. (second alteration in
original) (internal quotation mark omitted).  In comparison,
ILIAC's contracts do not give plan administrators the chance to
reject changes or substitutions.  Class Cert. Order 9.  Further,
the plans' ability to terminate their contracts with ILIAC
without a penalty or fee vary widely.  Id. at 10.

In contrast, the Seventh Circuit recently affirmed a grant of summary judgment against 401(k) plan trustees who similarly alleged that a service provider breached fiduciary duties by receipt of revenue-sharing payments.  Leimkuehler v. Am. United Life Ins. Co., 713 F.3d 905, 912-14 (7th Cir. 2013); see also Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.), No. 2:10-cv-01655, 2011 WL 2038769, at *1 (D.N.J. May 23, 2011), aff'd in part, vacated in part, 677 F.3d 178 (3d Cir. 2012).  The service provider in Leimkuehler v. American United Life Insurance Co., 713 F.3d 905, also retained the right to change fund selections under its contract with the plan trustee.  Id. at 910.  The Department of Labor submitted an amicus curiae brief on behalf of the plan trustee, arguing that the service-provider defendant exercised its authority to substitute mutual funds every time it could have unilaterally substituted a less expensive share class of a fund but failed to do so.  Id. at 914.  The Seventh Circuit rejected this "unworkable" definition of the word "exercise," deciding that an act of omission does not constitute an exercise of discretionary authority over plan assets.  Id.  Thus, the Seventh Circuit limited the service provider's fiduciary duty to those instances in which it actually changed the mutual fund selections.  Id. This reasoning is of limited value, however, because the Seventh Circuit only analyzed whether the contractual right to

16

substitute funds implicated fiduciary status under subsection one of 29 U.S.C. section 1002(21)(A), rather than subsection three, which makes possession of authority, not its exercise, the key determinant of fiduciary status.  Bound by the Second Circuit, which recognizes that subsections one and three of 29 U.S.C. section 1002(21)(A) create distinct avenues for acquiring fiduciary status, see Bouboulis, 442 F.3d at 63, this Court cannot ignore the possibility that ILIAC's contractual authority to substitute funds is the type of "discretionary authority" that yields fiduciary responsibility under 29 U.S.C. section 1002(21)(A)(iii).

ILIAC next argues that subsection three of 29 U.S.C. section 1002(21)(A) is inapplicable because it only pertains to plan administration, not plan management.  Compare 29 U.S.C. § 1002(21)(A)(i) (making anyone who "exercises any discretionary authority . . . [over] management" of a plan a fiduciary, id. (emphasis added)), with id. § 1002(21)(A)(iii) (making anyone who "has . . . discretionary authority . . . in the administration" of a plan a fiduciary, id. (emphasis added)).  Because its contractual authority deals with plan management, ILIAC suggests it is only a fiduciary under subsection one of 29 U.S.C. section 1002(21)(A).  Def.'s Summ. J. Mem. 22-23.

The Second Circuit glosses over any difference between "plan management" and "plan administration" in its bifurcated

17

test for fiduciary status.  See, e.g., Bouboulis, 442 F.3d
at 63-64.  ERISA also fails to define or distinguish the terms
"management" and "administration."  See Varity Corp. v. Howe,
516 U.S. 489, 502 (1996).

The Second Circuit has concluded that "management" or
"disposition" of plan assets under 29 U.S.C. section
1002(21)(A)(i) refers to transactions that deal with a pool of
assets, including selecting investments.  Finkel v. Romanowicz,
577 F.3d 79, 86 (2d Cir. 2009).  So, ILIAC is correct that it
can qualify as an ERISA fiduciary under subsection one, which
deals with plan management.  ILIAC, however, is less persuasive
in arguing that it is not also a fiduciary under subsection
three of ERISA's fiduciary definition.

HSI and DeRosa are the designated plan administrators of
their respective 401(k) plans.  Am. Class Action Compl.
¶¶ 11-12.  The Plaintiffs admit that as plan administrators,
they are fiduciaries over plan administration.  See id.; see
also 29 U.S.C. § 1102(a)(1) (mandating that every employee
benefit plan have named fiduciaries with authority to "control
and manage the . . . administration of the plan").  ILIAC argues
that because it is not a named plan administrator, it has no
authority over the plan's administration.  See Def.'s Summ. J.
Mem. 22-23.  But the only import of this point is that ILIAC is
not a fiduciary by designation.  Limiting the fiduciaries of

18

plan administration to the named administrator of the plan does away with subsection three of ERISA's fiduciary definition.  See 29 U.S.C. § 1002(21)(A)(iii).  Further, this argument ignores the functional nature of that definition.  Blatt, 812 F.2d at 812 (noting that focus ought be on the function performed rather than the formal title held when identifying ERISA fiduciaries).

