# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

HEALTHCARE STRATEGIES, INC., Plan     :
Administrator of the Healthcare Strategies, Inc.  :
401(k) Plan and the Healthcare Strategies, Inc.   :
CBU 401(k) Plan, On Behalf of Itself and All    :
Others Similarly Situated,                     :
                                          :
      and                            :
                                          :
The DEROSA CORPORATION,            :
Plan Administrator of The DeRosa Corporation   :
401K PS Plan, On Behalf of Itself and All     :
Others Similarly Situated,                     :
                                          :
          Plaintiffs,               :
     vs.                          :      No. 3:11-cv-00282 (WGY)
                                          :
ING LIFE INSURANCE AND ANNUITY    :
COMPANY,                           :
                                          :
        Defendant.             :      August 27, 2014
                                          :

## DECLARATION OF JAMES E. MILLER IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT

I, James E. Miller, hereby declare as follows:

1.      I am an attorney at law, licensed to practice law in the States of Connecticut, New

Jersey and California, as well as the Commonwealth of Pennsylvania.  I am a member of

Shepherd, Finkelman, Miller & Shah, LLP, and have served as lead counsel in this action.  I am

counsel for Plaintiffs, Healthcare Strategies, Inc. ("HSI") and The DeRosa Corporation

("TDC")(collectively, "Plaintiffs"), in this class action, as well as the certified Class which now

is a Settlement Class (the"Class") and make this declaration in support of the Plaintiffs' Motion

for Final Approval of the Settlement.[1]  If called as a witness in this proceeding, I could and would testify as follows:

**A.**      **Description Of The Litigation**

2.      This action was commenced by Plaintiff, HSI, in February 2011, on behalf of itself and a proposed Class of several thousand similarly situated plan sponsors of 401(a) and 401(k) retirement plans ("Plans") governed by the Employee Retirement Income Security Act of 1974 ("ERISA") that engaged Defendant, ING Life Insurance & Annuity Co. ("ING" or "ILIAC" or "Defendant"), as a service provider.  Later, pursuant to this Court's Order certifying the Class on September 27, 2012 and requesting that an additional current retirement plan customer of ING be added as a class representative, TDC was added as a party plaintiff and class representative in the case.

3.      As the Court is aware, this action involves complex and disputed issues under ERISA.  The claims at issue were investigated extensively by counsel for over six (6) months before commencement of the action, with certain strategic changes in the approach taken in the litigation based upon the investigation undertaken on behalf of HSI, as well as in light of certain legal and regulatory developments regarding the claims to be asserted.   Ultimately, in the original Complaint (filed by HSI alone) and then in the Amended Complaint, HSI and TDC challenged certain business practices of ING and sought to recover revenue sharing payments made to ING by mutual funds or investment advisors, allegedly in violation of the prohibited transaction and fiduciary duty provisions of ERISA.  In essence, Plaintiffs alleged that ING acted

---

[1]The full terms of the Settlement are memorialized in the parties' Settlement Agreement and Release ("Settlement Agreement"), a true and correct copy of which was attached as Exhibit "1" to Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Memorandum").

as a fiduciary with respect to the Plans and that its receipt of revenue sharing payments from mutual funds and investment advisors violated ERISA. As discussed below, the Parties' settlement negotiations lasted for a period of almost one (1) full year and were extensive and complex in nature, with a particular focus on Plaintiffs' proposed changes to ING's business practices.

4.      ING denies Plaintiffs' allegations. Specifically, Defendant denies that it ever acted as a fiduciary with respect to the Plans and, in any event, denies that any causal connection ever existed with respect to its alleged fiduciary status and receipt of revenue sharing payments. Defendant also maintains that Plaintiffs are (a) unable to establish predicate elements of their claims, (b) precluded from obtaining compensatory relief and other remedies, and (c) unable to maintain the certified Class in this case as a result of certain alleged, individualized factual and legal issues raised in this case.

5.      The Parties' Settlement was reached after almost four (4) years of litigation, including extensive discovery, which included the production of hundreds of thousands of pages of documents, over twenty (20) depositions of fact and expert witnesses, third party discovery from numerous mutual funds, substantial analysis and research regarding Defendant's operations and practices, an independent and thorough investigation undertaken by investigators retained to evaluate Defendant's practices and supervised by experienced counsel and their experts, extensive consultations with experts, full class certification proceedings that resulted in certification of a nationwide Class (as well as defense of a subsequent decertification motion), full summary judgment proceedings that resulted in the denial of Defendant's motion for summary judgment, defense against Defendant's counterclaims, certain appellate proceedings, including Rule 23(f) appellate proceedings with respect to class certification and, finally,

preparation for and a full trial as to liability in this case that proceeded to and through closing arguments as to liability.

**B.**    **The Mediation Proceedings**

6.    During the pendency of the case, the Parties first began discussing the possibility of seeking an amicable resolution of the litigation in August, 2012.  Based upon Lead Counsel's experience in this field and that of Defendant's counsel, after a number of discussions, the Parties ultimately began utilizing the services of a highly respected mediator, Mark E. Segall, Esq. of JAMS, the former Head of Litigation, Senior Vice President and Associate General Counsel of JPMorgan Chase, which occurred over the course of approximately six (6) months, beginning in the Spring of 2013 and continuing during the trial as to liability in this case.  In advance of the mediation sessions, the parties prepared and submitted mediation briefs which set forth each party's positions regarding legal theories, evidence and possible damages.  The Settlement terms were arrived at only after three (3) full days of mediation, as well as a number of telephone conferences with the Mediator, as well as direct negotiations between Lead Counsel and ING's Chief Counsel for Litigation, Regulatory and Employment matters in the United States, which lasted for a period of several additional months after closing arguments as to liability.

7.    As a result of those discussions, the Parties ultimately reached an agreement to fully and finally resolve this dispute, subject to the approval of the Court.  There was no collusion whatsoever in connection with the Parties' negotiations or in arriving at the ultimate Settlement.  The Settlement Agreement is the result of arm's-length, protracted negotiations that began soon after the filing of the Complaint.  During the course of these negotiations, the Parties and their respective counsel had discussions concerning the best manner in which this litigation could be resolved, as well as the risks attendant in connection with the theories being advanced

in the prosecution and defense of this case.  As a result of those discussions, which were informed by the significant experience of Lead Counsel and Defendant's counsel in class action and other complex matters arising under ERISA and, specifically, with respect to revenue sharing issues and the insurance industry, Plaintiffs and Defendant, by and through their respective counsel, were able to identify a clear path to arrive at the ultimate agreement.  After working hard to determine a feasible means to accomplish the changes in practice that Plaintiffs demanded, while still permitting Defendant to conduct its business operations, the Parties ultimately reached agreement as to all material terms and then memorialized those terms in the Settlement Agreement.  Since the Settlement also was reached after extensive consultation with well-regarded experts, independent investigation and a full evaluation of the evidence, and the litigation has been led by experienced counsel in this field, the Parties were fully aware of the issues and risks associated with their respective claims and defenses.

8.      The Parties have entered into the Settlement to resolve this litigation on behalf of the Class.  Throughout the litigation, the Parties have vigorously contested and explored many of the factual and legal issues in this case.  Defendant vigorously denies and continues to deny Plaintiffs' allegations and specifically denies that it engaged in any improper or unlawful conduct of any kind.  Nevertheless, Defendant has concluded that the Settlement is desirable in order to avoid the time, expense, and inherent uncertainties of defending protracted litigation and to resolve, finally and completely, all pending and potential claims of Plaintiffs and all members of the Class.  Similarly, Plaintiffs recognize the costs and risks of prosecution of the litigation, and believe that it is in their interest, and the interest of all Class members, to resolve the litigation, and any and all claims against Defendant relating to the practices at issue, on the terms of the Settlement presented to this Court, which terms they believe confer extremely valuable

consideration and benefits to the Class and to be fair, adequate and reasonable under all of the circumstances.

9.      Lead Counsel in this case, Shepherd Finkelman Miller & Shah, LLP ("SFMS" or "Lead Counsel"), has extensive experience litigating cases challenging revenue sharing practices under ERISA. In *Phones Plus, Inc. v. Hartford Life Ins. Co.*, 3:2006-cv-01835 (D.Conn.), SFMS, on behalf of its client and a nationwide class of plan sponsors, achieved the first settlement of its kind under ERISA in 2010, challenging the practice of life insurance service providers accepting and receiving revenue sharing payments under certain circumstances. The *Phones Plus* settlement was reached after class certification and summary judgment had been fully submitted to the court. In *Butler National Corp. et al. v. Union Central Life Ins. Co., et al.*, 1:12-cv-177-SJD-KLL (S.D.Ohio), SFMS, on behalf of its clients and a nationwide class of sponsors, recently obtained a similarly positive settlement on behalf of a nationwide class of retirement plans (the final approval in the *Butler National* case is scheduled for September 10, 2014). Most recently, the court denied defendant's motion for summary judgment in *Golden Star, Inc. v. Mass Mut. Life Ins. Co.*, 2014 U.S. Dist. LEXIS 69010 (D. Mass. May 20, 2014), in which Lead Counsel represents the plaintiff and the proposed class. While Lead Counsel have achieved significant results in these cases, it bears noting that some arguably similar actions against insurance company service providers have been entirely unsuccessful. *See, e.g., Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013) (holding that a 401(k) service provider was not a fiduciary with respect to its receipt of revenue sharing from mutual fund companies); *Ruppert v. Principal Life Ins. Co.*, 705 F.3d 839 (8th Cir. 2013) (dismissing appeal of denial of class certification in case challenging service provider's receipt of revenue sharing payments on basis that commonality and typicality was lacking); *Santomenno v.*

*John Hancock Life Ins. Co.,* Civ. No. 2:10-cv-01655 (WJM), 2013 U.S. Dist. LEXIS 103404

(July 24, 2013) (granting motion to dismiss and holding that service provider for retirement plans

was not a fiduciary for purposes of plan participants' ERISA breach of fiduciary duty and

prohibited transaction claim; and that the provider owed no fiduciary duty with respect to

negotiation of its fees, nor was it a fiduciary with respect to revenue sharing payments or

selection of a particular investment option).  Thus, Plaintiffs also faced substantial risk in

litigating this case on behalf of the Class.  Indeed, during the trial, the Court itself expressed

certain reservations (and identified the possibility that Plaintiffs and the Class would not prevail)

with respect to liability and any disgorgement remedy.

> 10.     The Parties did not discuss or engage in negotiations with respect to case

contribution fees or attorneys' fees and expenses until all material terms of the Settlement had

been agreed upon and engaged in these discussions only after agreement as to all other material

terms had been reached.

## C.     <u>The Terms Of The Proposed Settlement</u>

> 11.     Pursuant to the Settlement, Class Members will receive the following valuable

benefits:

- Defendant will deposit $14,950,000 in a common fund to provide compensatory relief to the Class;

- Defendant will make a number of changes to its business practices that directly benefit the Class.  Such changes include:

- <u>Defendant-Initiated Changes to Product Menus</u>

  - <u>Additions</u>.  Defendant will specifically identify to plan sponsors, via ILIAC's plan sponsor website, any addition of a fund to a Plan's Product Menu at the time of the addition.  Defendant will update its new customer proposals, prospective plan sponsor booklets and plan sponsor website to inform plan sponsors that such additions are identified on the plan sponsor website.

- <u>Removals</u>.  Defendant will provide to plan sponsors written notice of any removal of a fund from a Plan's Product Menu.  Such notice shall be published on ILIAC's plan sponsor website at least thirty (30) days prior to the removal, and shall state the effective date of the removal.  Defendant will update its new customer proposals, prospective plan sponsor booklets and plan sponsor website to inform plan sponsors that such deletions are identified on the plan sponsor website.

- <u>Substitutions</u>.  ILIAC will not exercise any authority to make a substitution of one fund for another (i.e., transfer current investment in existing Fund A to Fund B) or to delete/remove a fund from a Plan's Product Menu if the Plan already offers such fund on its Plan Menu, and shall modify its contracts to eliminate any such authority to the extent applicable.