In interpreting the term "administration" under 29 U.S.C. section 1002(21)(A)(iii), the Supreme Court looked to common law, assuming that Congress was drawing from the body of law that gave meaning to terms such as "fiduciary" and "administration" when enacting ERISA.  Varity Corp., 516 U.S. at 502.  In so doing, the Supreme Court concluded that trust administration means acting with those "powers as are necessary or appropriate for the carrying out of the purposes" of the trust.  Id. (quoting 3 A. Scott & W. Fratcher, Law of Trusts § 186, at 6 (4th ed. 1998)) (internal quotation mark omitted); see Opp'n Mot. Summ. J. 16.  This is a fairly broad definition of plan administration.  Moreover, ILIAC's contractual authority to change investment options in order "to accomplish the purpose" of the plan, HSI Grp. Contract § 8.02, at D-App. 716, appears -- by the very terms of the contract -- to grant ILIAC authority in the plan's administration.  As a result, ILIAC's discretionary authority to change the funds available to 401(k) plans supports fiduciary status under subsection three of 29 U.S.C. section

1002(21)(A).  Because subsection three endows fiduciary status

on anyone who possesses discretionary authority in a plan's

administration, regardless of whether that authority is

exercised, ILIAC's fiduciary role is not necessarily limited to

the two instances in which it substituted mutual funds out of

401(k) plans.  See Bouboulis, 442 F.3d at 63-65 (2d Cir. 2006).

> ### 2.   A Triable Issue of Material Fact Exists as to Whether ILIAC Acted in a Fiduciary Capacity When Negotiating and Receiving Revenue-Sharing Payments

Even if, as matter of law, ILIAC's contractual right to

substitute funds makes ILIAC eligible for fiduciary status under

29 U.S.C. section 1002(21)(A)(iii), "whether a person is a

fiduciary in a particular situation is a [mixed] question of law

and fact."  Frommert, 433 F.3d at 271 (quoting Gray v. Briggs,

No. 97 CIV. 6252(DLC), 1998 WL 386177, at *3 (S.D.N.Y. July 7,

1998)) (internal quotation marks omitted).  Here, the

contractual language appears to give ILIAC broad authority over

plan investments with the mandate that ILIAC exercise its

discretion as a fiduciary "to accomplish the purpose" of the

plan.  HSI Grp. Contract § 8.02, at D-App. 716.  An ERISA

fiduciary, however, is defined in "functional terms of [actual]

control and authority over the plan."  Mertens v. Hewitt

Assocs., 508 U.S. 248, 262 (1993).  Thus, ILIAC makes a

compelling argument that despite the discretionary authority it

holds by contract, every other aspect of its relationship with
retirement plans indicates that its role is largely ministerial
rather than that of a fiduciary.  Def.'s Summ. J. Mem. 1; see
Blatt, 812 F.2d at 812 ("[S]omeone who performs purely
'ministerial' functions for a benefit plan is not a
fiduciary.").

In support of its argument, ILIAC highlights that it is the
401(k) plan administrators who initially select funds to include
in their plans from a broader menu of investments offered by
ILIAC.  Def.'s Facts ¶ 23.  Thus, ILIAC suggests that reading
the group contracts as endowing it with broad authority over the
selection of investments undermines a supposedly "core" purpose
of the contract -- giving plan administrators the ability to
select the mutual funds that meet plan participants' needs.
Def.'s Summ. J. Mem. 22 ("It is wholly illogical to conclude
that the [group] contract[s] gave the Plaintiffs . . . the right
to select certain mutual funds for the plan, but also gave ILIAC
the unilateral authority to override those choices by
substituting different funds at will.").  Moreover, ILIAC's
infrequent use of its authority to substitute funds is
consistent with the role of a ministerial middleman vindicating
plan administrator and participants' investment choices.  Thus,
a question of fact exists as to whether ILIAC acted in a
fiduciary capacity when it negotiated or received revenue-

sharing fees from mutual funds -- even where no fund substitution occurred.[4]  See Frommert, 433 F.3d at 271 (remanding case to district court for trier of fact to determine whether defendants acted in fiduciary capacity towards participants in ERISA-governed retirement plan);  American Med. Ass'n v. United HealthCare Corp., No. 00 Civ. 2800(LMM), 2007 WL 1771498, at *24 (S.D.N.Y. June 18, 2007) (denying defendants' summary judgment motion because whether defendants were fulfilling ministerial functions or controlling plan assets as fiduciaries was a question of fact); Haddock v. Nationwide Fin. Servs. Inc., 419 F. Supp. 2d 156, 166 (D. Conn. 2006) (Underhill, J.) (deciding that triable issue of fact existed as to whether service provider had fiduciary status when it engaged in revenue-sharing practices).

Fiduciary status, or acting in a fiduciary capacity, is a required element of the Plaintiffs' claims alleging that ILIAC breached a fiduciary duty in violation of 29 U.S.C. section 1104(a) and participated in prohibited transactions in violation of 29 U.S.C. section 1106(b)(1) and (3).  Given the material

---

[4] To the extent that ILIAC is a fiduciary when it engages in revenue-sharing practices, ILIAC's fiduciary status does not attach until it has contracted to provide services to the Plaintiffs.  See Pegram, 530 U.S. at 227.  Thus, ILIAC cannot be liable under ERISA for any conduct that predates its contracts with the Plaintiffs.  See Zang, 728 F. Supp. 2d at 272 (observing that service provider "cannot be a fiduciary with respect to a plan with which is [sic] has no contractual relationship").

dispute regarding whether ILIAC's revenue-sharing practices are within the scope of its fiduciary duty, summary judgment on these counts is inappropriate.

**III. CONCLUSION**

For the reasons stated, this Court denied ILIAC's summary judgment motion on Counts I and II, ECF No. 192, on May 2, 2013.


/s/ William G. Young_
WILLIAM G. YOUNG[5]
DISTRICT JUDGE

---

[5] Of the District of Massachusetts, sitting by designation.