- <u>Disclosures of Fund-Related Fees and Expenses</u>

Defendant will revise and amend its disclosures relating to Mutual Fund related fees and expenses contained in new customer proposals, plan sponsor booklets, and ILIAC's plan sponsor website as follows:

- ILIAC shall provide on the plan sponsor website a disclosure, in the form of Exhibit "G" to the Settlement Agreement with respect to fund fees and expenses, including revenue paid to ILIAC, if any, for each fund available within the Plan's Product Menu.  Defendant shall discontinue use of the report in the form of Trial Exhibit 16 for any purpose (*see* Exhibit "H" to the Settlement Agreement).

- Defendant shall eliminate language that Revenue Sharing Payments neither directly nor indirectly increase mutual fund expenses and replace it with language that Revenue Sharing Payments may have a direct impact or indirect impact on mutual fund expenses and the share class chosen by ILIAC.

- Defendant shall add language that ILIAC offers various Product Menus to retirement plan customers depending on the amount of direct fees they choose to pay and other factors, and that these various Product Menus have varying degrees and magnitude of Revenue Sharing associated with them (including one Product Menu that pays no Revenue Sharing of any kind and is paid for entirely by direct fees assessed to the plan and/or its participants).  Defendant shall add language that, if a plan sponsor wishes to pay all fees to Defendant directly by choosing a Product Menu for which Defendant does not accept any Revenue Sharing Payments from mutual funds, the plan sponsor or its representative should contact Defendant about available options and pricing, including the information regarding the investment options available on such menu(s) and the expense ratios associated with those investments.

- Defendant shall add language that ILIAC chooses to offer various share classes of mutual funds on different Product Menus, that only one share class of each mutual fund investment is typically offered on a given menu in light of pricing and product requirements, and that the primary difference between share classes of a given mutual fund is generally the expense ratio of the mutual fund (*i.e.*, the amount that the plan's participants pay as a fund expense) and the amount of Revenue Sharing that ILIAC receives from the mutual fund, which is paid from the mutual fund expense ratio.

- Defendant shall advise Plans that fund fee adjustments ("FFA(s)") are utilized to increase (and, for certain menus, decrease) the revenue received by ILIAC for certain mutual funds that do not offer sufficient (or, in some case, offer more than sufficient) Revenue Sharing Payments to otherwise be offered on a given Product Menu (depending on the Revenue Sharing requirements, if any, applicable to the Product Menu) and that, although FFAs do not always "normalize" or "neutralize" the effect of Revenue Sharing Payments in total, that is their object and intent.

- Defendant shall advise Plans that more detailed information regarding the share classes available on various menus offered by ILIAC, as well as the Revenue Sharing associated with those share classes, and the Revenue Sharing received and fund fee adjustments in connection with the Plan's investments, shall be provided upon written request to ILIAC.

- **Other Provisions**

  - Future Plan customers shall be offered the specific opportunity to pay all fees to Defendant directly by choosing a Plan Menu (or, to the extent applicable, more than one Plan Menu) for which Defendant does not accept any Revenue Sharing Payments from mutual fund companies.

  - As part of the Settlement, each of the Plans would be deemed to have elected to reinvest all mutual fund dividends from the date of initial group annuity contract/group funding agreement.  Defendant's point of sale disclosures will now provide that, as a result of entering into a contractual relationship with Defendant through a group annuity contract or group funding agreement, each Plan is consenting to reinvestment of mutual fund dividends, that reinvestment of dividends may result in undesirable concentration in certain investments over time, and that Defendant makes available certain tools to re-balance investment portfolios.

  - Defendant agrees to provide thirty (30) days' written notice of any change in the amount of an FFA.

12.     Defendant will begin to implement these changes to its business practices within six (6) months of Final Approval of the Settlement and will make diligent and good faith efforts to ensure that the implementation of the changes set forth above are concluded within twelve (12) months of Final Approval.  In addition, Defendant agrees that the above actions will remain in effect for a minimum of five (5) years from Final Approval unless there is a change in applicable law that renders any change or practice unlawful.

13.     The changes in practice agreed upon as part of the Settlement were carefully crafted to address the deficiencies that Plaintiffs alleged existed in Defendant's disclosures and practices, are consistent with the DOL's guidance in *In re Frost National Bank*, DOL Opinion Letter 97-15A, 1997 ERISA LEXIS 18, at *7-9 (May 22, 1997) (the "*Frost Letter*") (discussing that, if revenue sharing payments are credited to the direct benefit of plans or to cover plan expenses that the plans would otherwise be obligated to pay, no fiduciary breach or prohibited transaction occurs); *In re Aetna Life Insurance Company*, DOL Opinion Letter 97-16A, 1997 ERISA LEXIS 17, at *11 (May 22, 1997) (the "*Aetna Letter*") (discussing notice and information requirements in the event that a plan investment addition, substitution, deletion or change in the investment menu available to a plan is initiated by a retirement plan service provider), and provide the plans in the Class all with the significant opportunity to achieve exceptional savings from a fee/cost perspective by moving to ING's zero revenue sharing menu, which contains a broad array of low cost index funds -- an array that stands in stark contrast to that available on ING's other menus that contain investments that make revenue sharing payments.  As part of their continuing duties to the Class, Plaintiffs and their counsel have prepared to and are prepared to offer the Class members substantial educational and other assistance in transitioning to a zero revenue sharing environment at no cost to the Class members.

14.    Plaintiffs' expert estimates that the changes in practice by ING have a value of at least $11,250,000 per year for a total value of $56,250,000 and, perhaps more importantly, that the zero revenue sharing menu option provides the Class members with the opportunity to achieve more than $344,394,071 million in savings and as much as $559,870,576 in savings, based on conservative calculations. *See* Declaration of James Scheinberg ("Scheinberg Decl."), a true and correct copy of which is attached as Exhibit "3" to Plaintiffs' Memorandum of Law in Support of Final Approval at ¶¶ 18-28.

15.    The TDC plan already has transitioned to the zero revenue sharing menu and we have been advised that it lowered its total plan operating cost from 181 basis points to 101 basis points (with further savings still possible and inclusive of the separate 10 basis point fee that TDC pays Morningstar Associates, LLC) -- which provides more than $8,000 per annum in savings for the TDC plan and $40,000 in savings over the next five (5) years - without even accounting for compounding of retirement plan assets which will not be depleted by the additional fees that now will not be expended.  In fact, if the savings already achieved by the TDC plan by moving to the zero revenue sharing menu were extrapolated across the plans in the Class, the savings would amount to more than $1 billion in the next five (5) years.

16.    The total value of the Settlement compares favorably to the range of potential outcomes at trial.  While Defendant's damages expert opined that the maximum recovery for the Class would be $3.4 million, Plaintiffs' damages expert opined that the range of recovery should be between $135 million and $170 million (based upon a profits based calculation and depending upon the methodology adopted for prejudgment interest), or $459 million to $890 million if a full disgorgement remedy was granted (depending on the prejudgment interest methodology adopted), the based monetary amount to be paid is more than four (4) times the amount

Defendant's expert opined could be recovered at most in the trial, while the total value of the settlement (ranging from $415 million to $631 million or more), *see* Scheinberg Decl. at ¶¶ 18-28, represents a very substantial recovery for the Class relative to the potential recoveries that could have been obtained.  It also bears noting that the changes and savings available under the Settlement also will inure to benefit of future plan customers of ING that are not Class members, thereby making the Settlement even more valuable when future beneficiaries are taken into account.

17.     In sum, the Settlement calls for a significant monetary payment to the Class and provides substantial and meaningful benefits to the Class in the form of significant changes in the manner in which Defendant conducts its business and the provision of clear, detailed information regarding revenue sharing payments, as well as direct fees and expenses paid by the Class' retirement Plans, and, importantly, an opportunity to achieve very significant fee/cost savings by moving to a zero revenue sharing menu and taking advantage of the wide array of low cost index funds available on that menu.

18.     In connection with the Supplemental Submission to be filed by Plaintiffs on or before September 10, 2014, Plaintiffs also expect to provide an opinion and report from an independent fiduciary, Nicholas Saakvitne, Esquire (the "Independent Fiduciary"),[2] which reviews and approves all aspects of the Settlement as fair and reasonable for the Class under the circumstances.

19.     Notice of the Settlement, in the form approved by the Court's Preliminary Approval Order, was disseminated to members of the Class by both electronic and first-class

---

[2]This opinion is being provided, to the extent applicable, in order to comply with the DOL's Prohibited Transaction Exemption ("PTE") No. 2003-39.

mail, using the services of Strategic Claims Services ("SCS"), a highly respected class action

settlement administrator. *See* Declaration of Josephine Bravata dated August 27, 2014 ("Bravata

Decl."), a true and correct copy of which is attached as Exhibit "1" to Plaintiffs' Memorandum of

Law in Support of their Motion for Final Approval at ¶ 4.  In addition, notice was disseminated

to members of the Class by publishing a Summary Notice in the *Wall Street Journal*.  Id. at ¶ 7.

Members of the Class were informed that they had the right to exclude themselves from the Class

by serving written notice by September 3, 2014.  They were also informed that they had the right

to object to the Settlement Agreement by filing and serving a written statement by September 3,

2014.  *Id.*  In response to the Settlement Notice, only three (3) members of the Class have chosen

to exclude themselves, and no objections to the Settlement have been filed with the Court to date.

Instead, in recognition of the fairness of the Settlement and the significant benefits that it

confers, the reaction of the Class has been universally positive.

      20.     Defendant has agreed not to object, subject to Court approval, to the payment of

attorneys' fees to Class Counsel in the amount of Six Million Two Hundred Thousand Dollars

($6,200,000) and the payment of the actual costs and expenses of the litigation up to Six Hundred

and Fifteen Thousand Dollars ($615,000).  The amount of attorneys' fees and costs to which

Defendant does not object is substantially less than Lead Counsel's lodestar in this case, as

discussed below, and is even less than the total attorneys' fees and costs requested and awarded

by the Court in the *Phones Plus* case, where a lower monetary payment was obtained, the total

lodestar of class counsel was substantially less and the total value of the settlement was

substantially less than this amount.  Defendant also has agreed not to object, subject to Court

approval, to the payment of a case contribution fees of Fifty Thousand Dollars ($50,000) to HSI

and Twenty-Five Thousand Dollars ($25,000) to TDC.

21.     Pursuant to the Settlement, as described above, Defendant has agreed to provide substantial, multi-faceted relief to the Class.  As noted in the Declaration of James Scheinberg, the value of the Settlement, when structural relief is included, is conservatively valued as being in excess of Four Hundred and Fifteen Million Dollars ($415,000,000) and potentially much more than this conservative estimate.  *See* Scheinberg Decl. at ¶¶ 18-28.

22.     Plaintiffs in this litigation were represented by Lead Counsel with extensive experience in litigating complex cases and employee benefit class actions under ERISA.  The attorneys and other professionals of Shepherd Finkelman Miller & Shah, LLP all have significant experience litigating ERISA and similar complex class actions and certain of these counsel have been responsible for obtaining ground-breaking results in a number of similar cases on a nationwide basis.  As the record reflects in this case, Lead Counsel respectfully submit that Plaintiffs and the Class received excellent representation throughout the pendency of this case and, in addition, in the form of the Settlement, were the beneficiaries of an excellent result achieved through the diligence of Plaintiffs and their counsel.

23.     The Settlement was reached through arm's-length bargaining between experienced counsel for Plaintiffs and Defendant, with the assistance of a well-respected mediator.  An extensive investigation was conducted before and following commencement of the action, and significant discovery, pretrial and trial proceedings were conducted, all of which was, and is, more than sufficient to allow Lead Counsel and the Court to assess the Settlement intelligently and with reason.  The Parties did not discuss or engage in negotiations with respect to Case Contribution Fees, attorneys' fees, costs and expenses until all material terms of the Settlement had been agreed upon.

24.     If the case had not been settled, the litigation would certainly have been even

more lengthy and hard-fought with the outcome uncertain. Furthermore, continued litigation would have delayed relief, if any were ultimately received, to the Class Members. It also bears noting that the law firms representing Defendant are among the most capable firms in the country and each firm has considerable experience defending against complex litigation of this kind.

25.     The reaction of the Class to the Settlement has been overwhelmingly favorable. Through the comprehensive Notice plan, Class Notice was sent directly to each of the current and former Class members by electronic mail and first class mail. In addition, Notice was also published and a dedicated website created by the Settlement Administrator was available for reference by the Class members. In response to the Class Notice, as noted above, only three (3) Class Members have opted out of the Settlement or no Class Members have objected to any of the Settlement provisions.

26.     Following the dissemination of Notice to the Settlement Class, Lead Counsel have regularly fielded telephone calls from Class Members inquiring about the Settlement and assisted them in filing Instruction Forms as requested. Lead Counsel have personally spoken, to date, with over two hundred and fifty (250) plans in the Class or their representatives. Lead Counsel have dedicated, on a daily basis, attorneys and paralegals familiar with the terms of the Settlement to handle any calls and answer inquiries by Class members. The response from the Class (consistent with the absence of any meaningful number of opt-outs and objections) has been overwhelmingly positive and Plaintiffs and Lead Counsel agree with the sentiment of the Class and strongly endorse the Settlement.

D.     **Attorneys' Fees, Expenses And Incentive Awards**

27.     During the course of my work in this litigation, I have been intimately involved in and supervised the following activities: (a) communicating with Plaintiffs in their capacities as

Class Representatives; (b) communicating with Class members and responding to their inquiries; (c) developing Plaintiffs' litigation strategy and investigating and evaluating Plaintiffs' claims and Defendant's asserted and potential bases to defend the litigation; (d) conducting the pre-filing investigation and subsequent discovery regarding Plaintiffs' allegations and Defendant's defenses and the damages suffered by Class members; (e) researching, drafting and reviewing pleadings and research memoranda as to liability, damages and all other issues encountered in the litigation; (f) working with Plaintiffs' investigators and experts to prosecute this litigation; (g) actively participating in Settlement discussions and the mediation; (h) serving as lead counsel in all pretrial and trial proceedings; (i) drafting Settlement papers and crafting the Settlement procedures; (j) interacting and working with counsel for Defendant; (k) preparing the preliminary and final approval papers submitted to this Court; and (l) reviewing the time and expense summaries of Lead Counsel submitted in connection with Plaintiffs' Motion to ensure that all time submitted was reasonably and necessarily incurred and was not duplicative of other time spent in prosecuting the case.

28.     Based upon my experience in numerous other class action cases, including employee benefits, securities and antitrust class actions, as well as consumer class actions, I believe that it is fair to describe this case as complex from both a legal and technical perspective. In connection with the prosecution of this case, Lead Counsel were required to devote themselves to the case to ensure that the many technical and legal issues encountered were properly analyzed and that the interests of the Class were protected and well served.  The skill and diligence displayed by Lead Counsel was largely responsible for the outstanding result achieved.

29.     Unlike certain other class actions, the successful prosecution of this case also

-16-

required specialized expertise with respect to ERISA and its application to the insurance industry's operations and revenue sharing practices in the retirement industry. As noted above, Lead Counsel have handled the only such revenue sharing cases that have resulted in any recovery for classes of retirement plans of any kind to date.

30.     Lead Counsel undertook this litigation on a wholly contingent basis. Class Counsel were obligated to ensure that sufficient resources and attorney time were dedicated to the prosecution of the case and that funds were available to compensate staff and the considerable out-of-pocket costs required by such complex cases. Undertaking class litigation of this nature necessarily limits Lead Counsel's availability to undertake other representations. Furthermore, rather than accepting certain hourly engagements in which Lead Counsel are regularly compensated at the hourly rates that were used to calculate "lodestar" (explained more fully below), in this case, Lead Counsel were not compensated on an hourly or regular basis but, instead, were required to advance the substantial funds (both in terms of attorney and staff time, as well as substantial out-of-pocket costs), with absolutely no assurance of any recovery.

31.     Lead Counsel maintained, on a contemporaneous basis, detailed time records regarding the work performed in connection with the prosecution of the litigation. The total lodestar for Lead Counsel currently amounts to over Nine Million Dollars ($9,000,000).[3] Given the nature of the litigation and the extensive nature of the proceedings, including the long and complex trial proceedings, the time spent on the case necessarily was performed primarily by senior partners in each firm representing the Class. Lead Counsel also reasonably estimate that it

---

[3]Exhibit "A" contains summaries of the time spent by Class Counsel's attorneys and paralegals on this litigation, and includes the lodestar calculations based on the firm's current billing rates.

will require at least an additional $350,000 in attorneys' fees and costs post-final approval (since Lead Counsel anticipates substantial additional work and interaction with Class members many of which have already indicated that they will be requesting Lead Counsel's assistance and counsel to move to a zero revenue sharing environment).  That time will, *inter alia*, be spent preparing for and attending the Final Approval Hearing, providing any additional information required by the Court, communicating with Class Members regarding the Settlement, monitoring the claims administration process and providing specific educational materials and counseling regarding the benefits of the Settlement and the savings that can and should be achieved as a result of the carefully crafted relief obtained for the Class as part of the Settlement.

32.     The hourly rates, ranging from $185 for certain paralegal work to up to $750 for senior experienced litigation counsel, are the same rates which Class Counsel utilize in non-contingent matters and which have been accepted and approved in other complex contingent class action litigation.  These rates also have been specifically approved as fair and reasonable by courts in connection with complex class action matters handled by Lead Counsel and are consistent with rates for similar litigation approved as fair and reasonable by this Court in similarly complex matters.

33.     Class Counsel also expended a total of Six Hundred and Twenty-Seven Thousand, Two Hundred and Eighty Two Dollars and Twenty-Three Cents ($627,282.23) in unreimbursed expenses in connection with the prosecution of this Litigation through July 31, 2014.  The expenses include court filing and process fees, courier fees, investigative fees, expert and consulting fees, copying costs, postage charges, transportation and travel expenses, mediation

charges, telephone charges, and computer and research charges.[4]  Pursuant to the agreement reached as part of the Settlement, Lead Counsel only seek reimbursement of Six Hundred and Fifteen Thousand Dollars ($615,000) of these expenses.  Since Lead Counsel elected to retain the Independent Fiduciary at a cost of Fifteen Thousand Dollars ($15,000) for the benefit of the Class, the expenses sought are less than the amount actually incurred ($627,282.23).  Of course, Lead Counsel abide by their agreement with Defendant and only seek reimbursement of $615,000.

34.     These expenses are reflected in the books and records of Lead Counsel prepared from expense vouchers, receipts, statements and other records and are a true and accurate summary of the expenses for this case.  The expenses for which reimbursement is sought all were necessarily incurred and are reasonable in amount and, as noted above, Lead Counsel seek an award of less than the amount of their full expenses.  Throughout the litigation, Lead Counsel worked hard to ensure that all expenses were reasonable and specifically applied guidelines and caps on a number of expense categories to ensure that all were fair and reasonable in amount.

35.     I believe that the professional skill and standing of counsel on both sides fully supports the requested award.  Attached as Exhibit "C" is SFMS's current firm resume detailing the experience of certain of the key attorneys involved in this litigation.

36.     During the course of the litigation, the representative Plaintiffs were invaluable to the prosecution of the litigation.  The representative Plaintiffs were actively involved in every step of the process, frequently communicating and meeting with Class Counsel and providing their input regarding the litigation.  As a result of the litigation, Plaintiffs spent a significant

---

[4]Exhibit "B" is a summary of the expenses incurred by Class Counsel in prosecuting this Litigation.

amount of time working on the case, including gathering documents, participating in conference and other telephone calls, as well as in-person meetings, regarding case strategy and status. In addition, representatives of each of the Plaintiffs were deposed, as well as appeared at trial and testified, and each of the Plaintiffs had a representative in attendance at each day of the trial. It also bears noting that the Plaintiffs faced and were required to defend against counterclaims throughout the pendency of the litigation. In light of all of the above, and in recognition of the significant contributions made by the Plaintiffs, I believe that the requested case contribution fees of Fifty Thousand Dollars ($50,000) for HSI and Twenty-Five Thousand Dollars ($25,000) for TDC are exceedingly fair and reasonable given Plaintiffs' substantial services on behalf of the Class.

37.     My office has been personally contacted by over two hundred and fifty (250) Class members to date, all of which have been extremely positive about all aspects of the Settlement. In addition, after Plaintiffs filed their Motion for Preliminary Approval and the accompanying Settlement Agreement, a representative of the United States Department of Labor in Boston, Massachusetts with previous experience litigating against ING contacted Lead Counsel and specifically congratulated our firm on achieving such a positive outcome.

I declare under penalty of perjury under the laws of the State of Connecticut and the United States of America that the foregoing is true and correct. Executed this 27th day of August, 2014 at Chester, Connecticut.

/s/ James E. Miller
James E. Miller

# EXHIBIT A

**Healthcare Strategies, Inc. et al. v. ING Life Ins. & Annuity Co. Time-Keeping Summary**

TIME SPENT BY PLAINTIFFS' COUNSEL
REPORTING PERIOD: 7/1/10 - 8/15/14

| Name | Status | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Total Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jonathan Dilger | LC | 0.00 | 567.10 | 82.10 | 0.00 | 21.70 | 0.00 | 0.00 | 0.00 | 670.90 | 75.00 | 50,317.50 |
| Priya Amin | PL | 0.00 | 0.00 | 121.30 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 121.30 | 175.00 | 21,227.50 |
| Jillian Boyce | PL | 7.80 | 125.70 | 0.00 | 466.20 | 0.00 | 0.00 | 0.00 | 0.00 | 599.70 | 175.00 | 104,947.50 |
| Elena M. DiBattista | PL | 93.20 | 229.20 | 71.30 | 215.10 | 0.00 | 0.00 | 0.00 | 4.30 | 613.10 | 185.00 | 113,423.50 |
| Kathy Haight | PL | 0.00 | 3.20 | 0.00 | 0.00 | 0.00 | 21.00 | 0.00 | 0.00 | 24.20 | 175.00 | 4,235.00 |
| Betsy Ferling Hitriz | PL | 0.00 | 133.40 | 256.30 | 0.00 | 221.90 | 0.00 | 0.00 | 0.00 | 611.60 | 185.00 | 113,146.00 |
| Pamela Mauger | PL | 0.00 | 24.00 | 4.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 28.10 | 185.00 | 5,198.50 |
| Susanne Moss | PL | 0.00 | 0.00 | 24.10 | 0.00 | 0.00 | 0.00 | 0.00 | 7.90 | 32.00 | 185.00 | 5,920.00 |
| Karen M. L. Grenon | A | 0.00 | 66.20 | 421.30 | 0.00 | 0.00 | 0.00 | 0.00 | 3.20 | 490.70 | 475.00 | 233,082.50 |
| Rose F. Luzon | A | 72.30 | 212.20 | 6.70 | 0.00 | 0.00 | 12.70 | 29.60 | 10.70 | 344.20 | 475.00 | 163,495.00 |
| Kolin C. Tang | A | 0.00 | 112.20 | 76.70 | 957.50 | 36.90 | 11.10 | 73.20 | 0.00 | 1,267.60 | 400.00 | 507,040.00 |
| Michael J. D'Amato | OC | 76.40 | 1,437.30 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,513.70 | 500.00 | 756,850.00 |
| Scott Johnson | OC | 0.00 | 133.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 133.40 | 475.00 | 63,365.00 |
| Patrick A. Klingman | OC | 0.00 | 61.90 | 122.30 | 6.80 | 0.00 | 192.40 | 0.00 | 50.20 | 433.60 | 550.00 | 238,480.00 |
| James E. Miller | P | 142.50 | 793.20 | 1,359.80 | 1,035.60 | 484.60 | 377.60 | 482.70 | 210.20 | 4,886.20 | 725.00 | 3,542,495.00 |
| Laurie Rubinow | P | 31.70 | 1,734.40 | 673.40 | 1,076.40 | 71.30 | 712.20 | 0.00 | 16.30 | 4,315.70 | 600.00 | 2,589,420.00 |
| James C. Shah | P | 0.00 | 21.40 | 187.60 | 42.30 | 22.80 | 89.80 | 76.20 | 4.70 | 444.80 | 700.00 | 311,360.00 |
| Scott R. Shepherd | P | 0.00 | 0.00 | 7.80 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7.80 | 750.00 | 5,850.00 |
| Nathan Zipperian | P | 0.00 | 12.40 | 109.60 | 45.70 | 40.00 | 13.10 | 79.40 | 0.00 | 300.20 | 600.00 | 180,120.00 |
| **TOTALS** | | | | | | | | | | **16,838.80** | | **9,009,973.00** |

**Status Codes:  P = Partner   OC = Of Counsel   A = Associate   PL = Paralegal   LC = Law Clerk**

1. Investigations, Factual Research
2. Discovery
3. Pleadings, Briefs and Pretrial Motions
4. Court Appearances/Trial Preparation/Trial
5. Settlement
6. Litigation Strategy and Analysis
7. Class Certification
8. Other/Miscellaneous

808095.1

# EXHIBIT B

**Healthcare Strategies, Inc. et al. v. ING Life Ins. & Annuity Co.**
**Expense Report**

**Plaintiff's Counsel**
**Date: 7/1/10 - 7/31/14**

| Description | Cumulative Total | |
|---|---|---|
| Assessments | | n/a |
| Commercial Copies | $ | 9,230.50 |
| Internal Reproduction/Copies | $ | 123,600.20 |
| Computerized Research/Access Costs | $ | 64,387.30 |
| Court Fees (filing, etc.) | $ | 652.00 |
| Court Reporters/Transcripts | $ | 55,115.73 |
| Independent Fiduciary Fees | $ | 15,000.00 |
| Mediation Fees | $ | 12,303.75 |
| Class Notice Fees | $ | 34,924.33 |
| Telephone/Fax/Conference Line Charges | $ | 10,816.88 |
| Postage/Express Delivery/Couriers | $ | 16,140.80 |
| Professional Fees (expert/investigator, etc.) | $ | 181,976.27 |
| Witness/Service Fees | $ | 7,652.32 |
| Travel (Transportation, lodging, meals, mileage) | $ | 95,482.15 |
| | | |
| **TOTAL EXPENSES** | **$** | **627,282.23** |

# EXHIBIT C

**SHEPHERD FINKELMAN MILLER & SHAH, LLP**
(www.sfmslaw.com)



### Serving Our Clients Worldwide

Shepherd, Finkelman, Miller & Shah, LLP is a results driven law firm that is focused on delivering the highest level of service possible to our clients throughout the globe.  SFMS believes that approaching the representation of our clients with considered judgment and candor, as well as the highest degree of courtesy, professionalism and zeal possible, provides the best opportunity for our clients to achieve and exceed their goals in any given matter.  Having begun over ten years ago as a litigation boutique, SFMS has grown into a full-service firm that is able to meet its clients' needs in virtually any matter.  The Firm maintains a number of offices in the United States that are strategically located to serve our clients.  In addition, through a highly respected, global network of independent law, fiduciary trust and accounting firms, as well as affiliate offices, SFMS is able to effectively meet the needs of its clients throughout the world.  Although our practice has grown in terms of geographic scope to meet client needs, SFMS maintains the culture of a boutique law firm with attorneys and staff working in an interdisciplinary, team-based manner across and between different offices.

### Focused On Results

As part of our mission statement, the Firm ensures that every client receives our best judgment and a clear recommendation in every matter.  In other words, although we always discuss and fully describe the array of alternatives available to our clients, we understand the importance of advocates being plain spoken, willing to challenge convention and strategic in their thinking.  That is why we make certain that, without mincing words, SFMS always provides specific recommendations to each client in clear and straightforward terms regarding the Firm's judgment as to the best way to achieve the goal at hand.

### Motivated by Challenging Issues

The attorneys, other professionals and staff of SFMS are a diverse and accomplished group of individuals who value the professional rewards and other benefits of working in a collegial, team-oriented environment.  The attorneys at SFMS have earned degrees from a variety of highly-respected colleges and law schools, including the University of California at Berkeley, University of Chicago, Cornell University, Duke University, Emory University, Fordham University, George Washington University, Harvard University, Hastings College of Law, the University of Maryland, the University of Oregon, University of Oxford, the University of Pennsylvania, Pennsylvania State University, Temple University, Trinity College, University of Pittsburgh, Villanova University, University of Virginia and Yale University.  Many graduated with distinction and were members and editors of their respective schools' law reviews, moot courts or honor fraternities.  Most have served federal or state judicial clerkships, and others hold graduate degrees in law, tax or other disciplines.

**Page 2**

Our professional staff also is highly experienced and accomplished.  At SFMS, we believe strongly that the competence and commitment of our non-attorney staff is critical to achieving the excellent client service that we always seek to deliver.  We pride ourselves on working collegially together as a Firm while eschewing artificial hierarchy and stilted interactions in favor of a team-oriented environment that fosters creativity and a commitment to excellence.

Comprised of attorneys and staff that are almost exclusively alumni of large firms, SFMS team members have a keen understanding of the benefits of working in a boutique environment in which the opinions and contributions of all attorneys and staff are considered and valued.  The Firm's clients also recognize these benefits and regularly comment upon SFMS's responsiveness and the efficiencies achieved in specific engagements, where the attorneys and staff are clearly and unselfishly committed to the simple goal of achieving an excellent result for the client, while enjoying the opportunity to collaborate with peers in a workplace environment that maximizes the potential of all team members and values the contributions of all.

At SFMS, we understand that it is best to approach any case, transaction, trial or other client challenge by obtaining a full understanding of the issues at hand and then engaging in strategic thinking, as well as hard work, to establish, and then meet and exceed, our clients' established goals.  At SFMS, we are motivated by, and relish, the opportunity to confront challenging issues.  That is why we consider it a privilege to work cooperatively with our clients to meet their goals and overcome the inevitable challenges created by complicated transactions and the disputes that clients regularly confront.

### *Socially Committed and Responsible*

Although superior client service is our overriding aim, at SFMS, we also are committed to approaching our practice in a socially responsible manner, while making meaningful contributions to support the communities in which we work, the world at large and the social justice system.  In our first ten years, although we are proud of the over $1 billion in recoveries that we have obtained for our clients in litigation and similar matters, the important disputes that we have resolved and the significant transactions that we have completed, we are equally proud of the more than $100 million in charitable donations for which the Firm has been responsible in the form of *cy pres* and other donations and gifts to assist those in need, as well as supporting the arts, education and other philanthropic causes.  The Firm also is actively involved in *pro bono* cases, having successfully assisted clients in a variety of diverse matters, including civil matters for indigent clients, death penalty appeals, immigration asylum matters and court-appointed prisoner rights cases.

Page 3



*Areas of Expertise*

Although SFMS is not organized into formal departments or practice areas and, instead, believes that our clients are best served by an interdisciplinary approach ensuring that the best attorneys for a given matter are assigned to meet the client's needs, the following constitute the Firm's more significant practice areas:

- Antitrust, Competition and Trade Regulation

- Business Counseling and Corporate Transactions

- Employee Benefits and Fiduciary Compliance

- Insurance Coverage and Practices

- International Business and Trade

- Private Client Services

- Representative and Collective Litigation

- Arbitration, Mediation and Other ADR Procedures

- Commercial and Other Complex Litigation

- Institutional Investor Services

- Intellectual Property

- Labor and Employment

- Qui Tam, False Claims and Whistleblower Proceedings

- Securities Regulation and Corporate Governance

Page 4



*Antitrust, Competition and Trade Regulation*

SFMS has broad experience in dealing with the complex legal and economic issues that antitrust, competition and trade regulation questions can present. We offer clients significant litigation and counseling experience in virtually all aspects of antitrust and trade regulation litigation. Our lawyers have successfully represented plaintiffs and defendants in major civil antitrust matters throughout the United States. SFMS attorneys also have extensive experience representing parties involved in related criminal, administrative and other regulatory proceedings. In such matters, our team members have extensive experience working with the Department of Justice, the Federal Trade Commission and various State Attorneys General, as well as, upon occasion, international regulatory bodies, including the European Union. SFMS also has worked with and represented governmental entities, including the State of Connecticut, in unfair trade practice and related matters. Finally, SFMS has represented a number of clients, both businesses and consumers, in unfair trade practice and consumer protection cases throughout the United States in a wide variety of jurisdictions, including in scores of individual and Multi-District Litigation proceedings, in cases arising under the Consumer Legal Remedies Act, the Lanham Act, the Magnuson-Moss Warranty Act, the Racketeer Influenced and Corrupt Organizations Act and the Unfair Competition Law, as well as similar statutes and state laws in over 35 states and the District of Columbia.

The Firm is actively involved in the prosecution of numerous consumer protection cases nationwide, in both state and federal courts. The Firm and its attorneys have had a leadership role representing consumers in many consumer protection class action cases, including, for example: *In re Land Rover LR3 Tire Wear Products Liability Litig.*, ML09-2008 (C.D.Ca.)(defect in vehicle alignment); *Miller, et al. v. Basic Research, et al.*, 2:07-cv-00871 (D.Utah)(marketing and sale of weight loss supplement); *Doll v. Ford Motor Co.*, 8:10-cv-01505 (D.Md.)(defective torque converter); *Perko, et al. v. Ford Motor Co.*, 3:10-cv-00514 (N.D. Oh.)(defective sparkplug design); *Bruce, et al. v. Harley Davidson Motor Co., Inc.*, CV09-6588 (C.D.Ca.)(defective chassis design); *Schnabel v. Trilegiant Corp., et al.*, 3:10-cv-957 (D.Conn.)(deceptive marketing practices); *D'Andrea v. K. Hovnanian, et al.*, L-734-06 (Sup. Ct. NJ)(building practices); *Henderson, et al. v. Volvo Cars of N.A., LLC*, 2:09-cv-04146 (D.N.J.)(defective transmission); *Amin v. General Mills, Inc., et al.*, 2:10-cv-00305 (D.N.J.)(deceptive marketing practices); *Weiner v. The Dannon Co., Inc.*, CV-08-00415 (C.D.Ca.)(deceptive marketing practices); *Price v. Kawasaki Motors Corp., U.S.A.*, SACV10-01074 (motorcycle defect); *In re: LG Front Load Washing Machine Class Action Litig.*, 2:08-cv-00051 (D.N.J.)(defective washing machine); *Butler, et al. v. Sears, Roebuck & Co.*, 06 C 7023 (N.D.Ill.)(defective washing machines); *In re: Michelin North America, Inc., PAX System Marketing and Sales Practices Litigation*, 8:08-md-01911-RWT (D.Md.)(vehicle defect); *Rosenfeld v. Gateway, Inc.*, 2:08-cv-3381 (C.D.Ca.)(defective laptop); *In re Saturn L-Series Timing Cham Product Liability Litigation*, 8:07-cv-00928 (D.Neb.), *Annelli v. Ford Motor Co.* (Conn. Super., New London, J.D.)(secret warranty class action); *Cuellar and McVicker v. Ford Motor Co.*, (Milwaukee County Cir. Ct.)(secret warranty class action); *Shorewest Realtors, Inc. v. Journal Sentinel, Inc.* (Milwaukee County Cir. Ct., WI)(overstatement of circulation class action); *LaRaia v. Rexall Sundown* (Cir. Ct., Palm Beach Cty., FL)(marketing and sale of

**Page 5**



dietary supplements); *Hurkes Harris Design Associates, Inc. v. Fujitsu Computer Products of America, Inc.* (Sup. Ct., Santa Clara Cty., CA)(computer hard drives, $42.5 million common fund settlement); *Cress v. Independence Blue Cross* (E.D. PA)(health plan subscribers recover 99% of their losses); *Doh v. Sears, Roebuck & Co.* (Cir. Ct., Cook Cty., IL)(carpet cleaning service); *Stoddard v. Advanta National Bank* (Sup. Ct., New Castle Cty., DE)(credit card interest rates); *In re American Family Publishers Business Practices Litigation* (D. N.J.) (sweepstakes fraud); *Ferguson v. Columbia/HCA* (Cir. Ct., Washington Cty., TN)(hospital charges); *In re:Providian Financial Corp. Credit Card Terms Litigation* (E.D. PA)(credit card practices); *Chavers v. Fleet, (RI) N.A.* (Sup. Ct., R.I.)(credit card practices); *Perod v. McKenzie Check Advance* (E.D. PA) (payday loans); *Morris v. Odimo.com* (Cir. Ct., Broward Cty., FL)(grey market watch sales); *Fanelli v. Wal-Mart Stores, Inc.* (Sup. Ct., Gloucester Cty., N.J.)(grey market watch sales); *Vega v. B.J.'s Wholesale Club, Inc.*, (C.C.P. Phila., PA)(grey market watch sales); *Troilo v. Oriental Trading Company*, (Dist. Ct., Douglas Cty, NE)(catalog company charges). The Firm also recently represented the State of Connecticut in four separate lawsuits pending in the Superior Court of Connecticut against pharmaceutical companies arising under the Connecticut Unfair Trade Practices Act alleging the manipulation of the average wholesale price of certain prescription drugs.

The Firm also is actively involved in litigation concerning antitrust and unfair competition issues relating to, among other matters, vertical and horizontal price agreements, market allocations, concerted refusals to deal, monopolization, covenants not to compete, price-fixing and tying arrangements, as well as unfair and deceptive trade practice, false advertising and commercial disparagement. The Firm has served in leadership and other roles in the litigation of a number of plaintiffs' class action antitrust cases, most recently including *In re Urethane Antitrust Litigation*, 2:04-md-01616 (D. Kansas)(monopolistic practices); *In re Flat Glass Antitrust Litigation (II)*, MDL No. 1942, (W.D. of PA)(monopolistic practices); *In re Aftermarket Filters Antitrust Litigation*, 1:08-cv-04883 (N.D. Ill.) (monopolistic practices); *Fraternal Order of Police, et al. v. Unimed Pharmaceuticals, Inc., et al.*, 2:09-cv-1856 (D. N.J.)(co-lead counsel)(monopolistic practices); *In re Online DVD Rental Antitrust Litigation*, No. M 09-2029 (N.D. Ca.)(monopolistic practices); *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, No. 09 C 7666, MDL. No. 2109 (N.D. Ill)(monopolistic practices); *In re Air Cargo Shipping Antitrust Litigation*, MDL 1775 (E.D.N.Y.)(price fixing); *In re Blood Reagents Antitrust Litigation*, MDL 09-2081 (E.D. Pa.)(monopolistic practices); *In re Chocolate Confectionary Antitrust Litigation*, MDL 1935 (M.D. Pa.)(monopolistic practices); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litigation*, 2:09-md-02034 AB (E.D. Pa.)(monopolistic practices); *In re Time Warner Inc. Set Top Cable Television Box Antitrust Litigation*, MDL 1995 (S.D. N.Y.)(monopolistic practices); *Watts v. Fidelity National Title Insurance Co.*, et al., No. 1:08-cv-803 (N.D. Ohio)(monopolistic practices); *Universal Delaware Inc. et al. v. Ceridian Corp. and Comdata Corp.*, No. 07-1078 JKG (E.D. Pa.)(monopolistic practices); *In re: Static Random Access Memory (SRAM) Antitrust Litigation*, M:07-cv-01819 (N.D.Cal.)(price fixing); *In re Dynamic Random Access Memory Antitrust Litigation (*N.D.Cal.)(price fixing); *Chicon v. Intel Corporation* (D.Del.)(monopolistic practices); *Vaughn v. 3M Company* (Cir. Ct., Palm Beach Cty., FL)(monopolistic practices).

Page 6



Our attorneys, with extensive experience in antitrust law and economics, as well as knowledge of market realities, have represented businesses and individual consumers in antitrust cases in state and federal courts in the United States, as well as related criminal and regulatory proceedings. The Firm's attorneys have successfully prosecuted and defended antitrust cases, including price discrimination cases under the Robinson-Patman Act and price-fixing and tying cases under federal and state antitrust laws, to successful jury verdict.

In antitrust, competition, consumer protection and trade regulation cases, SFMS has been appointed lead counsel in over 75 cases in the United States, in recognition of its broad range of experience and the excellent results that it has obtained for its clients in previous engagements.

### *Arbitration, Mediation and Other ADR Proceedings*

SFMS considers the use of arbitration, mediation and other alternative dispute resolution ("ADR") devices to be an integral part of the practice of law and the advice that we provide to our clients. The Firm's arbitration and mediation practice, and the other ADR strategies that we employ, enable us to achieve results that promote our clients' goals, reduce the expense and delay associated with resolving disputes, and avoid the distractions that more protracted proceedings may impose upon clients.

SFMS lawyers have a broad range of ADR experience in the fields of domestic and international arbitration, direct negotiation, mediation and other customized ADR options, including dispute review boards, med-arbs, mini-trials, private judging and summary jury trials in the fields of antitrust, commercial transactions, construction, consumer and financial transactions, corporate and contract law, employment and labor disputes, intellectual property, insurance, and securities and corporate governance. In addition to regularly representing our clients in these ADR proceedings, SFMS attorneys have extensive experience acting as arbitrators, mediators, private judges and settlement counsel.

Members of the SFMS team have acted as advocates and/or neutrals in proceedings before the American Arbitration Association, the Federal Mediation and Conciliation Service, the Financial Industry Regulatory Authority f/k/a as the National Association of Securities Dealers and New York Stock Exchange, the Grain and Feed Trade Association in London, the International Centre for Dispute Resolution, the International Chamber of Commerce, Judicial Arbitration and Mediation Services, Inc., both domestically and internationally, and the London Court of International Arbitration, as well as in a number of quasi-public and private ADR proceedings.

### *Business Counseling and Corporate Transactions*

SFMS has extensive experience counseling its business clients in a variety of matters. The Firm's attorneys have experience in significant transactional work, as well as vast experience providing corporate and business counseling to our clients, including in the areas of business

**Page 7**



formations, capital markers, contract drafting, sales or purchases of businesses, mergers and consolidations, joint ventures, employee and independent contractor agreements, confidentiality agreements, public and private offerings, stock sale, transfer and other arrangements, severance packages, third party agreements and corporate governance matters. On the rare occasions when a corporate or business matter requires even greater expertise from a transactional, taxation or other perspective, we work with our clients to identify the best co-counsel with which to work on that particular matter and with whom we maintain relationships around the world, and then supervise the work of such counsel to ensure that the client's needs are being met in cost-effective and efficient manner.

SFMS acts as outside general counsel for a number of small- to mid-size businesses, as well as certain subsidiaries of overseas corporations. Since the Firm uses a multi-disciplinary, team-oriented approach to staffing all business counseling and corporate transactional work, SFMS is able to provide high quality, cost-effective representation for the clients that choose to so engage us. In fact, certain clients have apprised us that, based upon the efficient and business-minded manner in which we approach such matters, it often makes sense for them to engage SFMS, even though the Firm may, at times, bill at higher hourly rates than other law firms. Since SFMS approaches every engagement based upon the principles of value billing and seeks to reward productivity and outcomes, as opposed to time spent on an engagement, the Firm consistently is informed by its corporate clients that it provides higher quality and lower cost services than many of its competitors, both large and small, that work exclusively or predominantly in the area of business counseling and corporate transactions.

### *Commercial and Other Complex Litigation*

SFMS has extensive experience handling a wide variety of commercial litigation matters. The attorneys at SFMS have decades of experience representing large national and international corporations, as well as smaller businesses and other entities in such matters. The broad range of commercial litigation matters that SFMS lawyers have handled include contract disputes, breach of duty claims, abuse of trust cases, business torts, trade disputes, unfair competition claims and related issues, including risk assessment and litigation avoidance. We represent clients in diverse industry sectors, including large publicly traded and international companies, as well as smaller business enterprises in connection with their complex commercial litigation matters. In addition to handling such matters in federal and state courts in the United States, SFMS attorneys also have significant experience handling claims in international arbitration forums and with co-counsel in courts outside of the United States. In representing clients in commercial litigation matters, SFMS attorneys have recovered hundreds of millions of dollars, including recoveries from governments and state trading entities. SFMS attorneys regularly appear in federal and state courts throughout the United States, as well as bankruptcy and appellate courts. In fact, on the appellate front, as a result of our track record of winning many significant and groundbreaking appeals over the last decade, other practitioners regularly approach us and request that we assist them in pursuing or defending appeals in federal and state courts.

Page 8

**SFMS**
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
Attorneys at Law

The Firm handles commercial litigation pursuant to traditional hourly billing arrangements and, on an increasingly frequent basis, has been retained to handle litigation for corporate plaintiffs on a contingent fee basis. We have found that, while many corporate counsel tend to be reluctant to deviate from tried and true hourly billing procedures, in appropriate circumstances, a contingent fee structure ensures the proper incentives and often works to further the client's interests, while providing desirable incentives to litigate efficiently, maximize recoveries and minimize the length of pretrial proceedings.

### Employee Benefits and Fiduciary Compliance

SFMS handles a variety of employee benefits and fiduciary litigation, as well as compliance issues, for our clients -- most of which arise under the Internal Revenue Code and the Employee Retirement Income Security Act of 1974. SFMS attorneys have represented employee benefit plan fiduciaries, including plan trustees, as plaintiffs and defendants in a wide variety of employee benefits and fiduciary compliance matters. The Firm's attorneys also have experience working with independent fiduciaries in certain cases. The attorneys at SFMS also have represented clients in a number of cases involving Taft-Hartley fund delinquent contributions and similar matters. The Firm has handled a number of novel and ground-breaking ERISA cases, including issues regarding revenue-sharing practices, cash balance and cross-tested plans, common stock declines and stock options with regard to qualified retirement plans, including 401(k), 403(b), 457, profit sharing, money purchase pension, cash balance, annuity, and defined benefit plans.

Most of the employee benefits and fiduciary compliance litigation that SFMS handles involving employee benefits and fiduciary compliance occurs in federal district courts in the United States. In such litigation, SFMS has significant experience working with the U.S. Department of Labor, as well as the Department of Justice. SFMS attorneys also have experience representing the interest of our clients in bankruptcy court and related proceedings in connection with both employee benefits and fiduciary compliance matters.

### Institutional Investor Services

SFMS provides a variety of compliance, litigation, monitoring, regulatory and transactional services to institutional investors, including educational and endowment based funds, hedge funds, public and private pension funds and private equity firms. Among the other services that it provides to institutional clients, the Firm performs corporate governance and securities investment monitoring for virtually all of its institutional clients pursuant to which it advises clients when they should consider legal action to protect their rights as shareholders in a corporation. In connection with its SFMS Tracker[SM] service, SFMS offers the following portfolio services to institutional investor clients: (a) the development of guidelines and policy statements regarding securities and other shareholder litigation, as well as other corporate governance initiatives, to meet fiduciary obligations; (b) the monitoring of securities and related litigation that affects the client's investments; (c) the investigation and evaluation of potential and pending litigation to evaluate the appropriate role, if any, for the client; (d) the preparation

Page 9



of presentations for institutional clients regarding the status of potential and pending litigation and other corporate governance initiatives; (e) provision of updates regarding the settlement or other resolution of litigation, disputes and other initiatives; (f) assistance to clients in completing appropriate claim forms and other documentation to maximize recoveries; and (g) coordination of the holding of certain securities in custodial accounts with a financial institution pursuant to a specialized agreement that SFMS was instrumental in crafting to protect client interests in appropriate circumstances.

### Insurance Coverage and Practices

SFMS has significant experience in handling legal issues related to insurance coverage and practices.  SFMS attorneys have experience negotiating and litigating with many major U.S. insurance companies, as well as Lloyd's, the London Market and other international insurers. The Firm has achieved outstanding results for our clients across a wide variety of issues and forums. SFMS attorneys have handled insurance coverage matters related to business interruption, defamation, health insurance, privacy, advertising, personal injury claims, Directors' and Officers' liability, employment practices liability, environmental cleanup and 'toxic tort' liability, fidelity bonds and crime policies, financial insurance, intellectual property (copyright, trademark and patent infringement), product liability, professional errors and omissions (malpractice) liability, property and valuable articles coverage, 'self-insurance' and workers' compensation insurance. In such matters, SFMS attorneys have experience with all principal coverage issues that arise under standard liability and first-party property policies, as well as many specialty coverages, have addressed many of the procedural aspects of insurance coverage litigation, including choice of law, forum non conveniens, party joinder and case management issues, duty-to-defend disputes, and independent counsel and fee-rate limitation issues.  The Firm also has extensive experience in handling claims regarding insurance marketing, settlement and payment practices, as well as insurance practices regarding the calculation of benefits.  SFMS attorneys have played a substantial role in litigating major insurance practice-related claims with respect to automobile insurance loss adjustment practices, burial insurance, health insurance and continuation of benefits issues, title insurance charges and vanishing premium insurance policies.

### Intellectual Property

SFMS has significant experience providing an array of legal services in the areas of patent, copyright, trademark, trade secret, outsourcing, software, technology, restrictive covenants and franchise law.  These services include obtaining protection, registrations, amendments and renewals with respect to patents, copyrights, trade secrets, service marks and trademarks.  SFMS also counsels its clients on licensing, marketing, distribution and other commercial transactions regarding products, services and technologies protectable under international, federal, state or local intellectual property laws.  SFMS attorneys also have litigated and provided advice about disputes involving the protection and enforcement of rights in patents, trademarks, copyrights, confidential information and trade secrets, technology, covenants not to compete, and other intellectual property.  SFMS has significant experience in prosecuting and defending copyright,

**Page 10**

**SFMS**
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
Attorneys at Law

trademark and patent infringement cases, unfair competition actions, Internet and technology disputes (including those involving software and computer technology), franchise disputes, false advertising claims, litigation concerning trade secrets and restrictive covenants, and other claims relating to intellectual property.  SFMS attorneys also are well-versed not only on the substance of intellectual property law, but also on federal and state court procedural issues, including obtaining and defending against temporary restraining orders and preliminary injunctions that often are sought in intellectual property actions.  Finally, SFMS attorneys are proficient in resolving intellectual property disputes through alternative dispute resolution mechanisms, such as arbitration and mediation.

### *International Business and Trade*

SFMS represents companies and other business entities based in the United States and overseas in a variety of international business and trade matters.  The Firm's attorneys have assisted our foreign and United States clients with organizing foreign subsidiaries, joint ventures, mergers, acquisitions and recapitalizations, manufacturing agreements, sales, leasing and supply agreements, international distribution of goods and services, cross-border technology licensing, licensing agreements and registration of U.S. and foreign trademarks, copyrights and patents, privacy and data protection, as well as Foreign Corrupt Practices Act compliance.  SFMS attorneys also assist our clients in addressing immigration matters, international estate planning, and real estate acquisition issues to the extent that those needs arise.  In addition, the Firm regularly represents a number of clients based overseas in arbitration, mediation, other ADR proceedings and litigation matters.

SFMS's International Business and Trade practice works with local counsel in many countries to help clients understand and manage risks posed by different legal systems.  As an active member of IAG International (Integrated Advisory Group), http://www.iaginternational.org, a consortium of independent law, fiduciary trust and accounting firms in Asia, Canada, Central America, Europe, the Middle East, South America and the United States, SFMS is able to effectively meet the needs of its clients on a global basis.  As part of its growing international practice, SFMS actively encourages its more junior lawyers to actively participate in AIJA (the International Association of Young Lawyers), http: www.aija.org, since we understand that, by building and maintaining professional relationships throughout the globe, SFMS is able to provide a service level in international matters that is infrequently matched by other boutique firms.

We have attorneys fluent or proficient in Cantonese Chinese, Mandarin Chinese, Japanese, French, Italian and Spanish, and many have spent substantial time working outside the United States.  We are experienced working internationally and counsel our clients on the cultural and legal norms of doing business in various foreign jurisdictions. We also assist our clients to achieve their goals with our team approach and a thorough understanding of their international business needs.  We have experience in many areas throughout the world, including Argentina, Australia, Bermuda, Brazil, British Virgin Islands, Canada, Chile, China, Denmark, Dominican Republic, Dubai, France, Germany, Hong Kong, India, Israel, Italy, Japan, Korea, Kuwait,

Page 11



Mexico, the Netherlands, Russia, Singapore, Spain, Switzerland, Taiwan, Turkey, the United Kingdom and Yemen.

### Labor and Employment

SFMS has a significant and eclectic practice in the field of labor and employment matters. The Firm has represented individuals, companies, governmental entities and other employers, as well as labor organizations, in a wide range of employment and labor litigation, as well as other matters. SFMS attorneys have extensive experience counseling and representing their clients in litigation, as well as other disputes and challenges, regarding ERISA and employment benefits, federal and state wage and hour laws, questions regarding H1N1 (swine) flu workforce resources, immigration, international employment, labor-management relations, noncompetition agreements and trade secrets, occupational safety and health, equal employment and affirmative action matters, workplace safety, changes, reductions-in-force and training.

The Firm's attorneys have negotiated collective bargaining agreements, appeared before the National Labor Relations Board, the Equal Employment Opportunity Commission and other fair employment practice agencies, as well as before various mediation and arbitration panels that specialize in employment and labor issues. SFMS has vast experience working on a diverse array of employment and labor cases, including cases involving age, defamation, gender, gender dysphoria, race and sexual orientation discrimination, ERISA and benefits matters, breach of contract claims, and wage/hour claims. SFMS and its attorneys also have served as lead counsel in a number of wage/hour class actions, as well as discrimination and other employment class actions. In those cases in which the Firm has represented plaintiffs, it has recovered millions of dollars for its clients. Finally, the Firm serves as national labor counsel for several select employers and also is pleased to count a number of local and international labor organizations among its clients.

### Private Client Services

SFMS also provides private client services to existing and select clients with respect to domestic and international estate planning, charitable planned giving, trust and estate administration, family law matters, executive compensation, real estate and federal and state tax issues. In addition, upon occasion, the Firm will represent existing clients in personal litigation. In these areas, SFMS has a broad range of expertise, having assisted clients in the United States and overseas with significant estate planning issues, having negotiated executive compensation packages, as well as severance packages, for senior executives at U.S. and international concerns, and having assisted existing clients in custody, divorce, guardianship and separation matters arising from family crises or disputes. The Firm also has experience assisting our clients in negotiating and closing real estate transactions, both in the commercial and non-commercial fields. SFMS regularly works with accountants and auditors to address federal, state and local tax issues for its clients and has significant experience handling offers in compromise and defending tax proceedings initiated by government entities, including the Internal Revenue Service and the Department of Justice. SFMS believes strongly that, when the need arises, its

**Page 12**



attorneys and other professionals must and should be prepared to assist our clients in these important private matters.

*Qui Tam, False Claims and Whistleblower Proceedings*

SFMS has broad experience in handling legal issues related to false claims, whistleblower and qui tam cases under the federal False Claims Act and similar state laws, as well as assisting clients in internal investigations. The federal False Claims Act has proven to be an effective, powerful and, sometimes, frightening tool in fighting Medicare and Medicaid fraud, defense contractor fraud and other types of fraud perpetrated against federal and state governments. The 'qui tam' provisions, which allow whistleblowers to file False Claims Act lawsuits against companies and individuals that allegedly defraud the government with the opportunity to obtain a "bounty," have been a key ingredient in the False Claims Act's success, as the federal government has recovered more than $15 billion as a result of qui tam lawsuits since 1986, with whistleblowers' rewards totaling more than $2.5 billion. SFMS attorneys have represented clients in a number of significant cases under the False Claims Act. In addition, the Firm has significant experience representing clients in qui tam cases brought under similar state laws against companies and individuals accused of defrauding state and local government agencies. The Firm currently is representing clients in a number of qui tam actions under the False Claims Act and state law, many of which, including several large prosecutions, are 'under seal' and, therefore, cannot be publicly disclosed. SFMS similarly has significant experience handling qui tam, false claims and whistleblower cases under the Dodd-Frank Act for alleged securities fraud and related misconduct, as well as the Foreign Corrupt Practices Act, related to alleged bribery of foreign officials and others to secure business preferences overseas. Finally, the Firm has represented clients performing internal investigations arising from whistleblower complaints and has developed effective, methodological tools to address such matters.

*Representative and Collective Litigation*

SFMS has a broad range of experience in representing clients in class action and other representative/collective litigation. The attorneys at SFMS have been appointed lead counsel in scores of class action and similar cases, and the courts that have appointed SFMS in such litigation have consistently recognized the excellent representation provided by SFMS in such engagements. SFMS attorneys have extensive experience representing the interests of their clients in antitrust, consumer protection, employment discrimination/civil rights, employee benefits, ERISA, fiduciary compliance, housing practices, insurance coverage/practices, securities fraud/breach of fiduciary duty, and wage and hour class action litigation.

In such litigation, SFMS has represented a variety of private and public plaintiffs, including institutional and other significant investors, private companies, officers and directors, other fiduciaries and labor organizations. In such litigation, SFMS has been successful in recovering hundreds of millions of dollars for our clients and, in addition, has procured tens of millions of dollars in charitable cy pres donations to worthy organizations as a result of the outcomes that we have achieved. Unlike certain lawyers who exclusively handle class action litigation, we

**Page 13**

**SFMS**
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
Attorneys at Law

know how to prosecute cases to trial and have extensive experience trying cases. In federal and state courts, as well as arbitral forums, SFMS attorneys have tried such cases for both plaintiffs and defendants to successful jury verdict, judgment and award.

*Securities Regulation and Corporate Governance*

SFMS has significant experience in the fields of securities regulation and corporate governance. In such matters, SFMS has represented a variety of private and public entities, including institutional and other investors, investment managers, hedge funds, public and private pension funds, as well as private companies, officers and directors, and labor organizations. In addition to counseling our clients on matters related to securities regulation and corporate governance, SFMS attorneys have litigated complex securities and directors' and officers' liability cases in federal and state courts across the country. Our securities litigation practice is one of the largest and strongest practice areas of the Firm. We have significant trial and appellate experience in the following areas: shareholder class actions; significant shareholder opt-out cases; derivative/director and officer cases and investigations; corporate control contests; regulatory enforcement and criminal prosecution matters. Our attorneys have worked with and against the SEC, Department of Justice and various self-regulatory organizations, including FINRA, in representing our clients. SFMS attorneys also have experience with a variety of securities registration and regulation issues under federal and state law and have worked with clients with respect to Blue Sky and other compliance issues. Finally, the Firm has served as lead counsel in a number of securities class action and other corporate governance matters and, in such representations, SFMS has recovered tens of millions of dollars for our clients, while achieving important corporate governance reforms.

**Page 14**



### *Representative Clients*

At SFMS, we place our clients' interests first.  We strive to provide our clients with thoughtful, comprehensive and high quality legal services at all times.  Our diverse client base includes:

Start-up and other smaller companies

Multi-national corporations

Biotechnology and life science concerns

Construction companies

Educational institutions

Healthcare and manufacturing concerns

Hospitality and leisure businesses

Individuals, including significant shareholders, highly compensated employees, consumers, small business owners and professionals

Labor organizations, including local and international labor unions

Private pension funds

Public pension funds

Multi-employer and Taft-Hartley pension funds

Large and mid-size financial institutions

Hedge funds and money managers

International and other significant investors

State and local governmental entities

Technology companies and entrepreneurs

**Page 15**



*Consistent Achievements: Accolades From Clients and Courts Alike*

"[SFMS] took the case, acted promptly in crafting a strategy and then was innovative in creating a fee structure based upon shared risk that made it possible for us to proceed with the matter. Our prior counsel who reviewed the matter did none of these things. [SFMS] then proceeded to obtain a result that exceeded our expectations. That is why [SFMS] is our new go to firm in the United States." Chief Financial Officer, Multinational Corporation based in Europe

"[SFMS] helped us achieve a remarkable result in high stakes litigation against one of the biggest corporations in the world. I recommend them without qualification." President, Architectural and Design Firm based in California

"When I decided that I would be opening a new business, my first meeting was with my lawyer at [SFMS]. Despite very big challenges from a regulatory perspective, the firm handled the matter seamlessly and in a cost effective manner. I have worked with attorneys at [SFMS] for over ten years in the context of litigation, regulatory proceedings and transactions and would never consider using another law firm." President and Owner, For Profit Educational Institution based in Connecticut

"I have referred SFMS a number of transactional and litigation matters over the years, and they never have disappointed me. Efficient, cost-effective and creative. That is how I would describe the firm." Accountant and CFO of Multinational Corporation based in Florida

"I only refer my clients with legal needs to the lawyers at SFMS. In addition to having represented me in a variety of cases, the firm always has performed at a very high level for my clients in an efficient and responsive manner. The fact that my clients receive personal attention and that [SFMS] is able to handle work across the United States and throughout the world is a significant advantage." Accountant for U.S. Companies and Foreign Subsidiaries based in New Jersey

"The lawyers at [SFMS] are truly amazing. They take a multi-disciplinary approach that provides great efficiency and insight to legal projects. In addition to providing services for my firm, they also have provided me with great legal services on a personal level upon occasion." Managing Partner, Private Equity Firm based in New York

"I first was represented by the lawyers at [SFMS] in a litigation matter and since have used them to negotiate employment contracts, joint venture agreements and provide general legal advice. Their work has always been top notch and I always have enjoyed working with them." President of Technology Consulting Company based in Pennsylvania

**Page 16**



"I was skeptical of lawyers until I had the pleasure of working with the team at [SFMS]. They were hard working, honest and truly committed to helping us achieve a great result. I now call on the firm anytime that I have a problem, even sometimes when it has nothing to do with the law." President and Owner, Telecommunications Company based in Wisconsin

"The lawyers at [SFMS] have grown from being trusted advisors to true friends. Our business would not have survived and achieved the success it has over the last decade without the hard work and dedication of the firm, including both the attorneys and staff. When they take on an assignment, whether it's negotiating a contract or litigating a dispute, you know you have a partner in your corner who will stand with you through thick and thin." Vice President and Owner, Construction Company based in Illinois

"It was my distinct honor and privilege to be represented by the lawyers at SFMS. I have never seen lawyers work with such diligence and care in presenting a case at trial." Chief Executive Officer, Restaurant Group based in Wisconsin

"This is the best settlement of a class action that I have seen in my years on the bench. You [SFMS] should be proud of the work that you have done in this case." The Honorable Jack Komar, Superior Court of California

In approving the resolution of a case involving the Comprehensive Omnibus Reconciliation Act of 1985 ("COBRA") involving health insurance gap coverage, SFMS was commended for handling a "tremendously important lawsuit" and for the "outstanding job" done. The Honorable Daniel T. K. Hurley of the United States District Court for the Southern District of Florida

"You [SFMS] have achieved a very significant result in this case. Counsel on both sides are to be complimented on their professionalism and the fine work that they have done in this case." The Honorable Alfred Covello, United States District Court for the District of Connecticut

Page 17

*Pro Bono, Community Service and Charitable Work*



SFMS believes that our attorneys should provide *pro bono* and public interest legal services, as a matter of professional responsibility and in recognition of both the overwhelming need for, and positive outcomes arising from, the provision of such services. SFMS attorneys regularly accept unpopular and challenging cases, participating in *pro bono* activities that range from political asylum and death penalty litigation to civil rights, housing, constitutional and mortgage foreclosure class actions to individual civil and criminal matters for low income, disabled and other people who are disadvantaged and in need. SFMS also has represented certain non-profit organizations in *pro bono* assignments.

SFMS has contributed thousands of hours of professional time to *pro bono* matters. We believe that our work benefits the clients we serve, the public at large, and our attorneys who develop additional skills and enjoy the great professional fulfillment derived from performing such public service. The Firm actively encourages partners and associates to accept *pro bono* legal assignments and to treat such assignments as matters of the highest priority. In addition to being committed to *pro bono* work, SFMS attorneys and staff are highly committed to community services. SFMS representatives regularly and actively work on behalf of a number of community organizations, including the Special Olympics, and serve on boards and commissions, including in elected roles, to support the communities in which we work and live. SFMS also is committed to charitable work and regularly provides financial support to a number of community and charitable organizations, including YMCA camps and organizations supporting the underprivileged, arts, education and culture. In addition, the Firm is actively engaged in working to promote the donation of cy pres funds from representative proceedings and other litigation. As a direct result of the efforts of SFMS attorneys in such matters, more than $100 million has been donated to charities, public schools, colleges and other educational institutions, and non-profit institutions promoting the social justice system and other good works. The Firm also actively supports the credit internship program of the Cornell University School of Industrial and Labor Relations. At any given time, SFMS typically employs one or more full-time interns from the Cornell ILR School to provide these students with practical experience in the workplace related to their chosen field of study. Finally, the Firm actively encourages its attorneys to contribute to the profession through professional writings, service on American Bar Association and state bar committees and support for the bar organizations that assist indigent and other clients obtain access to the justice system.

If you have a question about the Firm's *pro bono*, community service or charitable work or would like us to consider a specific *pro bono* assignment or a community service/charitable work or donation request, please send us an email or other correspondence regarding the same at probono@sfmslaw.com. If you would like to make arrangements for a cy pres donation with the assistance of SFMS or would like to be considered for a cy pres award, please send us an email or other correspondence regarding the same at cypres@sfmslaw.com. The appropriate SFMS representative will respond to your inquiry as promptly as possible.

Page 18



### *The Members of our Firm*

As described above, the members of our Firm are an accomplished and diverse group of individuals.  On the pages that follow, we have provided select individual biographical pages for the members of the SFMS team that were most significantly devoted to this engagement.

Attorneys Admitted To Practice Law Before The State And Federal Appellate And Trial Courts Of Arizona, California, Connecticut, District Of Columbia, Florida, Illinois, New Jersey, New York, Oregon, Pennsylvania and Wisconsin, as well as the Federal Circuit Court of Appeals and the United States Supreme Court

Toll-Free: 866/540-5505 - 877/891-9880

www.sfmslaw.com

**Scott R. Shepherd**
**Pennsylvania Office**
**Telephone: 610-891-9800**
**Facsimile:  866-300-7367**
**Florida Office**
**Telephone: 954-515-0123**
**Facsimile:  866-300-7367**
**Email: sshepherd@sfmslaw.com**

Scott R. Shepherd founded what is now known as SFMS in 2000. He is admitted to practice law in the States of Florida and Illinois, as well as in the Commonwealth of Pennsylvania and the United States District Courts for the Southern and Middle Districts of Florida, the Northern District of Illinois, the Eastern District of Pennsylvania, the United States Courts of Appeal for the Third, Fourth, Seventh and Eleventh Circuits, and the United States Supreme Court. In addition to these courts and jurisdictions, Scott has worked on cases with local and co-counsel throughout the country and worldwide.

Scott's practice is concentrated on representing clients in whistleblower, securities, consumer and False Claims Act cases. Scott also is experienced in handling a variety of antitrust, employment and other complex commercial matters. Finally, Scott has substantial experience representing clients in employee benefit, health and life insurance cases and other matters. In addition to his regular private practice, Scott also has handled a number of significant pro bono matters. He has represented clients in a number of political rights cases, including political asylum and voting rights actions. He has also handled numerous criminal appeals, including death penalty cases.

Scott earned his undergraduate degree summa cum laude from Westminster College in New Wilmington, Pennsylvania and his law degree from the University of Chicago Law School. Scott began his law practice in 1985 in Chicago, representing defendants in class action, securities and products liability litigation with one of the largest law firms in the country. Returning to Pennsylvania in 1989, Scott worked with a large Philadelphia corporate and defense law firm. He subsequently became a partner at Greenfield & Rifkin LLP, a well-known firm that handled significant class actions, before starting a predecessor firm in 1998.

Scott is a member of the American Association for Justice, the National Association of Securities and Consumer Attorneys, the American Health Lawyers Association, and the Palm Beach County and Delaware County Bar Associations. Scott is active in community, as well as political and charitable activities, and divides his time between the Firm's Pennsylvania and Florida offices.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**Natalie Finkelman Bennett**
**Pennsylvania Office**
**Telephone: 610-891-9800**
**Facsimile: 866-300-7367**
**Email: nfinkelman@sfmslaw.com**

Natalie Finkelman Bennett joined SFMS in 2000. She is admitted to practice law in the State of New Jersey, as well as the Commonwealth of Pennsylvania and numerous federal courts, including the United States District Courts for the United States District Courts for the District of New Jersey and Eastern District of Pennsylvania, and in the United States Courts of Appeal for the Third and Ninth Circuit. In addition to these courts and jurisdictions, Natalie has worked on cases with local and co-counsel across the country and worldwide.

Natalie concentrates her practice on antitrust, consumer and insurance litigation, as well as complex commercial matters. She also has significant experiencing representing clients in a wide variety of corporate governance, securities, employment benefit, wage/hour and unfair trade practices cases. In addition, Natalie represents clients in "whistleblower" cases brought under the United States False Claims Act. Finally, Natalie has significant experience representing physicians and physician groups in a wide variety of matters.

Natalie earned her undergraduate degree magna cum laude from the Pennsylvania State University in 1986 and was elected a member of Phi Beta Kappa Honor Society. Natalie earned her law degree magna cum laude from the Temple University School of Law in 1989. She served as the Managing Editor of the Temple Law Review. After clerking for former Chief Judge Farnan of the United States District Court for the District of Delaware, Natalie began working in private practice at Schnader Harrison Segal & Lewis in 1990. At Schnader, she practiced in many areas of complex commercial litigation, including product liability, insurance coverage and defense, antitrust, contract and commercial lease matters. In 1996, Natalie became an associate at the law firm of Mager Liebenberg & White, a well-known firm that specialized in class actions, where her practice was concentrated in antitrust and consumer protection class action litigation. In 1998, Natalie became a Partner in the law firm of Liebenberg & White.

Natalie is a member of the American Bar Association, Pennsylvania Bar Association, Philadelphia Bar Association and the National Association of Consumer Advocates. She also is a former member of the Pennsylvania Bar Association Commission on Women in the Profession and the Temple American Inn of Court. She resides in Wallingford, Pennsylvania with her family and is active in community affairs and charitable activities.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**James E. Miller**
**Connecticut Office**
**Telephone: 860-526-1100**
**Facsimile:  866-300-7367**
**Email: jmiller@sfmslaw.com**

James E. Miller joined SFMS in 2002.  He is admitted to practice law in the States of California, Connecticut and New Jersey, as well as the Commonwealth of Pennsylvania and numerous federal courts, including the United States District Courts for the Southern District of California, District of Connecticut, Eastern District of Pennsylvania, District of New Jersey, Eastern District of Wisconsin, the United States Court of Appeals for the Third Circuit and Ninth Circuit and the United States Supreme Court. In addition to these courts and jurisdictions, Jim has worked on cases with local and co-counsel nationwide and internationally.

Jim concentrates his practice on whistleblower and securities and corporate governance litigation, as well as significant employment, ERISA, employment benefits, defamation and wage/hour cases. He also has significant experience representing clients in a wide variety of consumer and antitrust class actions and other complex commercial litigation, as well as unsuitable trading, churning and trade disputes in FINRA arbitrations/mediations and before international tribunals.  Finally, having begun his career working for the labor movement after majoring in Industrial and Labor Relations at Cornell, Jim serves as labor counsel for certain select clients of the Firm.

Jim earned his undergraduate degree from Cornell University (B.S. 1988) and his law degree from the University of Pennsylvania School of Law (J.D. 1991).  While at Penn Law School, he was awarded the Edwin R. Keedy Cup and was Editor of the Comparative Labor Law Journal. Following graduation, he served as Law Clerk to the Honorable Daniel H. Huyett, 3rd, United States District Judge for the Eastern District of Pennsylvania.

Jim began his law practice in 1992 in Philadelphia, Pennsylvania, where his practice concentrated on labor and employment litigation, as well as other complex commercial litigation.  In 2000, he relocated with his family to Connecticut where he served in a lead role in several consumer and securities class actions, while also representing both institutional and individual investors in major unsuitable trading and churning cases. In 2002, Jim joined the Firm to open its office in Connecticut.  Jim is a member of the National Association of Securities and Consumer Attorneys, National Employment Lawyers Association, the American Bar Association, the Connecticut Bar Association, the New Jersey Bar Association and the Pennsylvania Bar Association. He resides with his family in Chester, Connecticut, where he holds elected office, and is active in community, political and charitable activities.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**James C. Shah**
**Pennsylvania Office**
**Telephone: 610-891-9800**
**Facsimile:  866-300-7367**
**Email: jshah@sfmslaw.com**

James C. Shah joined SFMS in 2000. He is admitted to practice law in the States of California, New Jersey, New York, Wisconsin, as well as the Commonwealth of Pennsylvania and numerous federal courts, including the United States District Courts for the Southern District of California, Eastern District of Pennsylvania, District of New Jersey, Eastern District of Wisconsin and the United States Court of Appeals for the Ninth Circuit. In addition to these courts and jurisdictions, Jim has worked on cases with local and co-counsel nationwide and internationally.

Jim concentrates his practice on antitrust, consumer and insurance litigation, as well as complex commercial and employment matters. He also has significant experiencing representing clients in a wide variety of corporate governance, securities, construction defect, employment and wage/hour cases. Finally, Jim has represented clients in a number of FINRA arbitrations and other proceedings, as well as in a variety of United States and international arbitral and other alternative dispute resolution forums.

Jim earned his undergraduate degree in Political Science from the University of Oregon and his law degree from Temple University School of Law. Jim was a member of Temple's nationally acclaimed Trial Team and also participated on Moot Court. Before joining the Firm, Jim practiced as a litigator in Philadelphia with Pelino & Lentz, P.C., where he concentrated his practice on employment and labor law, securities disputes and general commercial litigation. In 2000, Jim joined forces with Scott Shepherd at which time the Firm was created and, since that time, has been involved in all aspects of the Firm's practice.

Jim is a member of the New Jersey and Pennsylvania Bar Associations, as well as the American Association for Justice, the National Association of Securities and Consumer Attorneys. He resides with his family in Collingswood, New Jersey and is active in community, political and charitable activities.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**Nathan C. Zipperian**
**Florida Office**
**Telephone:954-515-0123**
**Facsimile:  866-300-7367**
**Email: nzipperian@sfmslaw.com**

Nathan C. Zipperian joined SFMS in 2005. He is admitted to practice law in the States of Arizona, Florida, New Jersey and Oregon, as well as in the Commonwealth of Pennsylvania and numerous federal courts, including the United States District Courts for the Southern and Middle Districts of Florida, the District of Arizona and the United States Court of Appeal for the Second Circuit. In addition to these courts and jurisdictions, Nathan has worked on cases with local and co-counsel throughout the country and worldwide.

Nathan concentrates his practice on antitrust, consumer and insurance litigation, as well as complex commercial and employment matters. He also has significant experiencing representing clients in a wide variety of corporate governance, securities, construction defect, employment and wage/hour cases. Finally, Nathan has represented clients in a variety of personal injury and medical malpractice litigation.

Nathan earned his undergraduate degree in Political Science from the University of Oregon and his law degree from the Temple University School of Law. While at Temple, Nathan was an Editor of the Environmental Law and Technology Journal. Before joining Shepherd, Finkelman, Miller & Shah, LLP, Nathan was a litigator in Oregon at Bailey Pinney and Associates, where his practice focused on employee rights, and in Arizona with Martin Hart & Fullerton, where he litigated a wide variety of cases including personal injury, medical malpractice and product liability cases.

Nathan is a member of the American Bar Association, Oregon Bar Association, and Arizona Bar Association. He resides with his family in Weston, Florida and is active in the South Florida community.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**Laurie Rubinow**
**Connecticut Office**
**Telephone: 860-526-1100**
**Facsimile:  866-300-7367**
**Email: lrubinow@sfmslaw.com**

Laurie Rubinow joined SFMS in 2005. She is admitted to practice law in the State of
Connecticut, as well as the Commonwealth of Pennsylvania and numerous federal courts,
including the United States District Courts for District of Connecticut and the United States
Court of Appeals for the First Circuit. In addition to these courts and jurisdictions, Laurie has
worked on cases with local and co-counsel nationwide and internationally.

Laurie focuses her practice on representing the Firm's clients in whistleblower cases, as well as
antitrust, consumer, complex commercial and insurance litigation. Laurie also has significant
experience handling employment, intellectual property and real estate matters. Finally, Laurie is
active in the Firm's pro bono work and has represented a number of pro bono clients in federal
and state matters.

Laurie earned her undergraduate degree from the University of California at Berkeley, where she
was Phi Beta Kappa, graduated summa cum laude, and earned her law degree from Temple
University School of Law. She also completed certain of her undergraduate studies at McGill
University and, while at Temple Law School, she served as a legal intern with the United States
Attorney's Office, the Public Defender's Office, the Pennsylvania Attorney General's Office and
for United States Magistrate Judge Powers. In addition, Laurie has received a Certificate in
Negotiation, Mediation and Conflict Resolution from the Seton Hall University School of Law.
Laurie has a diverse legal background, having worked in private practice as an Associate at a law
firm and as a solo practitioner for approximately five years before beginning a career as an
in-house attorney at a nationally recognized insurance company, where she worked for
approximately eleven years, rising to the position of National Manager. In that position, she was
responsible for the management of five regional field offices responsible for defending complex
insurance related litigation, including toxic tort and environmental actions. She also has served
as an Adjunct Professor in the Department of Sociology at Central Connecticut State University.
Laurie joined the Firm's Connecticut office in 2005, where she represents clients in a variety of
antitrust, consumer, securities and insurance litigation. Laurie also was actively involved in the
Firm's representation of the State of Connecticut in complex litigation against six different
pharmaceutical manufacturers.

Laurie is a member of the Chester Bar Association and the Connecticut Bar Association. She
resides in Chester, Connecticut with her family and is active in community affairs. Laurie also
holds an elected office as a member of the local school board.

To learn more about SFMS and for biographies of all of its professionals, please visit our
website at www.sfmslaw.com.

**Rose F. Luzon**
**California Office**
**Telephone: 619-235-2416**
**Facsimile: 866-300-7367**
**Email: rluzon@sfmslaw.com**

Rose F. Luzon joined SFMS's San Diego office in January 2010.  She is admitted to practice law in the State of California, as well as numerous federal courts, including the United States District Courts for the Northern, Central, Eastern, and Southern District of California and the United States Court of Appeals for the Ninth Circuit.  In addition to these courts and jurisdictions, Rose has worked on cases with local counsel and co-counsel throughout the country.

Rose's practice is concentrated on representing clients in whistleblower, securities and consumer fraud cases. In addition, Rose has experience litigating complex matters involving pharmaceutical, medical device, and toxic tort claims.

Rose earned her undergraduate degree in Sociology from the University of California at Berkeley (B.A. 1997) and her law degree from the University of California Hastings College of the Law (J.D. 2002).  Prior to joining SFMS, Rose was an associate at Reed Smith LLP and Filice Brown Eassa & McLeod LLP, where she gained significant trial, deposition, motion, and case management experience, and worked closely with clients, partners, and experts to evaluate cases, develop defense theories, and position cases for resolution. In addition, she successfully led and managed pro bono matters involving political asylum and HIV/AIDs clients, and was actively involved in diversity, recruitment, and community outreach efforts.

Rose is a member of the American Bar Association, California Bar Association, Pan Asian Lawyers of San Diego, and National Asian Pacific American Bar Association.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**Scott K. Johnson**
**Pennsylvania Office**
**Telephone: 610-891-9800**
**Facsimile:  866-300-7367**
**Email: sjohnson@sfmslaw.com**

Scott joined SFMS in 2010.  He is admitted to practice law in California and Pennsylvania, as well as numerous federal courts in the United States.

Scott has extensive experience in the field of complex civil litigation. His litigation practice focuses on securities, consumer fraud, antitrust and employment class actions.  He also has managed mass tort litigation consisting of pharmaceutical product liability matters before Pennsylvania and federal courts.  Scott has established a successful record in state and federal motion practice, winning many disputes concerning discovery and substantive motions, including motions to dismiss, summary judgment, and class certification.

Scott also has a substantial practice focusing on trusts and estates, wills and probate, revocable living trusts, irrevocable trusts, gift and estate tax planning, limited liability companies, family limited partnerships, and asset protection planning. He works closely with financial professionals, including investment advisers, insurance planners, trust officers and accountants, servicing the estate planning needs of clients.  Scott works in providing these private client services to find innovative solutions to reduce estate and gift tax liability, while taking into consideration the clients' personal wishes, family needs and philanthropic goals.

Scott is a member of the American Bar Association.  Scott lives with his family in Pennsylvania and engages in significant charitable work on behalf of disabled children and their families.  He also is active in local and statewide politics.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**Karen M. Leser-Grenon**
**Connecticut Office**
**Telephone: 860-526-1100**
**Facsimile: 866-300-7367**
**Email: kleser@sfmslaw.com**

Karen M. Leser-Grenon joined SFMS' Connecticut office in 2005. She is admitted to practice law in the States of Connecticut and California, as well as numerous federal courts, including the United States District Court for the District of Connecticut. In addition to state and federal courts, Karen is registered to practice before the United States Patent and Trademark Office.

Karen's practice is concentrated on representing clients in whistleblower, securities, consumer and intellectual property cases. Karen is also active in the Firm's pro-bono work and has assisted a number of pro bono clients in civil litigation matters through Statewide Legal Services of Connecticut, Inc.

Karen earned her undergraduate degree in Civil Engineering from the University of Maryland (B.S. 1997) and her law degree from Quinnipiac University (J.D. 2001). Prior to joining SFMS, Karen practiced law in Connecticut and California, where she concentrated her practice on securities, antitrust, consumer class action and intellectual property litigation. In 2007, Karen moved to California to open the Firm's new San Diego office, where she continued to represent clients in complex commercial and class action litigation. Karen returned to Connecticut with her family in 2010, where she continues to represent plaintiffs in securities, consumer fraud and antitrust litigation.

Karen is a member of the Connecticut Bar Association, the California Bar Association, and the American Intellectual Property Law Association.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**Ronald S. Kravitz**
**California Office - San Francisco**
**Telephone: 415-429-5272**
**Facsimile: 866-300-7367**
**Email: rkravitz@sfmslaw.com**

Ronald S. Kravitz joined SFMS in 2014. He is admitted to practice law in the States of California and Texas and the Commonwealth of Pennsylvania and numerous federal courts, including the United States District Courts for all Districts of California, the Middle District of Florida, the Northern District of Illinois, the Eastern District of Michigan, the Northern District of Ohio, Eastern District of Pennsylvania, the Northern and Southern Districts of Texas, the United States Court of Appeals for the Fourth Circuit, Fifth Circuit, Ninth Circuit and Eleventh Circuit and the United States Supreme Court. In addition to these courts and jurisdictions, Ron has worked on cases with local and co-counsel nationwide and internationally. Ron began his legal career as an Attorney Advisor for the U.S. Department of Justice.

With more than 25 years of experience as legal counsel in complex business litigation matters, his practice has been focused primarily on ERISA, employment, intellectual property, and securities-related matters since 1992. He has represented numerous fiduciaries, third-party plan administrators, broker-dealers, and registered representatives in connection with plan administration and investment matters. Ron has served as lead or co-lead class counsel in numerous ERISA class actions throughout the country.

Ron is a past Chairman of the Integrated Advisory Group (IAG), current co-chair of IAG's Litigation Specialist Group, a regional board member of the Anti-Defamation League and the co-chair of the ABA Employee Benefits Committee Fiduciary sub-committee. In addition, Ron is a Lifetime Fellow of the American Bar Foundation and is active in the University of San Francisco Inn of Court.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**Kolin C. Tang**
**California Office - San Diego**
**Telephone: 619-235-2416**
**Facsimile: 866-300-7367**
**Email: ktang@sfmslaw.com**

Kolin C. Tang joined SFMS is 2009.  He is admitted to practice law in the States of California and New York.

At SFMS, Kolin concentrates his work on securities and commercial litigation throughout the United States.  Kolin plays a key role on the SFMS Tracker[SM] team, a group within the Firm that is dedicated to working with attorneys, computer programmers, investment analysts and other staff members to ensure that clients' investment portfolios are appropriately monitored to identify losses arising from corporate fraud and other misconduct, as well as to recommend the level of participation a given situation requires and recover funds obtained on clients' behalf through appropriate action.  In addition to his work in securities and commercial litigation, Kolin also performs significant work in the Firm's growing whistleblower practice, on both cases arising in the United States and overseas.

Kolin received his undergraduate degree in Economics and History with honors from the University of California at Berkeley, and earned his law degree from The George Washington University Law School in 2011, where he was a member of The George Washington International Law Review.  As a summer associate with SFMS in 2009 and 2010, Kolin worked on antitrust, consumer fraud, and securities cases.  He has also worked as a legal intern at the Federal Trade Commission, where he was involved with antitrust and consumer protection issues. Currently, Kolin's practice is focused on representing clients in securities, complex litigation and whistleblower matters.

Kolin is a member of the American Bar Association and currently resides in San Diego.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.

**Valerie L. Chang**
**California Office - San Diego**
**Telephone: 619-235-2416**
**Facsimile: 866-300-7367**
**Email: vchang@sfmslaw.com**

Valerie L. Chang joined SFMS in 2013 as a law clerk and became an associate shortly thereafter upon gaining admission to practice law in the State of California.  Valerie works on various transactional and complex litigation matters in California and throughout the country.

Valerie received her Bachelor of Arts degree with a double major in Psychology and Legal Studies from the University of California at Berkeley.  She then received her law degree with honors from The George Washington University Law School in 2013.  Valerie served as the Executive Managing Editor of The George Washington International Law Review and authored a scholarly note on the marital property laws of China, which was published in 2013.

To learn more about SFMS and for biographies of all of its professionals, please visit our website at www.sfmslaw.com.